## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Scott McCandliss, Dmidriy Abramyan, Abdikadir Ahmed, Ahmed Katun Ahmed, Ahmed Hassan, Ben Stewart Rountree, Faheem Iqbal Qureshi, Anthony D. Logan, Mohammed Abdulle, Hamoud S. Aldahbali, Jamal Abdi, Abdilahi Awale, and Mohamed A. Hussein, | **OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND MEMORANDUM IN SUPPORT THEREOF** |
| Plaintiffs, | CIVIL ACTION NO. 1:14-CV-03275-WSD |
| v. | |
| Uber Technologies, Inc., Uber Technologies (GA), Inc., Rasier LLC, Keith Radford, Ahmed Simjee, Joshua Gantt, Leslie Gilmartin, Brian Giquel, Christopher Bosak, Christopher Johnson, Kevin Buttimer, Daniel Anderson, John Stettner, Rachel Pietrocola, Josh Varcoe, Fabian Fernandez, Aminur Choudhury, Seid Shek, Abebe Tesfaye, Samuel Worku, Jean Richard Pierre, Alexander Agbaere, Ayodele Okpodu, and Belay Dagnew, | |
| Defendants. | |

## OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## INTRODUCTION

Plaintiffs' Motion to Remand should be denied.  Plaintiffs' Complaint meets every requirement for federal jurisdiction under the Class Action Fairness Act of 2005.  28 U.S.C. § 1332(d) ("CAFA").  In the aggregate, the amount in controversy far exceeds $5 million, the parties are minimally diverse, and no exception to CAFA jurisdiction applies.

Nevertheless, Plaintiffs seek to have this action remanded to state court for two reasons, neither of which are correct.  First, Plaintiffs contend that Defendants cannot satisfy the $5 million amount in controversy requirement for jurisdiction under CAFA.  *See* Dkt No. 6 ("Mot.") at 3.  Plaintiffs incorrectly state that this Court cannot consider evidence that is submitted after Defendant's Notice of Removal to determine the amount in controversy.  *See* Mot. at 3.  Such evidence can be considered, and plainly establishes that the amount in controversy far exceeds $5 million.  Further, Defendant's Notice of Removal and Plaintiffs' Complaint already independently established this jurisdictional threshold.

Second, Plaintiffs contend mistakenly that this action falls under the "local controversy" exception to CAFA jurisdiction.  *See* Mot. at 6.  But this narrow exception does not apply because Plaintiffs do not seek significant or meaningful relief from the local driver defendants in this case.

Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand and retain jurisdiction.

## I.      THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

Plaintiffs first challenge removal based on a belief that Defendants cannot satisfy CAFA's $5 million amount in controversy requirement.  *See* Mot. at 2. "Where the plaintiff has not alleged a specific amount of damages, the defendant seeking removal must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014).  In other words, Defendants must show that it is "more likely than not" that the actual amount in controversy exceeds $5 million. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal citation omitted).  "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).

Plaintiffs' argument is based on three premises, all of which are wrong. First, Plaintiffs misread the case law and argue that this Court cannot consider evidence that is submitted after Defendant's Notice of Removal to establish the amount in controversy.  *See* Mot. at 3.  Second, Plaintiffs contend that the

assertions in Defendant's Notice of Removal are insufficient to establish that the amount in controversy exceeds $5 million.  *See* Mot. at 3-4.  Finally, Plaintiffs claim that the allegations in their Complaint do not establish that the amount in controversy exceeds $5 million.  *See* Mot. at 3.  Plaintiffs are mistaken on all counts.  As discussed below, the case law and record contradict each of Plaintiffs' arguments.

### A.   The Galey Declaration Clearly Establishes That the Amount in Controversy Exceeds $5 Million

Plaintiffs begin their Motion to Remand by wholly misstating the law with respect to the evidence that this Court may consider in determining the likely amount in controversy.  *See* Mot. at 3.  On the first page of their Motion, Plaintiffs cite *Lowery v. Alabama Power Co.* for the proposition that, in assessing whether removal is proper, "the district court has before it only the limited universe of evidence available when the motion to remand is filed – i.e., the notice of removal documents."  *See* Mot. at 3 (quoting *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213-14 (11th Cir. 2007)).

This is not the applicable rule of law and it never has been.  Where, as here, a defendant has "filed its notice of removal within thirty days of being served with the summons and initial complaint," the Eleventh Circuit has specifically repudiated the language from *Lowery* on which Plaintiffs rely, and has held that the

precise statement Plaintiffs quote from *Lowery* was "only dicta" and is not controlling. *Pretka*, 608 F.3d at 757, 772-73. Instead, the Eleventh Circuit in *Pretka* held that, to satisfy the preponderance of the evidence standard, "[d]efendants may introduce their own affidavits, declarations, or other documentation." *Id.* at 755. The court found that "to the extent that *Lowery* would bar the consideration of evidence submitted after the case is removed" it was in conflict with prior Eleventh Circuit precedent. *Id.* at 772. The *Pretka* court noted that it had already "squarely rejected" the argument that a "defendant must submit evidence demonstrating the existence of federal jurisdiction at the time of the filing of the removal petition itself and cannot rely on post-petition evidence to support jurisdiction." *Id.* at 773 (quoting *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 948 (11th Cir. 2000)).

Thus, in *Pretka*, the court expressly found that a declaration "attached to [defendant's] opposition to remand should not have been excluded merely because it was submitted in response to the plaintiffs' motion to remand." *Id.* at 774. Numerous other courts have also considered declarations submitted in opposition to motions to remand in determining whether defendants have carried their burden to establish the requisite amount in controversy. *See, e.g., Sierminski*, 216 F.3d at 946 (holding that district courts may consider evidence submitted after the removal

petition is filed where relevant to the minimum amount in controversy to satisfy

removal jurisdiction).

In short, the rule Plaintiffs present to the Court from *Lowery* simply is not an

accurate statement of the law.  Instead, *Pretka* holds that this court may consider

declarations submitted in opposition to Plaintiffs' Motion to Remand in

determining whether Defendants have established that it is more likely than not

that the amount in controversy exceeds $5 million.[1]  608 F.3d at 772-74.

Accordingly, Uber has submitted with its Opposition to Plaintiffs' Motion to

Remand the declaration of Jacob Galey.  *See* Decl. of Jacob Galey (the "Galey

declaration").  The Galey declaration states that the total amount of all fares paid

by riders who used the Uber application to request ███████████████████████

███████████████████████████████████████████████████[2] *See*

*id.* at ¶ 8.  This is the sum of all payments made by riders that ultimately were paid

---

[1]  Contrary to Plaintiffs' insinuations, this is, of course, not in contradiction to the rule that "[a] court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later."  *Pretka*, 608 F.3d at 751.  To say that the facts establishing jurisdiction must have existed at the time of removal is to say nothing about when *evidence* of that jurisdiction may be submitted to the court.  The Galey declaration addresses only the amount in controversy at the time of removal.

[2]  To the extent Plaintiffs qualify the relevant figure as fares "based on measured time and distance," *see* Mot. at 5, Plaintiffs themselves allege in their Complaint that charges for transportation services arranged with Uber are based on time and distance.  Compl. ¶ 24.

to drivers in the Defendant Class, a percentage of which was retained by Uber as a fee from the drivers for the use of Uber's software and services. *See id.* at ¶ 7. And this sum is the amount by which the Plaintiffs have alleged that Defendants have been unjustly enriched, and that Plaintiffs have demanded as damages in Count III of their Complaint. *See* Dkt. No. 1, Ex. 2 [Compl.] ("Compl.") at ¶¶ 53, 54. In fact, the Galey declaration further attests that ███████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*See* Decl. of Jacob Galey at ¶ 9.

This evidentiary proffer matches or exceeds the amount of evidence that past courts have found sufficient to establish that the amount in controversy in an action exceeds $5 million. *See Michelle's Rest. of Georgetown, Inc. v. Advanced Disposal Servs., Inc.*, No. 4:13-CV-488 CDL, 2014 WL 824211, at *2 (M.D. Ga. Mar. 3, 2014) (finding that defendant had established that $5 million was in controversy where plaintiffs brought unjust enrichment and other claims against defendant for fees it charged and defendant offered declaration that stated that defendant had revenues "attributable to the fees that Plaintiffs challenge in excess of $5,000,000.00 during the time period alleged in the Complaint"); *see also*

*Pretka*, 608 F.3d at 756 (finding that defendant had established that at least $5 million was in controversy, noting that "[t]he complaint seeks a refund of all of the plaintiffs' deposits, and the [declaration submitted in opposition to plaintiff's motion to remand] by itself establishes that the plaintiffs have deposited more than $41 million").

The Galey declaration thus demonstrates that Plaintiffs put more than $5 million in controversy through their unjust enrichment claim alone.[3]  However, *in addition* to that amount, this Court must add to the amount in controversy the value of the injunctive relief Plaintiffs seek going forward.  On top of monetary damages, Plaintiffs have requested that this court enjoin Uber from collecting the fares that generate the revenue outlined above.  Compl. ¶ 59.  For purposes of determining the amount in controversy, "the value of . . . injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (internal quotations & citations omitted).  In their Complaint, Plaintiffs explain the primary

---

[3]  Plaintiffs' question "[i]s there any doubt that when Defendant answers it will deny that there is any damage at all?" is completely irrelevant.  It is black letter law that "[w]hen determining whether the amount in controversy requirement has been met, district courts should only consider the amount the plaintiff has placed in controversy, not the amount the plaintiff is likely to recover."  *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 730 (11th Cir. 2014).

benefit that would flow to them if this injunction were to be granted – Defendants would no longer be able to "prevent potential taxicab passengers and customers from using [Plaintiffs'] services."  Compl. ¶ 41.  In other words, Plaintiffs seek to have the fares currently being allegedly "unlawfully appropriated" by Defendants re-routed to the Plaintiffs.  Compl. ¶ 36.  Therefore, according to Plaintiffs' allegations, the value of this injunctive relief is roughly equal to the fares paid by users of the Uber platform, which far exceeds $5 million.[4]  If even a small portion of these fares would go to Plaintiffs as a result of an injunction, the value of the injunction Plaintiffs seek would still, alone, exceed $5 million.[5]  *See S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014) (finding that "[t]he larger the calculated amount at stake, the easier it is to be confident" that contingencies that might reduce the ultimate value of injunctive or declaratory relief "should not count for much").

---

[4] ███████████████████████████████████████████████████████████
███████████████████████████████████

[5] Uber contests the notion, advanced by Plaintiffs, that the transportation requested through the Uber app is transportation that would otherwise have gone to one of the Plaintiffs.  Uber brings in new users to its request service that would not otherwise use one of the Plaintiffs' services; consumers could choose non-taxicab transportation options; and consumers could use taxicab services from a company not a party to this lawsuit.

For these reasons, the Galey declaration satisfies Defendant's burden to demonstrate that it is "more likely than not" that the amount in controversy exceeds $5 million.

### B.   Uber's Notice of Removal Had Already Established That the Amount in Controversy Exceeds $5 Million

Even without the Galey declaration, Uber had already established by a preponderance of the evidence that the amount in controversy exceeds $5 million. Contrary to Plaintiffs' argument that a defendant's assertion of jurisdictional facts is "insufficient" to establish the amount in controversy, courts have recognized that "in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy" than the plaintiff.  *See Jones v. Novartis Pharm. Co.*, 952 F. Supp. 2d 1277, 1282 (N.D. Ala. 2013).  Accordingly, courts are permitted to look to a defendant's removal notice to determine the amount in controversy where it is not facially apparent from the Complaint.  *Id*. at 1283; *see also Pretka*, 608 F.3d at 754.

In its Notice of Removal, Uber explicitly stated that the revenues from the business that Plaintiffs seek to enjoin in the City of Atlanta exceed $5 million.  *See* Dkt No. 1 ("Notice") at 4.  Deducing from this statement that the amount in controversy exceeds $5 million requires no "divining by the stars," as Plaintiffs claim.  *See* Mot. at 5.  Plaintiffs demanded a specific amount of damages in their

Complaint – "the total amount of all fares received for trips originating in the City of Atlanta which are based on measured time and distance."  Compl. ¶ 53.  Uber, in sole possession of that financial information, informed the court – in good faith and pursuant to its obligations under Federal Rule of Civil Procedure 11 – that it exceeded $5 million.  *See* Notice at 4.  In doing so, as discussed above, Uber had also already indicated to the Court that the value of the injunctive relief sought by Plaintiffs itself was *additionally* worth more than $5 million.

### C.    Plaintiffs' Complaint Had Already Established That the Amount in Controversy Exceeds $5 Million

Finally, though the Galey declaration and Uber's Notice of Removal are more than sufficient to establish that the amount in controversy exceeds $5 million, it is worth noting that even Plaintiffs' Complaint had made this abundantly clear. Courts in the Eleventh Circuit are free to use "uncomplicated, mathematical equation to compute the minimum aggregate value of Plaintiffs' claims." *Adams v. Macon Cnty. Greyhound Park, Inc.*, 829 F. Supp. 2d 1127, 1133 (M.D. Ala. 2011); *see also Pretka*, 608 F.3d at 753 ("*Lowery* did not say, much less purport to hold, that the use of deduction, inference, or other extrapolation of the amount in controversy is impermissible.").  As noted in Uber's Notice of Removal, Plaintiffs allege that their putative class contains owners of 1,600 Certificates of Public Necessity and Convenience ("CNPCs") who "have suffered damages in that their

CPNCs have lost substantial value and marketability." Compl. ¶¶ 13, 41.
Plaintiffs further alleged that these owners command $8,000 per year for the rental
of their CNPCs. Compl. ¶ 26. Little "speculation" or "divining by the stars," *see*
Mot. at 4-5, is required to determine that the licenses that Plaintiffs allege are at
risk of becoming substantially unmarketable constitute a $12,800,000 yearly
income for their owners.

The alleged harm to CNPC owners – and thus the alleged benefit they seek
by permanently enjoining this harm – easily exceeds $5 million. And yet, CNPC
owners make up only one half of Plaintiff's putative class. Compl. ¶ 9. Plaintiffs
further allege that their putative class contains more than 2,500 "licensed taxicab
drivers and renters of CPNCs," virtually all of whom "derive their entire income
from" the fares they collect. Compl. ¶¶ 13, 29. Plaintiffs seek from Uber damages
in the form of the lost revenues that each and every one of these 2,500 CPNC
renters have allegedly suffered during the entire time Uber has operated in Atlanta.
Compl. ¶ 41.

Finally, in addition to all of the damages and injunctive relief requested,
Plaintiffs have demanded this Court award them punitive damages. Compl. ¶ 49.
If any doubt remained that Plaintiffs have put far in excess of $5 million in
controversy in this action, these punitive damages make this abundantly clear. *See*

*McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014) ("[w]hen considering punitive damages as part of the jurisdictional amount, it becomes clear that [the defendant] has carried its burden to prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.") (internal quotations & citations omitted); *Waithe v. Arrowhead Clinic, Inc.*, No. CV 409-021, 2010 WL 5463106, at *2 (S.D. Ga. Dec. 29, 2010) (finding that "[d]efendants have established by a preponderance of the evidence that the amount in controversy exceeds $5 million in this case" after considering plaintiffs' requested punitive damages and attorney's fees).

Normally, a claim for punitive damages would add $250,000 – the statutory maximum for punitive damages in Georgia – to the amount in controversy. O.C.G.A. § 51-12-5.1(g). However, no such cap applies where the defendant has acted with "the specific intent to cause harm." O.C.G.A. § 51-12-5.1(f). Thus, given Plaintiffs' allegation that they are entitled to punitive damages because of Defendants' "effort to *intentionally* take business from Plaintiffs and Plaintiff class and to decrease the value of assets of the Plaintiffs," and Plaintiffs' contention that Defendants had the "intent to injure them financially," Compl. ¶ 44, 49 (emphasis added), under Plaintiffs' alleged theory of relief, there is no cap on the amount of punitive damages Plaintiffs have put in controversy. For this and all of the above

reasons, Defendants have established that it is "more likely than not" that Plaintiffs have put far more than $5 million in controversy.

## II.   PLAINTIFFS FAIL TO MEET THEIR BURDEN TO SHOW THAT THE "LOCAL CONTROVERSY" EXCEPTION APPLIES

Plaintiffs next claim that this Court must remand this action under the CAFA "local controversy" exception.  *See* Mot. at 6.  Plaintiffs have the burden of demonstrating that the "narrow" local controversy exception applies.  *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163, 1165 (11th Cir. 2006).  To meet this burden, Plaintiffs must establish that at least one defendant, who is a resident of the state in which the action was originally filed, is a defendant from whom *significant relief* is sought by members of the plaintiff class and whose alleged conduct forms a *significant basis* for the claims asserted by the proposed plaintiff class.  28 U.S.C.A. § 1332(d)(4).  In other words "a local controversy is one in which at least one local defendant is 'significant.' A local defendant is significant when, *inter alia,* the plaintiffs are seeking significant relief from him."  *Lemy v. Direct Gen. Fin. Co.*, 559 F. App'x 796, 798 (11th Cir. 2014).

### A.   Plaintiffs Fail to Show They Seek Significant Relief From Any Local Defendant

Plaintiffs do not seek significant relief from local driver defendants.  To show that a defendant is significant, plaintiffs must show that the relief they seek

from the local defendant "is a significant portion of the entire relief sought by the class." *Evans*, 449 F.3d at 1167; *Lemy*, 559 F. App'x at 798.  In *Lemy v. Direct Gen. Fin. Co.*, the Eleventh Circuit affirmed a district court's denial of remand where 4.5 percent of the total relief was sought from the local defendants, while 80 percent was sought from one of the foreign defendants.  *Id*.  Not only did the court find that 4.5 percent was not significant as a portion of the entire relief sought – or as compared to 80 percent – it noted that, even if the district court had accepted plaintiff's argument that *14 percent* of the total relief was sought from local defendants, that would "not alter the comparative result."  *Id*. at 798 n.1.

   Here, an even less significant percentage of the entire relief sought by Plaintiffs is attributable to the local defendants.  Plaintiffs seek relief from Uber, a Delaware corporation, and 21 named drivers who they claim are residents of Georgia.[6]  Compl. ¶¶ 5-6.  Plaintiffs allege that approximately 80% of the fares received from transportation services requested through Uber are retained by "over 1100" drivers.  *See* Mot. at 9; Compl. ¶ 13.  Uber, on the other hand, allegedly retains approximately 20% as a fee from the drivers for their use of Uber's software and services.  *See* Mot. at 10.

---

[6]  Plaintiffs further name one Uber employee, Keith Radford, as a defendant.  *See* Decl. of Jacob Galey at ¶ 10.

Thus, assuming a pro-rata distribution of fares among drivers, Plaintiffs have claimed that the allegedly local named Defendants' share of the total fares complained of is approximately 1.5%.[7]  Not only is this plainly insignificant as a "portion of the entire relief sought by the class," it is less than *one tenth* of the relief sought from Uber, the foreign defendant.  *Lemy*, 559 F. App'x at 798 n.1 (stating that "fourteen percent" would still be insufficient).  Clearly, Plaintiffs do not seek significant relief from these drivers – even when viewed in the aggregate.  *See Lemy*, 559 F. App'x at 798; *see also Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312, 1317-18 (M.D. Fla. 2008) (finding plaintiffs did not seek significant relief from local defendant with domestic market share of 1.2%-5.1%, compared to foreign defendants with market shares of, respectively, 21.2%-33.4%, 21.3%-50.5%, and 7.1%-10.4% ); *Walters v. Flag Credit Union*, No. 4:13CV241-RH/CAS, 2014 WL 129055, at *3 (N.D. Fla. Jan. 13, 2014) (finding plaintiffs did not seek significant relief from local defendant against whom $144,503 in damages was sought of a total of $10,329,819 (roughly 1.4%)).  For this reason alone, Plaintiffs have failed to carry their burden of establishing that they seek "significant" relief from the named driver Defendants.

---

[7]  This number is derived by dividing 21 by 1100, and then multiplying the result by .8 (because all 1100 drivers, in aggregate, receive the fares and Uber retains 20% as a fee from the drivers).

However, local driver Defendants are not significant for an additional

reason.  Given that Plaintiffs have demanded damages far in excess of $5 million,

it is plainly evident that they seek relief primarily from the corporate defendant –

not a group of drivers.  Following the guidance of CAFA's legislative history,[8] in

determining whether "significant" relief is sought from a defendant, courts have

looked at the substance of plaintiff's complaints and considered from whom

---

[8]  In explaining what would constitute a defendant from whom "significant relief"
was sought, the Senate Committee Report gives the following illuminating
example:

> [I]n a consumer fraud case alleging that an insurance company
> incorporated and based in another state misrepresented its policies, a
> local agent of the company named as a defendant presumably would
> not fit this criteria. He or she probably would have had contact with
> only some of the purported class members and thus would not be a
> person from whom significant relief would be sought by the plaintiff
> class viewed as a whole. Obviously, from a relief standpoint, the real
> demand of the full class in terms of seeking significant relief would be
> on the insurance company itself.

S. Rep. No. 109–14, at 40 (2005). Further, and highly relevant to Plaintiffs'
allegations, Compl. ¶ 40, the Committee Report continues:

> The Committee wishes to stress that the presence of conspiracy
> allegations should not alter this inquiry. For example, if in the
> hypothetical discussed here, the class alleges that the agent conspired
> with the insurance company with respect to the alleged scheme, it
> theoretically would expose the agent to potential liability to the entire
> class. But that would not change the relatively minor role that the
> agent played in the overall misconduct that is alleged and would not
> change the fact that the agent is not the real target of the litigation,
> which is the inquiry contemplated by this criterion.

*Id*. at 40 n. 126.

plaintiffs are making their "real demand" for relief. *See Casey v. Int'l Paper Co.*, No. 3:07CV421/RV/MD, 2008 WL 8854569, at *5 (N.D. Fla. Jan. 7, 2008) ("[a]s a practical matter, considering that class actions falling under CAFA involve $5 million or more in damages, the plaintiffs in any CAFA case will necessarily seek the most 'significant relief' from the defendants capable of paying that amount, typically corporate defendants with deep pockets, not mere employees or other entities"); *Robinson v. Cheetah Transp.*, No. CIV.A. 06-0005, 2006 WL 468820, at *4 (W.D. La. Feb. 27, 2006) *report and recommendation adopted*, No. CIV.A. 06-0005, 2006 WL 1453036 (W.D. La. May 17, 2006) (finding that, though the local tractor trailer driver defendant's "alleged negligence may have substantially contributed to the class members' damages [ ] it does not follow that the class members seek significant relief from him. With an amount in controversy of at least $5 million, the plaintiffs will seek most of that relief from those who are capable of paying it: the corporate defendants").

Either because local defendants are allegedly responsible for only a tiny proportion of the relief sought by Plaintiffs, or because it is extremely improbable that Plaintiffs will seek any real relief from them at all, Plaintiffs' attempt to avoid CAFA jurisdiction by claiming that it seeks "significant" relief from local driver defendants is not plausible and must fail. Indeed, it is apparent that the relief

sought – both monetary and otherwise – is sought functionally only from Uber, an out-of-state corporate defendant.  The inclusion of individual drivers as named defendants was an effort to defeat jurisdiction, not because Plaintiffs seek any meaningful relief from those Defendants.

**B.      Unnamed Class Members Are Not Defendants and Thus Cannot Be Considered for the Local Controversy Exceptions**

CAFA's narrow local controversy exception is only applicable if "at least 1 *defendant* is a *defendant* from whom significant relief is sought by members of the plaintiff class."  28 U.S.C.A. § 1332(d)(4) (emphasis added).  Plaintiffs have attempted to hide the fact that they seek de minimis relief from local defendants by asking this Court to interpret "a defendant" to include a vague and unidentified group of absent, unnamed members of an uncertified class.  *See* Mot. at 10.  This argument is contrary to basic legal principles and meritless.

Plaintiffs' protestations about "fairness" and "unequal treatment" aside, a theoretical class member cannot possibly be "a defendant" because they are not a "party" at all.  Plaintiffs' portrayal of this issue as one "of first impression" in the Eleventh Circuit, *see* Mot. at 10, implies that there is legal uncertainty as to whether unnamed members of an uncertified class are parties to a case.  There is not.  In describing a prior holding regarding the ability of absent members of certified classes to appeal adverse judgments, the United States Supreme Court

recently described the argument that unnamed class members were parties to a class action before the class is certified as "novel and surely erroneous." *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379, 180 L. Ed. 2d 341 (2011).  The Fourth Circuit has since applied this unsurprising holding to the context of CAFA's local controversy rule and found that "[a]n unnamed member of a proposed but uncertified class is not a party to the litigation. Consequently, because the class of unnamed defendant[s] . . . is not a party to this lawsuit, it was improper for the district court to consider them in deciding whether Plaintiffs had satisfied the 'at least 1 defendant' requisite of the local controversy exception." *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 966 (4th Cir. 2013).

Plaintiffs argue that there is something inherently unfair about the "unequal treatment" involved in not considering an unnamed class member "a defendant" for the purpose of the local controversy exception, and yet aggregating the claims of absent plaintiff class members for the purposes of the amount in controversy requirement. *See* Mot. at 10-11.  While it is "Plaintiffs' contention" that things should be otherwise, *see* Mot. at 10, Congress expressly dictated this result when it passed CAFA, and Congress's intent – not Plaintiffs' subjective beliefs about fairness – controls the outcome. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 760, 142 L. Ed. 2d 881 (1999) ("[a]s in any case of

statutory construction, our analysis begins with 'the language of the statute' . . .

[a]nd where the statutory language provides a clear answer, it ends there as well.")

(internal citation omitted).

CAFA's local controversy exception explicitly focuses its inquiry on "at

least *one defendant*" and says nothing about aggregating the liability of unnamed

members of a putative defendant class.  28 U.S.C. § 1332(d)(4) (emphasis added).

The statute is clear that the local controversy exception should apply only to

defendants that are actual parties in the case.  *Quicken Loans Inc.*, 737 F.3d at 966.

On the other hand, CAFA's amount in controversy requirement explicitly requires

a court to aggregate the claims of all the class members: "[i]n any class action, the

claims of the individual class members shall be aggregated to determine whether

the matter in controversy exceeds the sum or value of $5 million, exclusive of

interest and costs."  28 U.S.C.A. § 1332(d)(6).[9]

---

[9]  Section 1332(d)(6) indicates that Congress clearly knew how to instruct courts to
aggregate claims for the purposes of CAFA.  Had Congress intended courts to
aggregate claims against unidentified, absent members of uncertified defendant
classes for the purposes of the local controversy exception, it would have
instructed them to do so.

Nor, as Plaintiffs claim, is there anything unfair or contrary to Congressional intent in this distinction.[10]   Indeed, the distinction makes perfect sense in light of the purpose of CAFA – to *expand* federal jurisdiction. As the Eleventh Circuit has found, "CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, *with all doubts resolved 'in favor of exercising jurisdiction over the case.'"  Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (quoting S. Rep. No. 109-14, at 42) (emphasis added).  For these reasons, Plaintiffs have failed to demonstrate that the "narrow" local controversy applies to this action.  *Id*.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion for remand and retain jurisdiction over this action.

Respectfully submitted, this 13th day of November, 2014.

---

[10]  It is unclear how the language Plaintiffs quote from the Senate Committee Report on CAFA in any way supports their contention to the contrary.  If anything, the phrases "the local defendant," "the defendant" and "a defendant" seem to strongly contradict Plaintiffs' unusual reading of the CAFA statute.  S. Rep. No. 109-14, at 40 (2005).

By   /s/ Michael W. Tyler
       Michael W. Tyler

Michael W. Tyler (GA Bar No. 721152)
   mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
   jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
   randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Stephen A. Swedlow (*pro hac vice* pending)
   stephenswedlow@quinnemanuel.com
Amit B. Patel (*pro hac vice* pending)
   amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone:  (312) 705-7400
Facsimile:  (312) 705-7401

Arthur M. Roberts (*pro hac vice* pending)
   arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Counsel for Uber Technologies, Inc.

<u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated:  November 13, 2014.

<u>/s/ Michael W. Tyler</u>
Michael W. Tyler

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2014, I filed a copy of the foregoing document using the Court's ECF/CM system, which will automatically send notice of such filing to counsel for Plaintiffs:

> William A. Pannell
> WILLIAM A. PANNELL, P.C.
> 433 Chateau Drive, NW
> Atlanta, GA 30305

I further certify that on November 13, 2014, I served a copy of the foregoing to counsel for Plaintiffs by depositing a copy in the U.S. Mail, first class postage prepaid, addressed as follows:

> Keith E. Fryer
> FRYER, SHUSTER & LESTER, PC
> 1050 Crown Pointe Parkway, Suite 410
> Atlanta, GA 30338

/s/ Michael W. Tyler
Michael W. Tyler
