## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SCOTT MCCANDLISS,<br>DMIDRIY ABRAMYAN, ABDIKADIR<br>AHMED, AHMED KATUN AHMED,<br>AHMED HASSAN, BEN STEWART<br>ROUNTREE, FAHEEM IQBAL<br>QURESHI, ANTHONY D. LOGAN,<br>MOHAMED ABDULLE, HAMOUD S.<br>ALDAHBALI, JAMAL ABDI, ABDILAHI<br>AWALE, MOHAMED A. HUSSEIN<br>and all others similarly situated<br><br>    Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br>UBER TECHNOLOGIES (GA), INC.,<br>RASIER, LLC<br>  and<br>KEITH RADFORD, AHMED SIMJEE,<br>JOSHUA GANTT, LESLIE GILMARTIN<br>BRIAN GIQUEL, CHRISTOPHER BOSAK,<br>CHRISTOPHER JOHNSON, KEVIN<br>BUTTIMER, DANIEL ANDERSON, JOHN<br>STETTNER, RACHEL PIETROCOLA,<br>JOSH VARCOE, FABIAN FERNANDEZ,<br>AMINUR CHOUDHURY, SEID SHEK,<br>ABEBE TESFAYE, SAMUEL WORKU,<br>JEAN RICHARD PIERRE, ALEXANDER<br>AGBAERE, AYODELE OKPODU,<br>BELAY DAGNEW, individually and<br>all others similarly situated,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action FileNo.1:14-03275-<br>    WSD<br>   CLASS ACTION |

1

## AMENDED COMPLAINT

Table of Contents to the Amended Complaint

Background………………………………………………………………….4

Parties and Jurisdiction………………………………………………….6

Class Action Allegations………………………………………………10

Facts………………………………………………………………………17

Count I - Tortious Interference with Business Relations and Conspiracy……….24

Count II - Punitive Damages…………………………………………..32

Count III - Unjust Enrichment…………………………………………33

Count IV – Bad Faith…………………………………………………..34

Count V – Injunctive Relief……………………………………………35

Count VI – Declaratory Relief…………………………………………36

Ad Damnum Clause……………………………………………………38

## AMENDED COMPLAINT

COME NOW, SCOTT MCCANDLISS, DMIDRIY ABRAMYAN, ABDIKADIR AHMED, AHMED KATUN AHMED, AHMED HASSAN, BEN STEWART ROUNTREE, FAHEEM IQBAL QURESHI, ANTHONY D. LOGAN,  MOHAMED ABDULLE, HAMOUD S. ALDAHBALI, JAMAL ABDI, ABDILAHI AWALE, MOHAMED A. HUSSEIN on behalf of themselves and all others similarly situated ( "Plaintiffs" and/or "Plaintiff  Class") and pursuant to Rule 15 (a)1(B) of the Federal Rules of Civil Procedure files, as a matter of course, this Amended Complaint against UBER TECHNOLOGIES, INC.,   UBER TECHNOLOGIES (GA), INC. and RASIER, LLC (collectively referred to as "Uber Defendants") and a Class of Atlanta Uber managers and drivers represented by  KEITH  RADFORD,  AHMED  SIMJEE,  JOSHUA  GANTT,  LESLIE GILMARTIN, BRIAN GIQUEL, CHRISTOPHER BOSAK, CHRISTOPHER JOHNSON, KEVIN BUTTIMER, DANIEL ANDERSON, JOHN STETTNER, RACHEL PIETROCOLA, JOSH VARCOE, FABIAN FERNANDEZ AMINUR CHOUDHURY, SEID SHEK, ABEBE TESFAYE, SAMUEL WORKU, JEAN RICHARD PIERRE, ALEXANDER AGBAERE, AYODELE OKPODU, SAMI MAGESHA, BELAY DAGNEW (hereinafter referred to as "Defendant Class") showing the Court as follows

## BACKGROUND

1.

To ensure that the public has access to safe and uniform means of vehicle-for-hire transportation, the City of Atlanta has developed a number of ordinances and regulations to protect the riding public.  Taxi companies and drivers must abide by these ordinances as well as rules and regulations, promulgated over decades, designed to protect consumers, ensure public safety, safeguard competition, and ensure non-discriminatory services. Taxi companies and drivers have invested significant capital and resources to develop systems and infrastructure that ensures regulatory compliance and provides adequate consumer protections. The State of Georgia also issues laws, rules and regulations for the registration and operation of limousines and limousine companies which operate in the City of Atlanta.

2.

The City of Atlanta issues a finite number of taxi medallion licenses, called **a CPNC** *(Certificate(s) of Public Necessity and Convenience)*, each associated with a unique taxi number. The CPNC medallions have been specially authorized by O.C.G.A § 36-60-25 which established them with

all property rights including conveyance and ownership. A taxicab may not legally operate in Atlanta without such a validly issued CPNC license. Additionally, limousines and limousine companies may not operate in Atlanta without proper registration and licensing. This class action lawsuit involves the furnishing of rides to the public by Defendants which begin in the city limits of Atlanta and the Atlanta airport. Other transportation originating outside the city limits of Atlanta is not the subject of this lawsuit.

3.

Uber and the Defendant Class began operating a fleet of "vehicles for hire" in the City of Atlanta in the Summer of 2012.  The Defendants  ignore and violate the rules and ordinances of the City of Atlanta including Atlanta Taxi Ordinances and operate without any CPNCs. Uber illegally operates as a taxicab business as it advertises and solicits business for its drivers, dispatches the calls and charges customers via credit cards based on measured time and calculations of mileage through the use of GPS and "smartphones". They have interfered with the Atlanta Bureau of Taxicab's business relationship with the entire Plaintiff Class by flooding the market with illegal vehicles for hire and making it impossible for the Bureau and the state of Georgia to protect their property rights and licensing rights.

5

Defendant Keith Radford manages this network of illegal vehicles in Atlanta on a daily basis.  Additionally Uber vehicles registered as limousines violate the laws of Georgia and Atlanta by charging fares at the end of the trip based on mileage and distance using the "smartphones" rather than prearranged amounts as required thus acting as taxicabs. As a result, the Uber Defendants and the Defendant Class have damaged the property values of the CPNCs and their interference with Plaintiffs' contractual and property rights which provide for a finite number of taxicabs in the City of Atlanta. The Uber Defendants and the Defendant Class have lessened the value of CPNCs to their owners and/or the taxi drivers who pay weekly and/or monthly rents for their use. Additionally, the UBER Defendants and their drivers who are members of the Defendant Class have unlawfully interfered with the Plaintiff Subclass of Taxi Drivers' businesses in the City of Atlanta by accepting fares and providing transportation beginning or originating in the city limits of Atlanta resulting in lost fares and revenues to the Plaintiff Subclass.

## PARTIES AND JURISDICTION

4.

Plaintiffs   SCOTT   MCCANDLISS,   DMIDRIY   ABRAMYAN, ABDIKADIR AHMED, AHMED KATUN AHMED, AHMED HASSAN,  BEN

STEWART ROUNTREE, FAHEEM IQBAL QURESHI, ANTHONY D. LOGAN, MOHAMED ABDULLE, HAMOUD S. ALDAHBALI, JAMAL ABDI, ABDILAHI AWALE, MOHAMED A. HUSSEIN are all residents and citizens of Fulton County and/or the State of Georgia.

5.

Defendant UBER TECHNOLOGIES, INC(hereinafter referred to as "Uber") is a foreign corporation organized under the laws of the State of Delaware and at all times relevant to this action controlled and operated its wholly owned subsidiaries/divisions, UBER TECHNOLOGIES (GA), INC. and RASIER, LLC as well as all technology used to arrange rides for and collect money from customers in the City of Atlanta, Georgia. It maintains an office in the City of Atlanta and is subject to jurisdiction pursuant to Georgia's Long Arm Statute, O.C.G.A. § 9-10-90 et seq. It has been properly served through its registered agent, National Registered Agents, Inc., 160 Greentree Dr. Ste 101, Dover, Delaware 19904, pursuant to O.C.G.A.§ 9-10-94.

5a.

Defendant UBER TECHNOLOGIES (GA), INC.(hereinafter referred to as "Uber GA"), is a corporation which was registered in 2013 by Travis Kalanick,

president of Uber to do business in the State of Georgia. It has been properly

served through its registered agent, National Registered Agents, Inc. located in

Fulton County, Georgia at 1201 Peachtree Street, NE, Atlanta, Ga. 30361. It is

unknown at present whether Mr. Kalanick has actually formed this corporation;

whether it operates as a d/b/a of Uber; or, whether it is an organization operating

illegally in Georgia.  Inquiries have been made to representatives of Uber in this

litigation but they have refused to answer any questions about the existence of this

corporation. Mr. Kalanick may be operating this unformed corporation for which

he is now personally liable. See, Exhibit A attached to this Amended Complaint.

5b.

Defendant RASIER, LLC (hereinafter referred to as "Rasier") is a foreign

corporation which is registered to do business in the State of Georgia and

maintains a place of business in Fulton County, Georgia. Its registered agent is

National Registered Agents, Inc. located in Fulton County, Georgia at 1201

Peachtree Street, NE, Atlanta, Ga. 30361.

5c.

UBER TECHNOLOGIES, INC., UBER TECHNOLOGIES (GA), INC. and

RASIER, LLC, (collectively referred to as  "Uber Defendants")  have in

8

conspiracy and concert acted with one another to damage Plaintiffs, the Plaintiff Class and Plaintiff Subclasses as set forth herein and below.

6.

Defendants KEITH RADFORD,  AHMED SIMJEE, JOSHUA GANTT, LESLIE GILMARTIN, BRIAN GIQUEL, CHRISTOPHER BOSAK, CHRISTOPHER JOHNSON, KEVIN BUTTIMER, DANIEL ANDERSON, JOHN STETTNER, RACHEL PIETROCOLA, JOSH VARCOE, FABIAN FERNANDEZ, AMINUR CHOUDHURY, SEID SHEK, ABEBE TESFAYE, SAMUEL WORKU, JEAN RICHARD PIERRE, ALEXANDER AGBAERE, AYODELE OKPODU, SAMI MAGESHA, BELAY DAGNEW are all residents and citizens of Fulton County and/or the State of Georgia.

7.

It is believed that over 95% of the members of the Plaintiff Class and all of the Defendant Class defined below are residents and citizens of the State of Georgia. All of the individual persons named as Plaintiffs or Defendants are residents of the State of Georgia.  The actions giving rise to this Complaint occurred in the City of Atlanta, Fulton County, Georgia.

8.

Jurisdiction and Venue are proper in the Superior Court of Fulton County, Georgia.  Defendant Uber removed this class action to the District Court of the Northern District of Georgia pursuant to the Class Action Fairness Act. Plaintiffs deny this jurisdiction or venue is proper and a motion to remand the case back to the Superior Court of Fulton County, Georgia is presently pending.

## CLASS ACTION ALLEGATIONS

9.

The Plaintiff Class is defined as all owners of *at least one* **CPNC** *(Certificate(s) of Public Necessity and Convenience)* and/or drivers of a licensed taxicab in the City of Atlanta via a CPNC since August 24, 2012 ("the Class")[1] with the following subclasses:

(a) Subclass 1:   All persons, firms, corporations or other entities who own or have owned at least one **CPNC** (Certificate(s) of Public Necessity and Convenience);

---

[1] Specifically excluded from any of the Classes are all judges, clerks, assistants and other court personnel who have any involvement with the handling of this matter and any government entities.

10

(b) Subclass 2:   All persons who are or have been licensed taxicab drivers in the City of Atlanta with a **CPNC** (Certificate(s) of Public Necessity and Convenience);

10.

The Defendant Class is defined as all persons, firms, partnerships, corporations or other entities and their managers including Keith Radford which have owned and/or operated any vehicle for Uber which charged passenger(s) and received payment(s) for any rides based on measured time and mileage originating/beginning in the City of Atlanta from August 24, 2012 until present.[2] The Drivers are the "engine" that drives Uber.

11.

The maintenance of this lawsuit as a class action is authorized by O.C.G.A. 9-11-23 b (1) (B), b (2) and b (3). Alternatively, the maintenance of this lawsuit as a class action is authorized by Fed. Rule Civ. P.  23 b (1) (B), b (2) and b (3). Many of the legal issues to be decided will be dispositive of the interests of the Class, Subclasses and Defendant and substantially impair their ability to protect

---

[2] Specifically excluded from the Defendant Class are any members of Plaintiff Class and any member not a resident of Georgia on September 5, 2014.

their interests. Plaintiffs seek injunctive and declaratory relief; disgorgement of all fares received by UBER and its drivers for fares originating in the City of Atlanta and charged based on measured mileage, distance and time; other damages against Uber and the Defendant Class including loss in value and rental values of CPNCs as allowed by law; and, attorneys' fees and expenses.

12.

Each of the named Plaintiffs is a CPNC owner and/or renter.  All have (a) lost fares or income as the result of the Uber Defendants and the Defendant Class; (b) suffered diminution of the value of their CPNCs; and/or, (c) suffered lost rental values of their CPNCs. Their claims are typical of the claims of all Class members and the respective Subclass members.

13.

According to public records, the City of Atlanta has issued approximately 1600 CPNCs. There are over 2500 licensed taxicab drivers and renters of CPNCs. The Class and subclasses are so numerous that joinder of all members is impracticable. The Defendant Class is believed to include over 1100 members. The Defendant Class can easily be identified and located through Uber's records. All members of the Defendant Class are residents and citizens of the State of Georgia. Uber has provided legal counsel to several of the named representatives of the

Defendant Class when charged with violations of the City of Atlanta regulations for taxicabs.

14.

The named Plaintiffs understand the responsibilities and duties required of them as class representatives. They do not possess any conflict of interest with other class members or claims which are antagonistic to other class members. They will vigorously prosecute this action against the Uber Defendants and the Defendant Class. Plaintiffs' attorneys are experienced, well qualified, respected members of the legal community. They have the resources to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class and Subclasses.

15.

There are numerous questions of law or fact common to the Class and/or subclasses, which include:

a.  Whether there have been a loss in value of the CPNCs as the result of Uber's tortious conduct;

b.  Whether the Uber Defendants and the Defendant Class have charged and received fares based on measured time, distance and mileage *retrospectively*

that originated in the City of Atlanta and the total amount and/or profits of such fares;

c.  Whether the Uber Defendants  and the Defendant Class have operated as limousines, limousine carriers, taxicab companies or taxicabs in the City of Atlanta;

d.  The conduct, plans, policies, common schemes and actions of the Uber Defendants and the Defendant Class in charging and collecting fares in any manner it chooses without regard to the Rules and Regulations of the City of Atlanta or the State of Georgia;

e.  The conduct, plans, policies, common schemes and actions of  the Uber Defendants and the Defendant Class in their failure to comply with all safety policies and regulations of the City of Atlanta or the State of Georgia;

f.  The total amount of all charges and/or profits for fares collected by the Uber Defendants and the Defendant Class originating in the City of Atlanta and the proper methods of allocation and reimbursement to the Plaintiff Class and the respective subclasses;

g.  The liability of the Uber Defendants and/or the Defendant Class;

h.  Whether the Plaintiffs and the Plaintiff Class and/or Subclasses are entitled to declaratory relief;

i.  Whether a permanent injunction should be entered to prevent Uber Defendants and/or the Defendant Class from continuing its wrongful conduct;

j.  Damages, types of damages and amount of damages are common to the class. For example it is anticipated that the amount of damages for diminution in values and rental value of the CPNC's may be the same amount for each class or subclass member and/or can be determined by the same analysis for each; and,

k.  The total amount of fares collected by the Uber Defendants and the Defendant Class and the amount to be disgorged is common to all Subclass 2 members.

16.

The issues set forth in the paragraph above predominate over any questions affecting only individual members of the Class and/or subclasses.  A class action is superior to any other method for the fair and efficient adjudication of this controversy.

15

17.

The monetary amounts of the individual charges collected by Uber Defendants and the Defendant Class are relatively small, making it unlikely or financially impossible for the Class and/or subclass members to proceed individually. Members of the Class and/or subclasses have little or no interest in controlling the prosecution of separate actions.

18.

Plaintiffs and Plaintiffs' counsel are not aware of any litigation relating to this specific controversy which has been commenced by any members of the class. It is desirable to concentrate this action in one forum so that any adjudication made will be consistent and the Uber Defendants and the Defendant Class or its representatives will not be in a position of complying with incompatible standards of conduct.

19.

Uber is in possession of the necessary financial records of payments from credit cards. This action is extremely manageable and few difficulties are anticipated.

## FACTS

20.

In Georgia, there are two primary categories of vehicles for hire: taxicabs and limousines. Both types of vehicles may be hired by individuals to pick up and carry passengers to their chosen destinations.

21.

Both the taxicab (Taximeter-Cabriolet, Hackney Carriage, etc.) and the limousine (Stage coach, livery carriage, etc.) have been regulated in various jurisdictions when both were still predominately horse drawn. One of the purposes of these regulations was to clearly define the separate roles and uses of each type of vehicle for hire.

22.

In Georgia, taxicabs are regulated by local jurisdictions, while limousines and limousine carriers are regulated by the Georgia Department of Public Safety and the State of Georgia as well as the City of Atlanta

23.

Pursuant to O.C.G.A.§ 40-1-151(5): "'Limousine carrier' means any person owning or operating a *prearranged* service regularly rendered to the public by

furnishing transportation as a motor carrier for hire, not over fixed routes, by

means of one or more **unmetered**:

(A) Limousines; (B) Extended limousines; (C) Sedan; (D) Extended sedans;

(E) Sport utility vehicles; (F) Extended sport utility vehicles; (G) Other vehicles

with a capacity for seating and transporting no more than 15 persons for hire

including the driver; or (H) Any combination of subparagraphs (A) through (G) of

this paragraph on the basis of telephone contract or written contract. **A limousine**

**carrier shall not use per capita rates or charges.**" (emphasis added).

24.

Uber's vehicles are **metered**. The smartphone apps work as a meter,

measuring time and distance, and charging accordingly.  The Uber smartphone app

simply functions as a technologically advanced version of the taximeter. Uber's

vehicles do NOT operate as limousines and are subject to Atlanta Taxi Ordinances

Sec. 162-26 et seq. when using the smartphone app to calculate fares.

Alternatively, any Uber vehicles considered to be limousines do not comply with

state laws and regulations regarding licensing, car size, fares, insurance and others.

25.

In the City of Atlanta, the regulations of taxicabs includes a limitation on the

number of available licenses for taxicabs, called C.P.N.C.'s (Certificate of Public

18

Necessity and Convenience) to 1600 licenses. These CPNCs may be resold by the holders at market prices. CNPCs have been sold by the City of Atlanta and private owners at variable market prices over the years. The City of Atlanta provides heavy fines and jail sentences for persons who operate a taxicab in the city without a CPNC.

26.

Taxicab drivers who operate in the City of Atlanta primarily rent the use of a CPNC from a CPNC owner at a price of approximately $160.00 per week, which amounts to approximately $8,000.00 per year. In return for this price, drivers are guaranteed exclusive access to the Atlanta taxicab market and fares originating in the City of Atlanta.

27.

In order to comply with most local (including Atlanta's) regulations, taxicabs must be conspicuously decorated with various decals, lights, radios, taximeter, and other equipment specified by the respective local jurisdiction and/or taxicab company. This results in taxicabs having a rather conspicuous, inelegant appearance both inside and outside the vehicle. Also, due to the lower fares charged by taxicabs, and the smaller profit margin, coupled with the enormous

demands upon the vehicle in continuous city driving conditions, taxicab vehicles are usually not luxury models.

28.

O.C.G.A § 40-1-151(4) requires that no vehicle for hire may be operated as both a taxicab and a limousine. The same statute also provides that a limousine is unmetered. The Uber Black vehicles and SUVs operate as both.

29.

Virtually all taxicab drivers in the Atlanta metro area derive their entire income from either a portion of the fares collected, or the proceeds of the fares collected after expenses. If a driver collects fewer fares, the driver earns less money.

30.

In 2012, Uber announced service in the metropolitan area of Atlanta, Georgia.  Uber's stated operational territory in the Atlanta area consists roughly of an area which circumscribes the City of Atlanta. This territory includes most or all of Fulton, Cobb, and DeKalb counties and is bordered by the cities of Cartersville, Douglasville, Newnan, Griffin, Covington, Lawrenceville, Cumming, and Canton.

31.

The Uber Defendants represent to the public on their website that it provides transportation for hire using a provided smart-phone app. Uber advertises its "services" with a very aggressive "viral" marketing campaign, which includes compensating any number of individuals act as organizers and to post "reviews" of its service on internet social media such as Facebook and Twitter. Said posts are allegedly falsely presented as though they were made by uncompensated individuals offering unbiased testimonials.

32.

The Uber Defendants "hire" drivers allegedly as independent contractors to provide the advertised service, where the driver provides his or her own vehicle. Uber outfits these drivers with a cell phone preprogrammed turnkey system that allows the drivers to provide metered service almost identical to a taxicab. The primary distinction is that taxicab meters are physically connected to the vehicle's speedometer, are certified and sealed by the appropriate regulatory body, and are routinely inspected by same. Uber's "meter" app is not approved by any regulatory agency, and runs entirely from Global Positioning Satellite (GPS) signals built into the Uber driver's smart phone. Both methods measure time and distance of the for-hire transportation.

21

33.

Trips can be arranged by passengers directly through Uber. At the conclusion of the trip, Uber collects the Tariff (fare) by billing the passenger's credit card based on data collected by the meter app. Uber pays the drivers their portion of earnings at routine intervals (upon information and belief drivers are paid weekly).

34.

The Uber Defendants also entice limousine carrier drivers to operate their vehicles as metered taxicabs, in direct violation of statutory restrictions. Many of the Uber drivers (i.e. UberX drivers) do not pose as limousine carriers and do not provide commercial insurance covering passengers for bodily injuries, thus avoiding expenses of a licensed, legal taxicab or limousine.

35.

Uber's advertising campaign also directly violates regulatory state statutes to the extent that it poses as a limousine carrier, but does not comply with the statute requiring all advertisements to disclose the address and license number of the licensed carrier. In the fine print when convenient, Uber even disclaims being a limousine carrier making the ridiculous claim that it is merely a referral service.

36.

All licensed taxicab drivers in the metropolitan area of Atlanta Georgia are harmed by the Uber Defendants' deceptive methods in the form of lost revenue. All "metered" trips measured by time and distance originating in the City of Atlanta conducted by the Uber Defendants and the Defendant Class are exclusively the province of licensed taxicabs with a CPNC, and thus Uber has unlawfully appropriated this business and concomitant revenue to itself and its drivers.

37.

The Uber Defendants "hire and fire" its drivers; directly collect all fares through customers' credit cards; pay the drivers out of the fares collected at a later date; advertise "metered" transportation; provide training; and otherwise control how its drivers provide service to Uber's customers. The Uber Defendants maintain that its drivers including all members of the Defendant Class are independent contractors making it necessary to individually name the manager/driver defendants and the Defendant Class. The driver members of the Defendant Class are aware of the Uber Defendants' position that they are independent contractors. Injunctive or Declaratory relief against the individual named manager and drivers will as a practical matter stop all members of the

23

Defendant Class from originating fares in the City Limits of Atlanta unless operating as a lawful limousine or limousine carrier.

38.

Uber's management has been openly critical of any regulation in general. Uber's CEO Travis Kalanick ("Kalanick") has stated publicly "I don't understand regulators ... They are incredibly sensitive to what is in the public view. But if you only follow the rules, they will never let you make the city a better place."  Uber attempts to spin any criticism as "anti-technology" and is willing to say whatever it needs to at any given moment to achieve Uber's economic goals.

**COUNT I**

**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND CONSPIRACY**

39.

Plaintiffs incorporate paragraphs 1 through 38 as if fully set forth herein.

40.

Prior to beginning operations in Atlanta, the Uber Defendants had met strong opposition from the taxicab industry and regulators in other cities and states including but not limited to Washington, D.C., Chicago, New York, Boston,

24

Houston, San Francisco, North Carolina and Los Angeles.  The Uber Defendants were aware of Georgia laws regarding limousines and taxicab ordinances in the City of Atlanta which would apply to their drivers and their business once operations began. Members of the Defendant Class including Keith Radford were also aware of these requirements including that Uber should register as a taxicab company. Some members of the Defendant Class were even licensed limousine drivers or taxicab drivers before working for the Uber Defendants. The Uber Defendants and the Defendant Class knew that operating a metered limousine or a vehicle for hire not regulated by the state in the City of Atlanta without a license or CPNC is/was illegal but chose to knowingly violate these legal requirements.  All Defendants and the Defendant Class had knowledge that their conduct would do harm to the Plaintiff Class and Subclasses in that they would take business away from Plaintiffs and the Plaintiff Class reducing revenues and resulting in damages to rental and property values of CPNCs. This is Uber's business plan.

41.

In the Spring and Summer of 2013, over 25 Uber Drivers who are members and/or representatives of the Defendant Class were charged with violations of Atlanta taxicab laws and defended in Municipal Court by lawyers furnished by

Uber. They argued then that they were only subject to the state of Georgia's laws regarding limousine carriers and such arguments were rejected by the court. They are also subject to city ordinances. While some Uber Black vehicles may operate lawfully as limousines at times, Uber X which comprise the great majority of Uber vehicles do not attempt to comply with any state laws or city ordinances for limousine carriers or taxicabs.

42.

The Uber Defendants have hired lobbyists to influence city and state officials to avoid regulation and legal enforcement of regulations that apply to the Uber Defendants and the Defendant Class. These activities have resulted in the City of Atlanta and the State of Georgia failing to enforce laws and ordinances applicable to them and caused confusion as to which agencies should be responsible for policing the Uber Defendants' and the Defendant Class' activities. The policing of Uber's activities are made even more impossible in that they purposely use a variety of private unmarked motor vehicles which cannot be identified as Uber vehicles without first stopping them. Defendants have flooded the market with hundreds of illegal vehicles for hire which cannot be policed properly.

43.

The Uber Defendants and the Defendant Class have caused third parties such as the enforcement arms of the state and city governments to not fulfill their business obligations and relationships to protect the rights and privileges of licensed, legal operators of vehicles for hire who are members of the Plaintiff Class and Subclass 2 and owners or renters of CPNCs who are also members of the Plaintiff Class and Subclasses. All members of the Plaintiff Class and Subclasses have been damaged as the result of this activity. The regulatory bodies such as the Atlanta Taxi cab Bureau cannot award damages to Plaintiffs and the Plaintiff Class as the result of the Uber Defendants and the Defendant Class' illegal activities.

44.

The Uber Defendants and the Defendant Class have caused third parties who use the services legally provided by the Plaintiff Class and Subclasses for transportation to use Defendants' illegal services resulting in lost business relationships with these customers and contracts for hire to use Plaintiffs' services which have damaged the Plaintiff Class by decreased revenues, rents, rental values of CPNCs and loss in value of CPNCs. The CPNC owners have lost available taxicab drivers as the result of Uber.

45.

The Defendant Keith Radford has continued to manage and operate Uber and the Defendant Class despite knowledge of all of the facts and allegations set forth above. He has actively conspired with the named representatives and members of the Defendant Class to break the laws of Georgia and the City of Atlanta all the while knowing that Plaintiffs would be damaged as described herein as a result of his conduct.

46.

The Uber Defendants and the Defendant Class have knowingly interfered with the relationship between the Plaintiff Subclasses causing less use of CPNCs and less time of use and rents of CPNCs. The Uber Defendants have knowingly interfered with the relationships between the Plaintiff Subclasses by enticing and hiring licensed taxicab and limousine drivers as Uber Drivers with false promises of increased income resulting in damage and harm to the Plaintiff Class.

47.

By operating a *de facto* taxicab business in the Atlanta area in violation of state and municipal regulations, Defendants have purposefully, improperly, and without privilege, induced third parties mentioned above not to enter into or

continue business relationships with Plaintiffs. By avoiding the costs associated with legitimate licensed taxicabs including but not limited to owning and/or renting a CPNC issued and sold by the City of Atlanta, proper insurance, safety regulations and regulated fares, Defendants offer lower fares. Defendants conspired with one another and acted in concert to harm Plaintiffs, the Plaintiff Class and Subclasses. These tortious activities are continuing.

48.

The wrongful operation of Defendants' business contrary to state and municipal regulations (which Defendants cause government officials not to enforce) has caused Plaintiffs financial injury.  All owners of CNPCs and members of Subclass 1 as defined in paragraph 9a above have suffered damages in that their CPNCs have lost substantial value and marketability. All members of Subclass 2 as defined in paragraph 9b above have suffered damages in that the rental value of their CPNC has been diminished due to the dilution of the Atlanta market by improperly increasing the amount of vehicles available to the public against all policies of the City of Atlanta. All members of the Plaintiff Class have suffered lost revenues, business income and damages due to the tortious conduct of the Uber Defendants and Defendant Class to prevent potential taxicab passengers and customers from using their services.

49.

Some members of Plaintiff Subclass 2 do not own a CPNC. Instead, they pay weekly or monthly rent pursuant to agreements with members of Plaintiff Subclass 1 or Taxicab companies. The Uber Defendants and the Defendant Class of independent contractor drivers and managers including Mr. Radford have tortuously interfered with these business relationships as described above for the use of CPNCs and conspired with one another to implement the schemes to destroy the taxicab business in the city of Atlanta and take fares from Plaintiffs.

50.

The Uber Defendants and Defendant Class herein, by improper action and wrongful conduct, without privilege, conspired with each other to create a plan, scheme and design whereby the Uber Defendants and managers including Mr. Radford would hire and use drivers without CPNCs as required for trips originating in the City of Atlanta or without complying with the regulations and laws pertaining to limousines, taxicabs or taxicab companies.

51.

The Uber Defendants' and Defendant Class' actions as described above were purposeful and done with malice and with the intent to injure the Plaintiffs by actively interfering with the CPNCs by illegally increasing the number of vehicles

for hire in the City of Atlanta with full knowledge of the consequences of their conduct.

52.

The purposeful action taken by the Uber Defendants and Defendant Class was with malice and with the intent to take clients away from Plaintiffs and the Plaintiff Class with the knowledge that their intentional acts would injure them financially.

53.

The Uber Defendants and the Defendant Class by their tortious actions described herein damaged the rental value of the CPNCs by diluting the market with an increase of vehicles for hire in the City of Atlanta by almost double the permitted amount.

54.

The unauthorized interference by the Uber Defendants and Defendant Class is intentional interference with business relationships that Plaintiffs have with their existing CPNC owners or renters and the City of Atlanta and due to their conduct, proximately cause damage to the Plaintiffs in an amount to be proven at trial.

## COUNT II

## PUNITIVE DAMAGES

### 55.

Plaintiffs incorporate paragraphs 1 through 54 above as if fully set forth herein.

### 56.

As described above, Defendants have evidenced an entire want of care and a conscious disregard for the rights of the Plaintiffs entitling the Plaintiffs to punitive damages due to Defendants' outrageous conduct in an effort to intentionally take business from Plaintiffs and Plaintiff class by operating illegal non licensed vehicles for hire and to decrease the value of assets of the Plaintiffs. Defendants' actions further evidence a conscious disregard for the rights of the Plaintiffs and Plaintiff Class entitling the Plaintiffs to punitive damages. The amount of punitive damages shall be determined by the impartial conscience of a fair-minded jury.

# COUNT III

## UNJUST ENRICHMENT

### 57.

Plaintiffs incorporate paragraphs 1 through 56 above as if fully set forth herein.

### 58.

No legal contract exists between Plaintiffs or the Plaintiff Class and Uber and/or the Defendant Class which allows Defendants to collect fares for trips originating in the City of Atlanta based on measured time and mileage and retain the same. Such fares are the exclusive property of the Plaintiffs through the use and ownership of CPNCs. Further, there are no contracts between any of the members of Plaintiff Class and the Defendants to use any CPNCs.

### 59.

Plaintiffs have conferred financial benefits on Defendants in that Defendants have operated without CPNCs or the payments for the use of CPNCs which benefits Defendants have retained. The theory of unjust enrichment applies when there is no legal contract such as here, and the benefits conferred such as here would result in an unjust enrichment if not compensated.

60.

As a result, the Uber Defendants and the Defendant Class have been unjustly enriched by their conduct in the total amount of all fares received for trips originating in the City of Atlanta which are based on measured time and distance which require a CPNC to legally collect.

61.

Defendants, as a matter of equity, should be required to return the benefit bestowed upon them by Plaintiffs and the Plaintiff Class and Subclasses.

## COUNT IV

## BAD FAITH

62.

Plaintiffs incorporate paragraphs 1 through 61 as if fully set forth herein.

63.

Defendants' conduct has been in bad faith and has caused Plaintiffs unnecessary trouble and expense entitling Plaintiffs to damages including but not limited to attorney fees and expenses pursuant to O.C.G.A. § 13-6-11.

## COUNT V

### INJUNCTIVE RELIEF

64.

Plaintiffs incorporate paragraphs 1 through 63 above as if fully set forth herein.

65.

Plaintiffs have been and will continue to be irreparably harmed in that they will lose property in the form of CPNCs and vehicles used as taxicabs as a result of the Uber Defendant's and the Defendant Class's actions and will cease to be able to continue in the transportation business unless Defendants are enjoined from continuing such actions. There is no adequate remedy at law as the Defendant Class receives approximately 80% of the gross fares collected and is a transient group from which it would be impossible to completely recover financially. The confusion caused by Uber and its lobbyists and representatives has caused the Atlanta Taxicab Bureau and the City of Atlanta or the Department of Public Safety to fail to act to protect the rights of Plaintiffs.

66.

Consequently, this Court should enter an injunction prohibiting Uber and the Defendant Class from continuing to receive fares on trips originating in the City of Atlanta which are based on measured time and distance and from retaining monies received as a result of those fares. A proper method to police Uber should be established and monitored by the Court to prevent future harm.

67.

Based on Defendants' bad faith, Plaintiffs are entitled to recover all attorneys' fees and expenses of litigation obtaining the relief requested in this Count of the Complaint.

## COUNT VI

## DECLARATORY RELIEF

68.

Plaintiffs incorporate paragraphs 1 through 67 above as if fully set forth herein.

69.

Plaintiffs are entitled to a declaratory judgment declaring that Uber and/or the Defendant Class is not entitled to collect any fares from passengers that

originate in the City of Atlanta which are based on measured time and distance. Without such declaratory relief, Plaintiffs and the Plaintiff Class Members will continue to be harmed due to the uncertainty of the methods used by Uber and the Defendant Class to charge for trips originating in the City of Atlanta.

70.

The confusion caused by Uber and its lobbyists and representatives has caused the Atlanta Taxicab Bureau and the City of Atlanta or the Department of Public Safety to fail to act to protect the rights of Plaintiffs. The policing of Uber and it vehicles and drivers is completely uncertain due to the confusion purposely caused by Uber to avoid any regulation at all. A declaratory judgment will end this uncertainty and cease the harm being caused to the Plaintiffs and Plaintiff Class.

71.

Based on Uber's and the Defendant Class's bad faith, Plaintiffs are entitled to recover their attorneys' fees and expenses of litigation obtaining the relief requested in this Count of the Complaint.

WHEREFORE, Plaintiffs pray as follows:

1)     That Summons be issued and Defendants be served with a copy of this
       Amended Complaint as provided by law;

2)     That Plaintiffs have a trial by jury;

3)     That Plaintiffs recover under Count I of the Complaint;

4)     That Plaintiffs recover under Count II of the Complaint;

5)     That Plaintiffs recover under Count III of their Complaint;

6)     That Plaintiffs recover under Count IV of their Complaint;

7)     That an Order be entered regarding Count V of the Complaint
        in favor of Plaintiffs:

8)     That an Order be entered regarding Count VI of the Complaint
        in favor of Plaintiffs:

9)      For such other and further relief as this Court deems just and proper
under the circumstances.


 Respectfully submitted this 26th day of November, 2014.


                              /s/  William A. Pannell
                                William A. Pannell
                                Georgia Bar No. 561025
                                WILLIAM A. PANNELL, P.C.

                                433 Chateau Drive, NW

Atlanta, Georgia 30305
TEL (404) 353-2283
FAX (404)237-2384

Keith E. Fryer
Georgia Bar No. 279037
FRYER, SHUSTER & LESTER, PC
1050 Crown Pointe Parkway, Suite 410
Atlanta, GA 30338-7701
TEL (770) 668-9300
FAX (770) 668-9465
Of Counsel

### LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been

prepared in 14 point Times New Roman font in accordance with Local Rule

5.1(C).

Dated:  November 26, 2014.

_/s/  William A. Pannell_
William A. Pannell

### CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2014, I filed a copy of the foregoing

document using the Court's ECF/CM system, which will automatically send notice

of such filing to counsel for Defendants:

Michael W. Tyler (GA Bar No. 721152)
mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
Amit B. Patel
amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Arthur M. Roberts
arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Dated:  November 26, 2014.

_/s/  William A. Pannell_
William A. Pannell