## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SCOTT MCCANDLISS, ) | |
| DMIDRIY ABRAMYAN, ABDIKADIR ) | |
| AHMED, AHMED KATUN AHMED, ) | |
| AHMED HASSAN, BEN STEWART ) | |
| ROUNTREE, FAHEEM IQBAL ) | |
| QURESHI, ANTHONY D. LOGAN, ) | |
| MOHAMED ABDULLE, ) | |
| HAMOUD S. ALDAHBALI, JAMAL ) | |
| ABDI, ABDILAHI AWALE, ) | |
| MOHAMED A. HUSSEIN ) | |
| and all others similarly situated, ) | |
|      Plaintiffs ) | Civil Action File No. |
| ) | 1:14-03275- WSD |
| v. ) | |
| ) | Class Action |
| UBER TECHNOLOGIES, INC., ) | |
| UBER TECHNOLOGIES (GA), INC., ) | |
| RASIER, LLC ) | |
|   and ) | |
| KEITH RADFORD, AHMED SIMJEE, ) | |
| JOSHUA GANTT, LESLIE GILMARTIN, ) | |
| BRIAN GIQUEL,CHRISTOPHER BOSAK,) | |
| CHRISTOPHER JOHNSON, KEVIN ) | |
| BUTTIMER,DANIEL ANDERSON, JOHN ) | |
| STETTNER, RACHEL PIETROCOLA, ) | |
| JOSH VARCOE, FABIAN FERNANDEZ, ) | |
| AMINUR CHOUDHURY, SEID SHEK, ) | |
| ABEBE TESFAYE, SAMUEL WORKU, ) | |
| JEAN RICHARD PIERRE, ALEXANDER ) | |
| AGBAERE, AYODELE OKPODU, ) | |
| BELAY DAGNEW, individually and ) | |
| all others similarly situated, ) | |
|      Defendants. | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT DRIVERS' AND KEITH RADFORD'S MOTIONS TO DISMISS

The Motions to Dismiss should be denied in their entirety. Alternatively, Plaintiffs' request leave to file a Second Amended Complaint to correct any deficiencies the Court may find.

It is noted that there should first be a *final determination* of the pending Motion to Remand prior to any decision on the Motions to Dismiss.  It is anticipated that this Court's decision on the Motion to Remand will most likely be appealed pursuant to 28 U.S.C. 1453(c) by the losing party due to the issues involved. Accordingly, Plaintiffs request that any decision on the Motions to Dismiss filed by the Defendants be delayed until the decision determining jurisdiction of this Court is *final*. There is no point in the Court spending time reaching decisions on the motions should the case eventually be remanded. Additionally, different standards would be applied in state court.

## STANDARD OF REVIEW

"Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (quoting Fed. R. Civ. P. (8)(a)(2)). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (internal citations omitted). A complaint survives if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

To survive a motion to dismiss, a complaint need only "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not a probability standard, and simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*, No. 1:08-CV-2277-RWS, 2010 WL 2245574, at *2 (N.D. Ga. June 2, 2010)(quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted). As the U.S. Supreme Court clarified, "a well-pleaded complaint may proceed even if it

3

strikes a savvy judge that actual proof of the facts alleged is improbable" and recovery unlikely. *Iqbal*, 129 S. Ct. at 1959 (citations omitted); see also *Twombly*, 550 U.S. at 556.

Plaintiffs plainly satisfy this plausibility standard by pleading ample facts in the Amended Complaint which, taken as true, establish Defendant Drivers' and Mr. Radford's liability as to each of the claims asserted and provide them fair notice of the grounds of such claims. See, *Lee v. Mylan*, 806 F. Supp. 2d 1320, 1323 (M.D. Ga. 2011) (citing *Twombly* and *Iqbal* and denying Rule 12(b)(6) motion to dismiss where complaint gave fair notice of claims and grounds giving rise to the same).

## ARGUMENT

First, Plaintiffs adopt and incorporate all arguments set forth in their Response to the Uber Defendants' Motion to Dismiss [Doc. 41] as if fully set forth herein and below.

A "conspiracy" upon which a civil action for damages may be found is a combination between 2 or more persons either to do some act which is a tort or else do some lawful act by methods which constitute a tort. See, *Strange v.*

4

*Housing Authority of City of Summerville*, 602 S.E.2d 185 (Ga.App. 2004); see also, *J. Kinson Cook of Georgia, Inc . v. Heery/Mitchell*, 644 S.E.2d 440 (Ga. App. 2007). There is no requirement that each participant in committing the tort also individually satisfy each element of the tort otherwise there would be no need for a claim of conspiracy. After a conspiracy is formed, as here, if a party joins therein ( like a driver or manager), knowing of its existence and purpose, he becomes as much of a party thereto as if he had been an original member. *Parrish v. Jackson W. Jones, P.C.* 629  S.E.2d  468  (Ga.App. 2006). Conspiracy is usually a jury question. Because civil conspiracy is by its very nature a secret endeavor, the concert of action, amounting to a conspiracy is best suited for jury resolution.  *Miller v. Lomax*, 266 Ga. App. 93, 596 S.E.2d 232 (2004); *Traub v. Washington,* 264 Ga. App. 541, 591 S.E.2d 392 (2003). Although Defendants argue there is a requirement of *specific intent,* they offer no legal support.  Of course, conspiracy is not a cause of action on its own but when defendants act in concert with one another to commit a tort their combined acts form the basis for the cause of action.

The Driver Defendants and Radford completely ignore the law regarding conspiracy, for good reason, and do not attack the sufficiency of any pleadings regarding their conspiracy with the Uber Defendants. As Uber likes to say,

"The drivers are the engine that drives Uber". The drivers are the ones who actually interfere with the passengers and violate Atlanta Taxi Ordinances and Georgia laws each time they pick up a passenger and charge them. There is no doubt they intentionally drove and managed the for hire vehicles while knowing it would harm legitimate competitors. They operate with no permits or licenses and take business to which CPNC owners and legitimate Atlanta taxi drivers are entitled. And, all the time Keith Radford has acted as manager of Atlanta operations with full knowledge of its disregard for Atlanta Taxi Ordinances. He has even helped Uber lobby against regulations. *See* Exhibit E attached to Plaintiffs' Response to Uber Defendants' Motion to Dismiss [Doc. 41]. Common sense dictates that it requires *intent* to drive or to manage.

All of the Defendants continue their attempts to misstate and mislead with their falsehood that Plaintiffs "seek to use this Court to drive Uber out of business." See, i.e., [Doc 40-1, p. 6]. The issue in this class action is the origination of rides within the city limits of Atlanta only. Uber operates well outside that area and Plaintiffs do not even seek to limit fares ending in Atlanta but originating elsewhere. This is the same attempt to mislead used in response to the Motion to Remand [Doc. 20]. Apparently, the Defendants believe if they tell enough lies and scream loud insults about Plaintiffs and their counsel, the

6

Court will dismiss this narrowly targeted case.  Inventing "straw man"

arguments to defeat and acting in such a manner should not carry the day in

this forum.

After explaining the background of taxis, CPNCs and limousines in

paragraphs 1 and 2 of the Amended Complaint, Plaintiffs make the following

allegations specifically regarding the Drivers, Mr. Radford (underlined) and

Defendant Class:

> 3. Uber and the Defendant Class began operating a fleet of "vehicles for hire" in the City of Atlanta in the Summer of 2012.  The Defendants ignore and violate the rules and ordinances of the City of Atlanta including Atlanta Taxi Ordinances and operate without any CPNCs. Uber illegally operates as a taxicab business as it advertises and solicits business for its drivers, dispatches the calls and charges customers via credit cards based on measured time and calculations of mileage through the use of GPS and "smartphones". They have interfered with the Atlanta Bureau of Taxicab's business relationship with the entire Plaintiff Class by flooding the market with illegal vehicles for hire and making it impossible for the Bureau and the state of Georgia to protect their property rights and licensing rights. Defendant Keith Radford manages this network of illegal vehicles in Atlanta on a daily basis.  Additionally Uber vehicles registered as limousines violate the laws of Georgia and Atlanta by charging fares at the end of the trip based on mileage and distance using the "smartphones" rather than prearranged amounts as required thus acting as taxicabs. As a result, the Uber Defendants and the Defendant Class have damaged the property values of the CPNCs and their interference with Plaintiffs' contractual and property rights which provide for a finite number of taxicabs in the City of Atlanta. The Uber Defendants and the Defendant Class have lessened the value of CPNCs to their owners and/or the taxi drivers who

pay weekly and/or monthly rents for their use. Additionally, the UBER Defendants and their drivers who are members of the Defendant Class have unlawfully interfered with the Plaintiff Subclass of Taxi Drivers' businesses in the City of Atlanta by accepting fares and providing transportation beginning or originating in the city limits of Atlanta resulting in lost fares and revenues to the Plaintiff Subclass.

10. The Defendant Class is defined as all persons, firms, partnerships, corporations or other entities and their managers including Keith Radford which have owned and/or operated any vehicle for Uber which charged passenger(s) and received payment(s) for any rides based on measured time and mileage originating/beginning in the City of Atlanta from August 24, 2012 until present.[1] The Drivers are the "engine" that drives Uber.

11.     Plaintiffs seek injunctive and declaratory relief; disgorgement of all fares received by UBER and its drivers for fares originating in the City of Atlanta and charged based on measured mileage, distance and time; other damages against Uber and the Defendant Class including loss in value and rental values of CPNCs as allowed by law; and, attorneys' fees and expenses.

12.     Each of the named Plaintiffs is a CPNC owner and/or renter. All have (a) lost fares or income as the result of the Uber Defendants and the Defendant Class; (b) suffered diminution of the value of their CPNCs; and/or, (c) suffered lost rental values of their CPNCs.

15.

b. Whether the Uber Defendants and the Defendant Class have charged and received fares based on measured time, distance and mileage *retrospectively* that originated in the City of Atlanta and the total amount and/or profits of such fares;

---

[1] Specifically excluded from the Defendant Class are any members of Plaintiff Class and any member not a resident of Georgia on September 5, 2014.

c. Whether the Uber Defendants and the Defendant Class have operated as limousines, limousine carriers, taxicab companies or taxicabs in the City of Atlanta;

d. The conduct, plans, policies, common schemes and actions of the Uber Defendants and the Defendant Class in charging and collecting fares in any manner it chooses without regard to the Rules and Regulations of the City of Atlanta or the State of Georgia;

e. The conduct, plans, policies, common schemes and actions of the Uber Defendants and the Defendant Class in their failure to comply with all safety policies and regulations of the City of Atlanta or the State of Georgia;

f. The total amount of all charges and/or profits for fares collected by the Uber Defendants and the Defendant Class originating in the City of Atlanta and the proper methods of allocation and reimbursement to the Plaintiff Class and the respective subclasses;

After explaining Georgia laws on limousines, Plaintiff allege:

24.     Uber's vehicles are **metered**. The smartphone apps work as a meter, measuring time and distance, and charging accordingly.  The Uber smartphone app simply functions as a technologically advanced version of the taximeter. Uber's vehicles do NOT operate as limousines and are subject to Atlanta Taxi Ordinances Sec. 162-26 et seq. when using the smartphone app to calculate fares. Alternatively, any Uber vehicles considered to be limousines do not comply with state laws and regulations regarding licensing, car size, fares, insurance and others.

28.     O.C.G.A § 40-1-151(4) requires that no vehicle for hire may be operated as both a taxicab and a limousine. The same statute also provides that a limousine is unmetered. The Uber Black vehicles and SUVs operate as both.

Plaintiffs explain the hiring of drivers, their relationship to Uber and the use of

smartphones as meters:

32.     The Uber Defendants "hire" drivers allegedly as independent contractors to provide the advertised service, where the driver provides his or her own vehicle. Uber outfits these drivers with a cell phone preprogrammed turnkey system that allows the drivers to provide metered service almost identical to a taxicab. The primary distinction is that taxicab meters are physically connected to the vehicle's speedometer, are certified and sealed by the appropriate regulatory body, and are routinely inspected by same. Uber's "meter" app is not approved by any regulatory agency, and runs entirely from Global Positioning Satellite (GPS) signals built into the Uber driver's smart phone. Both methods measure time and distance of the for-hire transportation.

34.     Many of the Uber drivers (i.e. UberX drivers) do not pose as limousine carriers and do not provide commercial insurance covering passengers for bodily injuries, thus avoiding expenses of a licensed, legal taxicab or limousine.

36.     All "metered" trips measured by time and distance originating in the City of Atlanta conducted by the Uber Defendants and the Defendant Class are exclusively the province of licensed taxicabs with a CPNC, and thus Uber has unlawfully appropriated this business and concomitant revenue to itself and its drivers.

37.     The driver members of the Defendant Class are aware of the Uber Defendants' position that they are independent contractors. Injunctive or Declaratory relief against the individual named manager and drivers will as a practical matter stop all members of the Defendant Class from originating fares in the City Limits of Atlanta unless operating as a lawful limousine or limousine carrier.

Plaintiffs explain to the Defendant Class of drivers how their conduct intentionally

harms Plaintiffs and the Plaintiff class as follows:

40.     The Uber Defendants and the Defendant Class knew that operating a metered limousine or a vehicle for hire not regulated by the state in the City of Atlanta without a license or CPNC is/was illegal but chose to knowingly violate these legal requirements.  All Defendants and the Defendant Class had knowledge that their conduct would do harm to the Plaintiff Class and Subclasses in that they would take business away from Plaintiffs and the Plaintiff Class reducing revenues and resulting in damages to rental and property values of CPNCs. This is Uber's business plan.

Paragraph 41 of the Amended Complaint explains how several of the individuals

named as Defendants were cited for violations of city ordinances and the

Municipal court rejected arguments that they were not subject to Atlanta Taxi

Ordinances. The Amended Complaint explains to the Defendant Class how they

have caused damage:

44.     The Uber Defendants and the Defendant Class have caused third parties who use the services legally provided by the Plaintiff Class and Subclasses for transportation to use Defendants' illegal services resulting in lost business relationships with these customers and contracts for hire to use Plaintiffs' services which have damaged the Plaintiff Class by decreased revenues, rents, rental values of CPNCs and loss in value of CPNCs.

46.     The Uber Defendants and the Defendant Class have knowingly interfered with the relationship between the Plaintiff Subclasses causing less use of CPNCs and less time of use and rents of CPNCs. The Uber Defendants have knowingly interfered with the relationships between the Plaintiff Subclasses by enticing and hiring licensed taxicab and limousine drivers as Uber Drivers with false promises of increased income resulting in damage and harm to the Plaintiff Class.

47.     By operating a *de facto* taxicab business in the Atlanta area in violation of state and municipal regulations, Defendants have purposefully,

11

improperly, and without privilege, induced third parties mentioned above not to enter into or continue business relationships with Plaintiffs. By avoiding the costs associated with legitimate licensed taxicabs including but not limited to owning and/or renting a CPNC issued and sold by the City of Atlanta, proper insurance, safety regulations and regulated fares, Defendants offer lower fares. Defendants conspired with one another and acted in concert to harm Plaintiffs, the Plaintiff Class and Subclasses. These tortious activities are continuing.

48.    The wrongful operation of Defendants' business contrary to state and municipal regulations (which Defendants cause government officials not to enforce) has caused Plaintiffs financial injury.  All owners of CNPCs and members of Subclass 1 as defined in paragraph 9a above have suffered damages in that their CPNCs have lost substantial value and marketability. All members of Subclass 2 as defined in paragraph 9b above have suffered damages in that the rental value of their CPNC has been diminished due to the dilution of the Atlanta market by improperly increasing the amount of vehicles available to the public against all policies of the City of Atlanta. All members of the Plaintiff Class have suffered lost revenues, business income and damages due to the tortious conduct of the Uber Defendants and Defendant Class to prevent potential taxicab passengers and customers from using their services.

49.    Some members of Plaintiff Subclass 2 do not own a CPNC. Instead, they pay weekly or monthly rent pursuant to agreements with members of Plaintiff Subclass 1 or Taxicab companies. The Uber Defendants and the Defendant Class of independent contractor drivers and managers including Mr. Radford have tortuously interfered with these business relationships as described above for the use of CPNCs and conspired with one another to implement the schemes to destroy the taxicab business in the city of Atlanta and take fares from Plaintiffs.

50.    The Uber Defendants and Defendant Class herein, by improper action and wrongful conduct, without privilege, conspired with each other to create a plan, scheme and design whereby the Uber Defendants and managers including Mr. Radford would hire and use drivers without CPNCs as required for trips originating in the City of Atlanta or without complying

with the regulations and laws pertaining to limousines, taxicabs or taxicab companies.

51.     The Uber Defendants' and Defendant Class' actions as described above were purposeful and done with malice and with the intent to injure the Plaintiffs by actively interfering with the CPNCs by illegally increasing the number of vehicles for hire in the City of Atlanta with full knowledge of the consequences of their conduct.

52.     The purposeful action taken by the Uber Defendants and Defendant Class was with malice and with the intent to take clients away from Plaintiffs and the Plaintiff Class with the knowledge that their intentional acts would injure them financially.

53.     The Uber Defendants and the Defendant Class by their tortious actions described herein damaged the rental value of the CPNCs by diluting the market with an increase of vehicles for hire in the City of Atlanta by almost double the permitted amount.

54.     The unauthorized interference by the Uber Defendants and Defendant Class is intentional interference with business relationships that Plaintiffs have with their existing CPNC owners or renters and the City of Atlanta and due to their conduct, proximately cause damage to the Plaintiffs in an amount to be proven at trial.

Tortious interference with business relations is a distinct and separate

tort from tortious interference with  contractual  relations.  *Tom's  Amusement*

*Co., Inc. v.  Total  Vending   Services*, 243  Ga. App.  294, 533  S.E.2d 413

(2000).  In order to establish  a cause of   action  for tortious interference with

business relations, the Plaintiff must demonstrate that, absent the  interference,

those relations were reasonably likely to develop . *Hayes v. Irwin*, 541 F.Supp. 397 (N.D. Ga. 1982)(judgment affirmed) 729 F.2d 1466 (11th Cir. 1984); *see also, Wilson v. City of Sardis*, 264 Ga. App. 178, 590 S.E.2d 383 (2003). However, the Plaintiff need not show proof of a valid and enforceable contract. *Lake Tightsgueeze, Inc . v. Chrysler First Financial Services Corp.,* 210 Ga. App. 178, 435 S.E. 2d 486 (1993). Here, the CPNC owners certainly have a business relationship and potential relationship with the passengers.

Under Georgia law, the improper action or wrongful conduct in the first prong of a tortious interference claim is whether the action was an improper action or wrongful conduct. Generally, those types of claims involve physical violence, fraud or misrepresentation (as here), defamation, use of confidential information, and abuse of civil suits and/or unwarranted criminal prosecutions*. Sumter Regional Hospital Inc. v. Healthworks, Inc*., 264 Ga. App. 78, 589 S.E.2d 666 (2003). In determining whether a person's conduct is intentionally interfering with a business relation or a contract or a perspective contractual relation is improper, the recent Restatement of Torts, the approach of which has been adopted by Georgia courts, provides that consideration should be given to (1) the nature of the person's conduct; (2) the person's

14

motive; (3) the relations between the parties; (4) the interest sought to be advanced by the person; as well as, (5) the proximity or remoteness of the person 's conduct to the interference. *Orkin Exterminating Co., Inc. v. Martin,* 240 Ga. 662, 242 S.E.2d 135 (1978). Moreover, to be liable for the interference with contractual or business relations, one must be a stranger to both the contract and the business or contractual relationship giving rise to and underpinning the contract. *Pruitt Corp. v. Strahley*, 270 Ga. 430; 510 S.E. 2d 821 (1999). Because intentional interference is a pre-requisite, it presupposes knowledge of the Plaintiff's interest or facts that would lead a reasonable person to believe in their existence. *See, Hayes* at 397; *see also, Perry & Co. v. New South Ins. Brokers of Georgia, Inc*., 182 Ga. App. 84, 354 S.E.2d 852 (1987). For purposes of a claim for tortious interference, the term "malicious" means any unauthorized interference without justification or excuse. *Camp v. Eichelkraut,* 246 Ga. App. 275, 539 S.E. 2d 588 (2000). The act is deemed to be malicious under Georgia law when it is done with knowledge of the Plaintiffs rights and with the intent to interfere with those rights, as here. *Perry* at 84. The excerpts above from the Amended Complaint more than establish the Uber Drivers' and Mr. Radford's knowledge that they are taking business from taxicabs inside the city limits. Plain common sense

15

dictates this truth. That is the whole point of undercutting pricing and the predatory tactics used. Moreover, personal ill will or animosity is not essential to a finding of malice. See, *Hayes* at 1466, 1468.

With respect to the third prong in order to prove a tortious interference with business or contractual relations, the plaintiff must prove the defendant used wrongful means to induce a failure to perform a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff. *Dalton Diversified, Inc.  v. Amsouth Bank,* 270 Ga. App. 203, 605 S.E.2d 892 (2004).   There is no doubt that the Amended Complaint has stated facts which establish this prong.

Even if the Amended Complaint may sometimes refer to all Defendants as "Defendants", this is certainly consistent with a conspiracy claim. Driver Defendants and Mr. Radford should understand from reading the Amended Complaint that all participants in a conspiracy are liable for the acts of everyone even the ones of which they may have no knowledge or even happened before they worked with Uber. A conspiracy makes the act of any one conspirator chargeable to all and allows for the imposition of joint and several liability. *Summit Auto Grp.*

16

*V. Clark,* 298 Ga. App. 875,879,681 S.E.2d 681, 685 (2009) See also, *Cook v. Robinson*, 216 Ga. 328, 329(2), (4), 116 S.E. 2d 742 (1960).

There is no question that the tort of "intentional interference with business relations" in this case involves the driving of vehicles and picking up passengers. Although some claim corporations are people, the Uber Defendants certainly can't drive the cars. Mr. Radford and the Driver Defendants are part of a "conspiracy" upon which a civil action for damages may be found since their intentional actions are part of a combination between 2 or more persons to do an act which is a tort. It takes the actions of all of the Defendants to damage Plaintiffs. They all play a necessary part. When there is a conspiracy, there is no legal requirement for each individual Defendant to commit each element of the tort of intentional interference with business relations as Defendants would have one to believe. The Defendants have combined and acted in concert to commit the tort and cause Plaintiffs' damages. This is well described in the Amended Complaint.

Mr. Radford's argument regarding "reverse" vicarious liability is another straw man created by imaginative minds.  Plaintiffs wish to hold Mr. Radford responsible for his own wrongful conduct as part of the conspiracy. The Amended Complaint adequately describes his conduct of managing the

17

operations and drivers and his knowledge of the need for CPNCs and other requirements. A director, officer or agent is not liable for torts of the corporation or of other officers or agents merely because of his office. He is only liable for torts in which he has participated or which he has authorized or directed. *Coke v. City of Atlanta*, 184 F. Supp. 579 (N.D.Ga.1960). This is true for officers as well. *Jennings v. Smith*, 226 Ga. App. 765, 487 S.E.2d 362 (1997). Mr. Radford is alleged to have participated in this tort and is an integral part of this conspiracy. These FACTS  are unlike the facts in the case that Defendant cites, *Catlett v. Wyeth, Inc*. 379 F.Supp2d 1374 (M.D.Ga. 2004) where the defendant  was a salesman that followed a given script. Here, Radford is fully aware that Uber ignores ordinances and continues to help and aid Uber and all defendants in ignoring all laws. Of course, under a conspiracy theory, he is joint and severally liable as pointed out by his employer [Doc.40-1, p.20].

The Defendants' assertions regarding "shotgun" pleadings, legal conclusions or the failure to "delineate between claims of wrongdoing" are vacuous as demonstrated above. One has to wonder whether the Amended Complaint was actually read before drafting the motions. In drafting the Amended Complaint, Plaintiffs use the terms "Defendants", "Defendant

Class", or "Uber Defendants" when referring to misconduct committed collectively by each of the defendants. Otherwise, the Complaint would have been unreadable. The use of the word *illegal* goes to the violation of ordinances and statutes not as a legal conclusion to any element of the causes of action. Each time it is used, the statements stand on their own factually even if the words *illegal* or *illegally* are deleted.

If each one of the Defendants was specifically identified each time they are referred to collectively as Defendants demand, it would have been a nonsensical mess consisting of hundreds of pages. Defendant Class is used collectively because they each committed the same misconduct either driving, managing drivers or both. No Defendant could be under any misapprehension about what misconduct was attributed to each of them.  The Amended Complaint clearly gave Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v.  Scott*, 610 F.3d 701, 705 (11th Cir.  2010). It certainly "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Plaintiffs should be given the opportunity to Amend if needed.**

Plaintiffs have more than adequately stated their claims under Rule 12(b)(6), but should this Court find they have failed, the Plaintiffs request leave to amend in order to correct any deficiencies as determined by the Court. "A district court's discretion to dismiss a complaint without leave to amend is severely restricted by Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (reversing district court dismissal of complaint without leave to amend). Defendants' statement that Plaintiffs should be denied this opportunity since the Amended Complaint was filed seeks to implant Defendants as judge rather than this Court. That should not be tolerated. Plaintiffs should be given the opportunity to correct any defects this Court may find.

## CONCLUSION

The Amended Complaint--as it is actually written as opposed to as it is mischaracterized by the Uber Drivers and Mr. Radford--clearly states "a claim upon which relief can be granted" (Rule 12(b)(6)) and provides all Defendants with fair notice of the grounds of such claims as required by *Twombly* and *Iqbal.*

20

Plaintiffs respectfully submit that all three Motions of the Defendants should be

denied in their entirety.

   Respectfully submitted this 15th day of January, 2015.

                                            /s/  William A. Pannell
                                            William A. Pannell
                                            Georgia Bar No. 561025
                                            WILLIAM A. PANNELL, P.C.
                                            433 Chateau Drive, NW
                                            Atlanta, Georgia 30305
                                            TEL (404) 353-2283
                                            FAX (404)237-2384

Keith E. Fryer
Georgia Bar No. 279037
FRYER, SHUSTER & LESTER, PC
1050 Crown Pointe Parkway, Suite 410
Atlanta, GA 30338-7701
TEL (770) 668-9300
FAX (770) 668-9465
Of Counsel


## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

   I hereby certify that the foregoing pleading filed with the Clerk of Court has been

prepared in 14 point Times New Roman font in accordance with Local Rule

5.1(C).

Dated:  January 15, 2015.

                                            /s/  William A. Pannell
                                            William A. Pannell

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2015, I filed a copy of the foregoing

document using the Court's ECF/CM system, which will automatically send notice

of such filing to counsel for Defendants:

Michael W. Tyler (GA Bar No. 721152)
mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
Amit B. Patel
amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Arthur M. Roberts
arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor

San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Dated:  January 15, 2015.

/s/  *William A. Pannell*
William A. Pannell