# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Scott McCandliss, Dmidriy Abramyan, Abdikadir Ahmed, Ahmed Katun Ahmed, Ahmed Hassan, Ben Stewart Rountree, Faheem Iqbal Qureshi, Anthony D. Logan, Mohammed Abdulle, Hamoud S. Aldahbali, Jamal Abdi, Abdilahi Awale, and Mohamed A. Hussein,<br><br>        Plaintiffs,<br><br>   v.<br><br>Uber Technologies, Inc., Uber Technologies (GA), Inc., Rasier LLC, Keith Radford, Ahmed Simjee, Joshua Gantt, Leslie Gilmartin, Brian Giquel, Christopher Bosak, Christopher Johnson, Kevin Buttimer, Daniel Anderson, John Stettner, Rachel Pietrocola, Josh Varcoe, Fabian Fernandez, Aminur Choudhury, Seid Shek, Abebe Tesfaye, Samuel Worku, Jean Richard Pierre, Alexander Agbaere, Ayodele Okpodu, and Belay Dagnew,<br><br>        Defendants. | CIVIL ACTION NO. 1:14-CV-03275-WSD |

# UBER TECHNOLOGIES, INC., UBER TECHNOLOGIES (GA), INC. AND RASIER LLC'S REPLY IN SUPPORT OF THEIR <u>MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

I. Plaintiffs Fail To State A Claim For Tortious Interference With Business Relations And Conspiracy. ............................................................. 2

    A. The Amended Complaint Contains No Allegations That CPNC Owners Are Intended Third Party Beneficiaries Of Any Driver-Passenger Business Relations. .................................................................. 3

    B. CPNC Owners Do Not Have Business Relations With The Bureau Of Taxicabs & Vehicles For Hire. ............................................... 4

    C. The Lawfulness Of Uber's Operations Is Not A Fact That Can Be Proven With Evidence. ...................................................................... 7

II. The City And The Bureau's Alleged Lack Of Action Against Uber Does Not Give Rise To A Right To Declaratory Relief For Plaintiffs. .......... 9

III. Plaintiffs Cannot Invoke Unjust Enrichment As A Tort. .............................. 10

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Alexandre v. New York City Taxi & Limousine Comm'n*, No. 07 CIV. 8175 (RMB), 2007 WL 2826952 (S.D.N.Y. Sept. 28, 2007) ................................... 5

*Atlanta Nat. League Baseball Club, Inc. v. F.F.*, 328 Ga. App. 217, 761 S.E.2d 613 (2014) ................................................................................................ 9

*Byung Ho Cheoun v. Infinite Energy, Inc.*, 363 F. App'x 691 (11th Cir. 2010) ................................................................................................................ 11

*G&G TIC, LLC v. Alabama Controls, Inc.*, 324 F. App'x 795 (11th Cir. 2009) ................................................................................................................ 12

*Hadley v. City of Atlanta*, 232 Ga. App.871, 502 S.E.2d 784 (1998) ....................... 7

*In re Engle Cases*, 767 F.3d 1082 (11th Cir. 2014) ................................................ 12

*Meadow Springs, LLC v. IH Riverdale, LLC*, 323 Ga. App. 478, 747 S.E.2d 47 (2013) ........................................................................................................ 3

*Morris v. Britt*, 275 Ga. App. 293, 620 S.E.2d 422 (2005) ................................... 11

*Reg'l Pacesetters, Inc. v. Halpern Enterprises, Inc.*, 165 Ga. App. 777, 300 S.E.2d 180 (1983) ....................................................................................... 10

*Roy v. Fulton Cnty. Sch. Dist.*, No. 1:06-CV-0886J, 2007 WL 2274764 (N.D. Ga. Aug. 6, 2007), *aff'd*, 288 F. App'x 686 (11th Cir. 2008) ............. 10

*Tidikis v. Network for Med. Commc'ns & Research LLC*, 274 Ga. App. 807, 619 S.E.2d 481 (2005) ............................................................................... 11

**STATUTES**

42 U.S.C. §§ 1985(1), (3) ...................................................................................... 6

O.C.G.A. § 36-60-25(b) ........................................................................................ 4

# INTRODUCTION

As they did with their Amended Complaint, Plaintiffs have made clear with their Opposition that they are not interested in setting forth any reasoned arguments regarding the matters at issue here. Instead, Plaintiffs attempt to distract this Court with volumes of factual assertions not found anywhere in their Complaint and not at all related to Uber's operations in Atlanta. It is improper to introduce factual matter in opposition to a motion to dismiss, and as an initial matter, this Court should not consider any of the "exhibits" attached to or any of the new factual allegations found in Plaintiffs' Opposition. *E.g.*, Opp. at 5–6 (section entitled "WHO IS UBER?" and citing, *inter alia*, YouTube videos and news clippings).

Beyond the improperly introduced matter to which Plaintiffs dedicate a substantial portion of their Opposition, Plaintiffs do not provide any meaningful response to the arguments Uber set forth in support of its Motion. Their tortious interference claim depends solely on a purported factual allegation that Plaintiffs have no way of proving with evidence—namely that Uber allegedly unlawfully takes fares to which Plaintiffs are exclusively entitled. Further, there is no cognizable "business relationship" between Plaintiffs and the Bureau of Taxicabs & Vehicles for Hire. The relationship is not a business or contractual relationship;

it is a regulatory relationship, and Plaintiffs have not cited any authority that a tortious interference claim can be based on the alleged disruption of a regulatory relationship.

Plaintiffs' sole argument in support of request for declaratory relief from this Court is that no other entity will provide them with the declaration they seek; that is not a valid reason for this Court to entertain Plaintiffs' request. And finally, Plaintiffs offer no authority supporting their use of unjust enrichment as a separate tort rather than an alternate theory of recovery.

This Court should dismiss Plaintiffs' Amended Complaint in its entirety, and because Plaintiffs already have had two opportunities to state a claim, this Court should not grant them a third.

## ARGUMENT

**I. Plaintiffs Fail To State A Claim For Tortious Interference With Business Relations And Conspiracy.**

In support of its Motion, Uber identified three deficiencies with Plaintiffs' tortious interference claim: (1) CPNC owners, who simply lease their CPNCs and do not themselves drive, have no relations with potential taxicab passengers or customers; (2) ownership (or rental) of a CPNC does not give rise to a business relationship with the Bureau; and (3) regardless of (1) and (2), the only wrongful conduct alleged is Uber's alleged violation of Atlanta taxi regulations of which the

Bureau is charged with enforcement, which is insufficient.  Plaintiffs do not offer any persuasive response to any of Uber's arguments.

### A. The Amended Complaint Contains No Allegations That CPNC Owners Are Intended Third Party Beneficiaries Of Any Driver-Passenger Business Relations.

Uber argued that Count I for tortious interference should be dismissed as to those who are not members of the Driver Subclass—*i.e.*, the CPNC owners who do not drive—to the extent the Count is based on alleged interference between Plaintiffs and taxi passengers.  In response, Plaintiffs' only argument is that there is some indirect relationship between a CPNC owner's income and the taxi fares that a renter of that owner's CPNC collects.  Opp. at 13–14.  Plaintiffs cite no authority for the proposition that a non-contractual, indirect relationship is sufficient for purposes of a tortious interference claim.  The case law requires alleging that the defendant "induced a third party not to enter into or continue a business relationship with the plaintiff," *Meadow Springs, LLC v. IH Riverdale, LLC*, 323 Ga. App. 478, 480, 747 S.E.2d 47, 50 (2013), but the non-driver CPNC owners do not have any contractual or business relationship with passengers.  They do not do business with passengers; they do not know who the passengers are; and there is no contract between them.

Therefore, Count I, to the extent it is based on alleged interference with business relations between Plaintiffs and taxi passengers, should be dismissed as to those who are not members of the Driver Subclass.

### B. CPNC Owners Do Not Have Business Relations With The Bureau Of Taxicabs & Vehicles For Hire.

CPNC owners do not have a cognizable "business relation" with the Bureau of Taxicabs & Vehicles for Hire.  In their opposition, Plaintiffs fail to cite a single case supporting their argument that a transportation statute creates a business relationship between the Bureau and the individuals it governs.  Opp. at 12–13.  Instead, they rely on O.C.G.A. § 36-60-25(b)[1] and claim that the statute creates a "property right" in CPNCs.  But the statute merely states that the CPNC is freely transferable and can be used as collateral; it thus merely defines the contours of the rights associated with CPNCs and does not create them.  O.C.G.A. § 36-60-25(b).

---

[1] This subsection states: "(b) Each certificate of public necessity and convenience or medallion issued at any time by a county or municipal corporation shall be fully transferable pursuant to a purchase, gift, bequest, or acquisition of the stock or assets of a corporation to any person otherwise meeting the requirements of the applicable local ordinance. Each such certificate of public necessity and convenience or medallion may be used as collateral to secure a loan and each lending institution making such a loan shall have all rights of secured parties with respect to such loan."  O.C.G.A. § 36-60-25(b).

Even assuming, however, that the statute grants Plaintiffs a property right, that would still do nothing to show that Plaintiffs have a business or contractual relationship with the Bureau. First, the Bureau did not create the statute; the Legislature did. Second, Plaintiffs' argument would lead to the absurd result that if the Legislature amended the statute, Plaintiffs could sue for breach of contract. Third, business relationships are based on mutually consensual agreements, but statutes are unilaterally imposed by the Legislature. Plaintiffs never agreed to be bound by the statute; they simply are bound by the statute, and so the relationship is nothing like a business relation.

As Uber cited in support of its Motion, a case involving New York City taxi licensees did in fact recognize "property rights" in taxi licenses, just as Plaintiffs purport to have here. Br. at 9 (citing *Alexandre v. New York City Taxi & Limousine Comm'n*, No. 07 CIV. 8175 (RMB), 2007 WL 2826952, at *8 (S.D.N.Y. Sept. 28, 2007)). But the mere existence of property rights did not resolve the question of whether the New York regulatory body was obligated to protect those property rights for the licensees. Br. at 9. So too is the case here. Regardless of whether Plaintiffs have property rights in their CPNCs, Plaintiffs cite no authority to support the proposition that the Bureau is contractually obligated to Plaintiffs to protect Plaintiffs' investments in those CPNCs.

Plaintiffs' perfunctory argument that the cases Uber cited in support of its Motion are irrelevant because "they do not involve Georgia law" and because "[t]here is no way to determine if the ordinances involved are even similar" rings hollow.  Regardless of the specifics of the ordinances in place in New York, New Orleans, or Minneapolis, they are no different in the sole material way important to this case: the licenses in each city purportedly were assets in which the respective plaintiffs invested, and the plaintiffs sued the relevant municipal body alleging that it wrongfully allowed the values of those investments to decline.  Br. at 9 (citing cases rejecting such a theory).[2]

Plaintiffs fail to demonstrate that they have any business relations with the Bureau, and so Count I, to the extent it is based on alleged interference with business relations between Plaintiffs and the Bureau should be dismissed.

---

[2] Plaintiffs cite federal civil rights statutes, 42 U.S.C. §§ 1985(1), (3), apparently claiming that Uber and other Defendants conspired to deprive Plaintiffs of constitutional rights by allegedly interfering with relations between them and the Bureau.  Regardless of whether "there is even a federal cause of action for [Defendant's alleged] behavior," Plaintiffs do not actually assert those causes of action, nor do they relate to any of the causes of action Plaintiffs do assert.

### C. The Lawfulness Of Uber's Operations Is Not A Fact That Can Be Proven With Evidence.

As the foundation for their tortious interference claim, Plaintiffs allege that trips conducted by Defendants are "metered" trips that are "exclusively the province of licensed taxicabs with a CPNC." Opp. at 9. But these are legal conclusions, not facts. According to Plaintiffs, however, they can prove that Uber has "'unlawfully appropriated [that] business and concomitant revenue to itself and its drivers.'" *Id.* (quoting Am. Compl. ¶ 36). What Plaintiffs fail to realize is that it is impossible for Plaintiffs to prove, with evidence, that Uber does anything "unlawfully." If, as held in *Hadley v. City of Atlanta*, the Bureau is the entity responsible for enforcing Atlanta taxi regulations, 232 Ga. App.871, 872, 502 S.E.2d 784, 786 (1998) (stating "[i]t is undisputed that the Bureau is the entity charged with responsibility for enforcing city regulations governing vehicles for hire"), it is unclear how Plaintiffs intend to use this Court to prove that Uber has violated those regulations. Plaintiffs do not allege, nor could they, that the Bureau has made any determination regarding the applicability of current law to a technology company like Uber. Further, allowing the case to proceed under Plaintiffs' current allegations puts Uber (and Plaintiffs) at risk of inconsistent outcomes; Uber could end up in the paradoxical situation wherein it is found to be

liable to Plaintiffs under their tortious interference claim, but its operations are approved by the Bureau.

Plaintiffs further argue that "the above allegation taken as true excluding the word 'unlawfully' clearly establishes" wrongful conduct, but they fail to explain how that conduct is wrongful if it is not "unlawful." Plaintiffs do not, for example, cite any authority holding that there is anything inherently wrongful about "'metered' trips measured by time and distance originating in the City of Atlanta conducted by the Uber Defendants and the Defendant Class" such that they could form the basis for a tortious interference claim. Plaintiffs' boilerplate description of that alleged conduct as "fraudulent, deceptive, misrepresentative," and "*predatory*" lacks any factual allegations and is unavailing. Opp. at 9 (emphasis in original). Nowhere in the Amended Complaint are there any factual assertions that would support an inference that Uber does anything in a fraudulent, deceptive, misrepresentative, or predatory manner (nor are there even any conclusory allegations of such conduct).

Given that Plaintiffs must properly allege wrongful conduct in order to state a tortious interference claim, and that the only allegation of wrongful conduct in support of Plaintiffs' tortious interference claim is conduct that Plaintiffs label as unlawful, this Court should dismiss Count I in its entirety.

## II. The City And The Bureau's Alleged Lack Of Action Against Uber Does Not Give Rise To A Right To Declaratory Relief For Plaintiffs.

Once again citing no authority and not responding to the arguments Uber set forth in support of its Motion, Plaintiffs argue that this Court "must" issue a declaration as to whether Uber is violating city ordinances and state laws. Opp. at 14. Plaintiffs' sole reason for this demand is, in essence, that Plaintiffs cannot turn to any other entity to seek such relief.[3] As Uber articulated in support of its Motion, that is not a valid reason for seeking declaratory relief under federal law or under Georgia law.

Plaintiffs do not offer any authority in response to that which Uber cited in support of its Motion. Plaintiffs do not claim to be in a position of any uncertainty as to any rights of their own; they seek only a declaration as to Uber's rights. *See Atlanta Nat. League Baseball Club, Inc. v. F.F.*, 328 Ga. App. 217, 220, 761 S.E.2d 613, 615–16 (2014). Under those circumstances, Plaintiffs would be seeking only an advisory opinion, which Georgia law does not provide for. *Id.* at 221, 761 S.E.2d at 616. The same is true under federal law. *Roy v. Fulton Cnty.*

---

[3] Plaintiffs improperly cite a declaration filed alongside their Opposition in support of their argument.

*Sch. Dist.*, No. 1:06-CV-0886J, 2007 WL 2274764, at *4 n.4 (N.D. Ga. Aug. 6, 2007), *aff'd*, 288 F. App'x 686 (11th Cir. 2008).

### III.   Plaintiffs Cannot Invoke Unjust Enrichment As A Tort.

Claiming that the authority Uber cited in support of its Motion is not a "valid legal decision," Plaintiffs believe that they can invoke the theory of unjust enrichment based solely on allegations that Uber violated Plaintiffs' purported property rights in fares measured by time and mileage originating in the City of Atlanta.  Citing *Reg'l Pacesetters, Inc. v. Halpern Enterprises, Inc.*, 165 Ga. App. 777, 782, 300 S.E.2d 180, 185 (1983), Plaintiffs claim that they have stated a claim for unjust enrichment because "the benefitted party was not a party to the contract" at issue in the case.  Opp. at 19.  Plaintiffs provide an overly simplified reading of *Pacesetters*.  In that case, the plaintiff sublessee of the defendant's property made substantial improvements to the defendant's property, allegedly because the defendant's conduct caused the plaintiff to believe that it exercised an option to renew its lease on the defendant's property for five years.  165 Ga. App. at 782, 300 S.E.2d at 185.  The defendant was not obligated to honor the plaintiff's attempt to exercise that renewal option, but whether the defendant was unjustly enriched in the amount the plaintiff expended to improve the defendant's property was held to be a proper question for the jury.  *Id.*

Here, unlike in *Pacesetters*, there is no failed contract that would have otherwise governed the parties' relationship. Plaintiffs do not allege that there ever was, is, or could have been a contract between Uber and Plaintiffs, and all Plaintiffs allege is that Uber violated a property right of theirs.

"[A] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." *Tidikis v. Network for Med. Commc'ns & Research LLC*, 274 Ga. App. 807, 811, 619 S.E.2d 481, 485 (2005). "The doctrine of unjust enrichment allows a party to seek the return of or payment for transferring a good or providing a service for which he has not received compensation." *Byung Ho Cheoun v. Infinite Energy, Inc.*, 363 F. App'x 691, 696 (11th Cir. 2010) (citing *Morris v. Britt*, 275 Ga. App. 293, 294, 620 S.E.2d 422, 424 (2005)). In other words, a plaintiff asserting unjust enrichment must have affirmatively conferred some benefit onto the defendant for which the plaintiff now seeks compensation. *See id.* But when a plaintiff simply "complain[s] of tortious conduct" and "do[es] not seek compensation for some benefit [it] conferred," an unjust enrichment claim does not apply. *Cheoun*, 363 Fed. App'x. at 696.

Plaintiffs here, like the plaintiffs in *Cheoun*, simply complain of tortious conduct but do not properly allege they conferred a benefit on to Uber. Therefore, this Court should dismiss Count III.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Amended Complaint in its entirety, without leave to amend.  The deficiencies identified in the Amended Complaint cannot be resolved by amendment, and a denial of leave to amend as futile is proper.  *G&G TIC, LLC v. Alabama Controls, Inc.*, 324 F. App'x 795, 799 (11th Cir. 2009).  Moreover, "Rule 15's liberal amendment standard is not an unqualified license to fix every new defect."  *In re Engle Cases*, 767 F.3d 1082, 1123 (11th Cir. 2014).

Respectfully submitted, this 2nd day of February, 2015

UBER TECHNOLOGIES, INC., UBER TECHNOLOGIES (GA), INC., AND RASIER LLC

By  /s/ Stephen A. Swedlow
Stephen A. Swedlow

Stephen A. Swedlow (*pro hac vice*)
   stephenswedlow@quinnemanuel.com
Amit B. Patel (*pro hac vice*)
   amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone:  (312) 705-7400
Facsimile:   (312) 705-7401

Arthur M. Roberts (*pro hac vice*)
   arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:  (415) 875-6600
Facsimile:   (415) 875-6700

Michael W. Tyler (GA Bar No. 721152)
   mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
   jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
   randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:   (404) 815-6555

LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: February 2, 2015.

/s/ Stephen A. Swedlow
Stephen A. Swedlow

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2015, I filed a copy of the foregoing document using the Court's CM/ECF system, which will automatically send notice of such filing to counsel for Plaintiffs:

> William A. Pannell
> WILLIAM A. PANNELL, P.C.
> 433 Chateau Drive, NW
> Atlanta, GA 30305

I further certify that on February 2, 2015, I served a copy of the foregoing to counsel for Plaintiffs by depositing a copy in the U.S. Mail, first class postage prepaid, addressed as follows:

> Keith E. Fryer
> FRYER, SHUSTER & LESTER, PC
> 1050 Crown Pointe Parkway, Suite 410
> Atlanta, GA 30338

/s/ Amit B. Patel
Amit B. Patel

04978.00012/6472178.1