```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF GEORGIA
 2                            ATLANTA DIVISION

 3    SCOTT McCANDLISS, et al.        )
                                      )
 4                  Plaintiffs,       )     CIVIL ACTION FILE
                                      )     NO. 1:14-CV-3275-WSD
 5    v.                              )
                                      )       ATLANTA, GEORGIA
 6    UBER TECHNOLOGIES, INC., et al. )
                                      )
 7                  Defendants.       )
      _____)

 8

 9                     TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE WILLIAM S. DUFFEY, JR.,
10                  UNITED STATES DISTRICT JUDGE

11                      Friday, May 29, 2015

12

13    APPEARANCES OF COUNSEL:

14    For the Plaintiffs:      WILLIAM A. PANNELL PC
                               (By:  William A. Pannell)
15
                               FRYER SHUSTER & LESTER PC
16                             (By:  Keith E. Fryer)

17    For the Defendants:      QUINN EMANUEL URQUHART &
                               SULLIVAN LLP
18                             (By:  Stephen Andrew Swedlow)

19                             KILPATRICK TOWNSEND & STOCKTON LLP
                               (By:  Michael W. Tyler)
20

21

22          Proceedings recorded by mechanical stenography
                and computer-aided transcript produced by
23                  NICHOLAS A. MARRONE, RMR, CRR
                       1714 U. S. Courthouse
24                     75 Spring Street, S.W.
                       Atlanta, GA  30303
25                        (404) 215-1486
```

```
 1                    Friday Morning Session

 2                       May 29, 2015

 3                        9:38 a.m.

 4                       -- -- --

 5               P R O C E E D I N G S

 6                       -- -- --

 7                    (In chambers:)

 8          THE COURT:  This is the status conference in

 9   McCandliss versus Uber Technologies and others, which is

10   Civil Action No. 14-3275.

11          Would counsel announce their appearances, please,

12   starting with the plaintiffs?

13          MR. PANNELL:  Bill Pannell for plaintiffs.

14          MR. FRYER:  Keith Fryer for plaintiff.

15          MR. TYLER:  For the defendants, Your Honor,

16   Michael Tyler with Kilpatrick Townsend.  It's my privilege to

17   introduce Steve Swedlow, who has traveled here, with the

18   Quinn Emanuel firm from Chicago, who is lead counsel for the

19   Uber defendants.

20          THE COURT:  So that would be your local counsel

21   saying you are going to do all the work this morning.

22          MR. SWEDLOW:  No comment.

23          THE COURT:  Well, I thought the status conference

24   was a good idea, and I like the agenda.

25          We have been looking at the case and have been
```

1    working on it when this legislation was passed and wasn't

2    sure if the legislation had any impact -- which I guess the

3    governor has signed now?

4           MR. TYLER:  I think he has.

5           THE COURT:  I think I read something in the paper

6    about that.

7           We had already been looking at what's been filed in

8    the case, and it might be helpful for me to give you some

9    backdrop on where I think we probably are, and maybe we can

10   begin by cleaning some things up and then focus on what

11   further action we might need in order to focus the issues in

12   the case.

13          I know there is a pending motion to remand, and we

14   are looking at that.

15          But the case was removed here in October, and

16   shortly after it was removed, Uber and the defendant drivers

17   and Keith Radford filed motions to dismiss on the

18   originally-removed complaint.

19          And it was about sixteen days after that that there

20   was a first amended complaint.

21          MR. PANNELL:  Right.

22          THE COURT:  I think that probably renders moot the

23   first motions to dismiss because there is a new complaint.

24   And I would think that everybody -- if we could agree with

25   that, why don't we just deny those as moot and move on to the

1    next tranche of motions to dismiss.

2              Is everybody agreeable to that?

3              MR. TYLER:  That's acceptable to us, Your Honor.

4              MR. PANNELL:  Yes.

5              THE COURT:  Okay.  So the first amended complaint

6    then was filed on the 26th of November, and a month later

7    fairly similar motions to dismiss were filed by Uber, the

8    defendant drivers and Radford.

9              And I have looked at what the claims are in each of

10   those.  I mean, they are a little bit different.  They are

11   somewhat more elaborated on I guess the tortious interference

12   claim in particular, and then there are some other factual

13   content that was added.

14             But it looks now like that there are now three

15   pending motions to dismiss with respect to the first amended

16   complaint.

17             MR. TYLER:  Yes, sir.

18             THE COURT:  And I think based upon the request for

19   the status conference, the question is will there be a

20   further amended complaint, and, if so, what do we do.

21             MR. PANNELL:  Right.

22             THE COURT:  So that's I guess where I would begin,

23   if everybody is agreeable to that.

24             MR. PANNELL:  And I can begin or Steve can.

25             MR. SWEDLOW:  Well, I can't answer whether there is

1    going to be an amended complaint, so why don't you begin.

2              THE COURT:  Well, unless he's told you there is

3    going to be.

4              MR. SWEDLOW:  Well, Your Honor, we had a

5    conversation about that, and I think -- I don't want to speak

6    for plaintiffs' counsel, but they did not indicate one way or

7    another.

8              We would in this context be reactive, meaning if

9    there is an amended complaint, we would again agree that the

10   prior motion to dismiss is mooted by the amended complaint,

11   and we would as quickly as you required file a motion to

12   dismiss or a response to whatever the amendment is.

13             THE COURT:  Yeah.

14             MR. SWEDLOW:  My view is that I believe in the

15   merits of the original and the second motions to dismiss that

16   were filed, but I do believe there are aspects of the

17   complaint that can't exist under the new -- the two pieces of

18   legislation.

19             THE COURT:  Right.

20             MR. SWEDLOW:  And so --

21             THE COURT:  Well, rather than --

22             MR. SWEDLOW:  Okay, I'm sorry.

23             THE COURT:  I mean, you are just trying to persuade

24   him that he has to file an amended complaint.

25             MR. PANNELL:  Right.

1          THE COURT:  I think the nuts and bolts is will
2     there be an amended complaint.
3          MR. PANNELL:  There needs to be, simply because
4     the new laws which will go into effect June 1st will
5     essentially moot our claims for declaratory injunctive
6     relief, first.
7          THE COURT:  Right.
8          MR. PANNELL:  And then it will also put a limit on
9     damages as to -- I mean, we will still have a damage claim up
10    till July 1st, but after that Uber will be operating under
11    this new law that has been passed.
12         THE COURT:  Right.
13         MR. PANNELL:  So it will stop that.  There may be
14    some additional things.
15         I know there are some things we need to clean up,
16    such as I know we have been trying for a long time, there was
17    some confusion about the names of the defendants with
18    Uber Technologies, and then there was an Uber Georgia, and
19    I kept asking is this the same corporation or not.
20         And I think Arthur Roberts and I, when we were
21    trying to put together a preliminary report, Uber finally
22    said, yes, they are the same corporation.  It's just there
23    was another Uber in Georgia, so when they came to register
24    here, they had to amend their name a little bit so it wasn't
25    the same named corporation.

1           THE COURT:  Well, what I want is -- I mean, that's
2    the sort of stuff, I don't want you to --
3           MR. PANNELL:  Yeah, that's --
4           THE COURT:  There is no reason for us to delay the
5    prosecution of the claims because there is not the sort of
6    cooperation that I would expect, which is, here, look, you
7    have got a complaint, we know you are going to have a
8    complaint, and we can spend a lot of time and effort and
9    money trying to figure out exactly who the defendants are.
10   There ought to be a conversation about that.
11          And if that needs to be cleaned up in the amended
12   complaint, we ought to -- a further amended complaint, we
13   need to do that.
14          MR. SWEDLOW:  I don't -- I don't want to
15   misunderstand what you are saying.  Are you saying that there
16   is some more information you need?
17          MR. PANNELL:  No.
18          MR. SWEDLOW:  Okay.
19          MR. PANNELL:  I finally got the information from
20   Arthur that I have been looking for, just is this the same
21   company or not.
22          And I don't think there is a necessity, unless you
23   do, to name both Uber Technologies, Inc., and
24   Uber Technologies, paren, GA, Inc.
25          THE COURT:  Well, what I will do is I will let you

1    all have a discussion about that and work that out.

2            MR. PANNELL:  Yeah, fine.

3            THE COURT:  If there is going to be a second

4    amended complaint, let's -- and I am assuming you don't have

5    to wait until July 1st to do that, because the legislation

6    has been signed.

7            MR. PANNELL:  No.

8            THE COURT:  I guess it just becomes effective on

9    July 1st.

10            MR. PANNELL:  Right.

11            THE COURT:  What would be a reasonable date to

12    require the filing of the second amended complaint?

13            MR. PANNELL:  Within like two weeks, three weeks,

14    something like that?

15            THE COURT:  Do we have our calendar?  I should have

16    pulled that.

17            MR. PANNELL:  I have got one somewhere here.

18            THE COURT:  So today is -- do you want to file it

19    by June 15th?

20            MR. PANNELL:  That will work.

21            THE COURT:  That's basically two weeks.

22            MR. PANNELL:  Right.

23            THE COURT:  And I am predicting that the new

24    motions to dismiss will substantially track the old ones,

25    although, if anything, there will probably be content taken

1    out, but maybe not.

2            I always say that by saying, well, what would be a

3    reasonable date by which I would require you to file now new

4    motions to dismiss in response to the second amended

5    complaint.

6            MR. SWEDLOW:  Two weeks.

7            THE COURT:  So we will maybe give you two.  So

8    Monday -- the 15th is Monday.  Do you want to do it on the

9    29th?

10           MR. SWEDLOW:  Okay.

11           THE COURT:  Okay.  And with the representation that

12   there will be a second amended complaint, do we want to go

13   ahead and just withdraw the motion, the pending motions to

14   dismiss and refile them?

15           MR. SWEDLOW:  Yes.

16           THE COURT:  Okay.  So we will just do a docket

17   entry on that, if you are agreeable to that?

18           MR. SWEDLOW:  Yes, I am agreeable.

19           MR. TYLER:  Yes.

20           THE COURT:  All right.  So then I think that cleans

21   up what is pending, and what we will ultimately be dealing

22   with are new motions to dismiss in response to a second

23   amended complaint, which will be necessary only once we

24   decide what we do on the motion to remand.  But I want to go

25   ahead and just start that process.

```
 1              MR. SWEDLOW:  Yes.

 2              THE COURT:  All right.  On the -- I was just

 3   curious why we want to correct the docket.  I have never had

 4   anybody want to correct a bureaucrat's interpretation of a

 5   complaint.

 6              MR. PANNELL:  Well, the problem is once the case

 7   comes up here, the clerk's office says they can't do

 8   anything.

 9              THE COURT:  I have never --

10              MR. PANNELL:  It has to be you.

11              And here is the problem.  I have run into this

12   before, and it just causes confusion somewhere, whether it's

13   on an appeal or whatever.  But the civil cover sheet -- and I

14   think it was an attempt to try to get an extended discovery

15   period, and the cover sheet really doesn't have an option for

16   that.

17              So somehow the case got labeled that it's an

18   antitrust case with federal question jurisdiction.  And, you

19   know, when someone else looks this case up, I have run into

20   this before, then they call me up, and it -- it causes some

21   confusion if there is an appeal somehow.

22              THE COURT:  I can see that.

23              MR. PANNELL:  That's all.  And I think I had --

24              THE COURT:  Well, we are just going to correct --

25   because I understand that you don't object to it, we are just
```

1    going to --

2              MR. TYLER:  We don't, Your Honor.  The only point

3    that we requested was the discovery track be eight months.

4              MR. PANNELL:  Right.

5              MR. TYLER:  And so with that, we are fine.

6              MR. PANNELL:  Which is no problem with a class

7    action.

8              And we had submitted an order before that, so if

9    that's --

10             THE COURT:  I think we are just -- we are not even

11   going to -- we have a more informal way of doing this.

12             MR. PANNELL:  Good.

13             MR. FRYER:  Do you know what it should be changed

14   to?

15             MR. PANNELL:  Yeah.  That's what we put in the

16   order and it's also in the motion.

17             THE COURT:  Yeah, so we have got that.  So we will

18   take care of that today.

19             MR. SWEDLOW:  Since this is being transcribed,

20   I would only note for the record that on the civil cover

21   sheet when we removed the case, we didn't check federal

22   question.  We checked diversity count.

23             MR. PANNELL:  Right, right.

24             MR. SWEDLOW:  So it was just a clerical error.

25             MR. PANNELL:  Yes.

1       THE COURT:  That happens more than I would like for

2  it to happen.

3       No, we will correct that.  We will do that today.

4       And now let me predict what the issue is about the

5  partners of Rasier L.L.C.  Does it relate to my standard

6  order about having to identify who all the members are of an

7  L.L.C.?

8       MR. PANNELL:  Yes.

9       MR. SWEDLOW:  I think so.

10      THE COURT:  The purpose of that is -- and it's

11  really interesting in view of the clear circuit authority

12  when somebody claims diversity of citizenship jurisdiction,

13  that they ignore that the circuit is adamant that you have to

14  identify the members of an L.L.C. because for the purposes of

15  diversity analysis, you have -- each of the members have to

16  be diverse from the plaintiff.

17      And we spend a lot of time sending out orders

18  requiring people to state who the members are, especially on

19  removal.  Because I have a case that the circuit, even

20  though -- it's a long story, but I addressed it early and was

21  satisfied with the lawyers' representation that there was

22  diversity after having done an investigation.

23      One party did not do well here and they appealed.

24  The circuit asked them the same question, and they said,

25  you know, identify who all the members of the L.L.C. are,

1    and, lo and behold, they found out there was no diversity.

2         And so we invested two years and about four 50- to

3    60-page orders dealing with the case to find out that

4    everything I had done was without jurisdiction.  So I think

5    it was about that time that we amended this.

6         But it does not apply to CAFA cases, and so,

7    therefore, you don't have to tell me who the partners are as

8    I require you in the standard instructions, because that was

9    not intended where there is a minimal diversity requirement.

10   That concern is mooted.

11        MR. PANNELL:  I appreciate the explanation.

12   I assumed, incorrectly, that it might have something to do

13   with conflicts or relations and that type thing.

14        THE COURT:  No.

15        So we will take -- so whoever wanted that, there is

16   no obligation to provide it.

17        MR. PANNELL:  Okay.

18        THE COURT:  And then there is, finally,

19   Judge Thrash's case that I guess was a '13 case, *Delta Cab v.*

20   *City of Atlanta*, and whether it is related to this case,

21   related for the purposes of our internal operating assignment

22   procedures as opposed to seeming to be about the same general

23   genre of issues.

24        MR. PANNELL:  His case concerns certificates of

25   public necessity and convenience, and it was attacked by a

1    group of taxicab people saying they had violated the equal

2    protection clause, due process clause.  They wanted to give

3    more of them.

4         And Judge Thrash decided the case basically in our

5    clients' favor that, you know, the CPNCs are protected, it's

6    rationally related, that they could limit them.  And so

7    that's on appeal to the Eleventh Circuit.

8         Obviously if that went the other way and the

9    property in this case was somehow found to be

10   unconstitutional, that would have a huge effect on our claim

11   as well as our clients' monetary losses.

12        So that's the reason we had said, you know, this is

13   certainly related.  It's the same property.

14        THE COURT:  Well, related for us is for the

15   purposes of assignment.  And I have looked at it again.  I

16   know the clerk's office looked at this to begin with.  So it

17   doesn't qualify as being related for the purposes of what

18   judge gets it.

19        And that's important to us to make sure that people

20   don't just claim something is related to try to get it to the

21   judge that they would prefer to have -- or at least not get

22   it to the judge that they don't want to have.

23        So we will have to just -- it might have an impact

24   on this case, but we will just have to see was the circuit

25   does.

1           MR. PANNELL:  Exactly, exactly.

2           THE COURT:  And then the last, I guess, was the

3   completion of a joint preliminary report and discovery

4   plan.  I'm not quite sure what that issue was.

5           MR. PANNELL:  You know, we looked at it,

6   I communicated a lot with Arthur Roberts out in the

7   California office.  You know, we looked back at the rule, and

8   it requires that to be filed after motions to dismiss are

9   filed.

10          THE COURT:  Right.

11          MR. PANNELL:  And in this case, it doesn't mention

12  a motion to remand.  We went back and forth in discussions,

13  and it just became complicated because, you know, it's before

14  discovery -- you know, the discovery plan is about discovery,

15  and we are not even starting discovery.

16          THE COURT:  Right.  Well, I wouldn't -- it's true,

17  there are going to be motions to dismiss.  The purpose of the

18  preliminary report and discovery plan for me in managing the

19  case is to see what is the case really about.

20          The case might be different after motions to

21  dismiss are cited and certainly would be different after the

22  motion to remand is decided, depending upon what I decide.

23          So don't worry about that --

24          MR. PANNELL:  Okay.

25          THE COURT:  -- until after we find out what my

1     rulings are on the motions.

2             MR. PANNELL:  I believe the only thing left on this

3     list is the motion for remand, which you mentioned.

4             THE COURT:  Yes, there is a motion to remand.  It

5     is pending.  It is not decided.

6             MR. PANNELL:  And the new law, we feel -- we hadn't

7     mentioned it, but I would just mention it casually, I guess,

8     is that we feel that the new law also affects that to a

9     certain respect in that it is a Georgia case.  There is no

10    federal issue involved in applying this new law and applying

11    it to this case.

12            So there is really -- I mean, this is a complete

13    diversity case with local people, local drivers, Georgia

14    residents.  The only out-of-state people are Uber, which

15    qualifies under CAFA, but everything else about this case

16    just reflects that it really is a local controversy, which we

17    strongly feel that CAFA doesn't need to be -- and federal

18    courts don't need to be interpreting this new statute and

19    that it is better suited for state courts.

20            THE COURT:  Well, you know, we have an insatiable

21    appetite to decide disputes.

22            Why don't -- would you like to -- in light of the

23    new legislation, would you like to supplement your briefing

24    on that?

25            MR. PANNELL:  Yes.

1          THE COURT:  Could you do that in a couple of weeks

2     too?

3          MR. PANNELL:  Absolutely.

4          THE COURT:  So why don't we do that.

5          How long would you have to respond to a supplement,

6     which probably is not going to be lengthy?

7          MR. SWEDLOW:  A couple weeks.

8          Yeah, the only reason I would want a couple weeks

9     is I struggle to understand how the legislation would impact

10    the CAFA federal jurisdiction, so I would have to see what is

11    said.

12         The amount in controversy is determined at the time

13    of removal, and it's minimal diversity.  So the fact that

14    there is also a state regulation doesn't make it -- unless

15    there was something in the state regulation that said you can

16    only bring claims in state court, I don't see how it could

17    impact the --

18         THE COURT:  It might not, but if they want to

19    supplement it, that seems to be a fair thing to do.

20         And if you don't mind double-tracking, so you will

21    have two filings on each of the two dates that I gave you,

22    let's just do that.

23         MR. PANNELL:  That's fine.

24         MR. SWEDLOW:  No problem.  So the remand I guess it

25    would be response would be also due June 29th?

```
1              THE COURT:  Yes.  And if you go back and talk to

2    your --

3              MR. FRYER:  We file the supplemental brief on

4    June 15th, and then they will respond to it two weeks later?

5              MR. PANNELL:  Right.

6              THE COURT:  I guess if you want to reply -- I guess

7    we probably ought to set that too.  Why don't we set the

8    reply for July 6th.

9              MR. SWEDLOW:  Thanks for a good holiday.

10             THE COURT:  Well, that gives you a lot of free time

11   to write it.

12             MR. SWEDLOW:  No phones ringing.

13             So that would be plaintiff's reply on the remand

14   and defendant's reply on the motion to dismiss both due July

15   6th?

16             THE COURT:  You know, maybe that's not fair.  Why

17   don't we make it the 8th.  Your reply is due on the 8th of

18   July, so that in case people are taking time off over the

19   July 4th holiday -- because I think the holiday is the 3rd

20   and that only gives you a couple of days.

21             MR. PANNELL:  And our supplement is still due the

22   15th of June?

23             THE COURT:  Yes.

24             MR. PANNELL:  Okay.

25             MR. FRYER:  And their reply is now due the 8th?
```

```
1              THE COURT:  Your reply.

2              MR. FRYER:  Our reply to their -- okay.

3              THE COURT:  To their response.

4              MR. PANNELL:  Right.

5              MR. SWEDLOW:  The both would -- and the reply on

6    the motion to dismiss would also be due?

7              THE COURT:  Yes.

8              MR. PANNELL:  Right, July 8th, and then the 29th,

9    okay.  Good.

10             THE COURT:  Okay.  I think that's everything that

11   I saw that was on your agenda.  But we are all here

12   together.  Is there anything else you want to talk about?

13             MR. PANNELL:  I'm trying to figure out what's on

14   fire out there.

15             THE COURT:  There is always something on fire out

16   there.

17             MR. PANNELL:  There's a bonfire, a landfill or

18   something over there smoldering.

19             THE COURT:  This is off the record.

20             (Informal discussion held off the record.)

21             THE COURT:  Well, the record would show that we

22   were concluded on all of our discussion before you stopped at

23   my direction.

24             All the chitchat will not be in the

25   transcript.  I don't want you to have to pay for that if
```

1   anybody wanted to order it.

2           So thank you for coming.  This was helpful.  We

3   have a schedule in place, and we will be talking more.

4           MR. SWEDLOW:  You don't need us to submit any

5   proposed order?  It will just be a minute order?

6           THE COURT:  We will do all that.

7           MR. SWEDLOW:  Thank you, Your Honor.

8           THE COURT:  You are welcome.

9              (Proceedings adjourn at 10:08 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA        :
                                      :
4    NORTHERN DISTRICT OF GEORGIA     :

5

6            I, Nicholas A. Marrone, RMR, CRR, Official Court

7    Reporter of the United States District Court for the Northern

     District of Georgia, do hereby certify that the foregoing 21

8    pages constitute a true transcript of proceedings had before

9    the said Court, held in the city of Atlanta, Georgia, in the

10   matter therein stated.

11           In testimony whereof, I hereunto set my hand on

12   this, the 29th day of May, 2015.

13

14

15

16                          /s/ Nicholas A. Marrone
17           _____
                            NICHOLAS A. MARRONE, RMR, CRR
18                          Registered Merit Reporter
                            Certified Realtime Reporter
19                          Official Court Reporter
                            Northern District of Georgia
20

21

22

23

24

25