**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Scott McCandliss, Dmidriy Abramyan, Abdikadir Ahmed, Ahmed Katun Ahmed, Ahmed Hassan, Ben Stewart Rountree, Faheem Iqbal Qureshi, Anthony D. Logan, Mohammed Abdulle, Hamoud S. Aldahbali, Jamal Abdi, Abdilahi Awale, and Mohamed A. Hussein,<br><br>      Plaintiffs,<br><br>  v.<br><br>Uber Technologies, Inc., Rasier LLC, Keith Radford, Ahmed Simjee, Joshua Gantt, Leslie Gilmartin, Brian Giquel, Christopher Bosak, Christopher Johnson, Kevin Buttimer, Daniel Anderson, John Stettner, Rachel Pietrocola, Josh Varcoe, Fabian Fernandez, Aminur Choudhury, Seid Shek, Abebe Tesfaye, Samuel Worku, Jean Richard Pierre, Alexander Agbaere, Ayodele Okpodu, and Belay Dagnew,<br><br>      Defendants. | CIVIL ACTION NO. 1:14-CV-03275-WSD |

**DRIVER DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Ahmed Simjee, Joshua Gantt, Brian Giquel, Christopher Bosak, Christopher Johnson, Kevin Buttimer, John Stettner, Rachel Pietrocola, Josh Varcoe, Fabian Fernandez, Aminur Choudhury, Seid Shek, Abebe Tesfaye, Samuel Worku, Jean Richard Pierre, Alexander Agbaere, Ayodele Okpodu, and Belay Dagnew (the "Driver Defendants")[1] move the Court to dismiss Plaintiffs' Second Amended Complaint [Dkt. No. 53] with prejudice.

In support of this Motion, the Driver Defendants respectfully show the Court as follows:

## INTRODUCTION

With their third bite at the proverbial apple, Plaintiffs remain unable to meet their pleading obligations with respect to the Driver Defendants. Despite Plaintiffs' protestations to the contrary, and their attempts to pile on pages of conclusory recitations of basic legal elements, the truth remains that the Driver Defendants—third-party transportation providers who have at one time or another

---

[1] This motion is also not submitted on behalf of Leslie Gilmartin or Daniel Anderson, although the Driver Defendants respectfully submit that each argument made herein would be equally applicable to both defendants. This motion is also not submitted on behalf of Keith Radford—although the SAC lumps Mr. Radford in with the Driver Defendants, he is a conceptually separate party, and will be filing a separate motion to dismiss.

allegedly used Uber's software application to receive transportation requests ("Drivers")—are named as parties to this suit simply to exert litigation pressure. Plaintiffs' Second Amended Complaint (the "SAC") continues the tradition of the pleadings that came before it: it trades on bombast and quantity-over-quality in the absence of plausible allegations of wrongdoing. As explained herein, the Court should dismiss the SAC, as to the Driver Defendants, in its entirety and with prejudice.

This case remains, at its core, a challenge to the legality of Uber,[2] a technology platform that enables riders to request safe, reliable transportation services through a smartphone application.[3] Plaintiffs, a group of allegedly aggrieved taxicab operators as well as owners of Certificates of Public Necessity and Convenience ("CPNC") licenses, have brought suit against not just Uber but

---

[2] Plaintiffs repeatedly use the phrase "Uber Defendants" in their Second Amended Complaint to refer to Uber Technologies Inc. ("Uber") and Rasier LLC. While this phrase is at times referenced in this Motion, it must be noted that these are two separate entities. Uber is a technology company that has developed the Uber smartphone app that connects users to third party transportation service providers. Rasier LLC, a subsidiary of Uber, is a transportation network company that licenses Uber's software to third party drivers.

[3] As Plaintiffs recognize, the State of Georgia recently passed legislation to clarify the existing and continued legality of Uber and similar services. *See* H.B. 225 (Ga. 2015). This case, then, seeks only to address the prior period of time in which Plaintiffs allege—incorrectly—that Uber a violated outdated and inapplicable Georgia law.

also, inexplicably, against a group of that Plaintiffs allege are or have been Drivers who use the Uber software application to receive transportation requests, as well as against a single Uber employee.

The Court should dismiss all of the Driver Defendants from this lawsuit. The Corporate Defendants[4] have filed a separate motion to dismiss that sets forth numerous grounds for dismissal, all of which are applicable to—and adopted by—the individual defendants represented in this motion.  In addition, the Court should dismiss the Second Amended Complaint because it remains an impermissible shotgun pleading that fails to distinguish between the alleged wrongdoing of the Driver Defendants as opposed to the Corporate Defendants or Mr. Radford.

## ARGUMENT AND CITATION TO AUTHORITY

**I.      Plaintiffs' Claims Against the Driver Defendants Fail as a Matter of Law for the Reasons Outlined in the Corporate Defendants' Motion.**

The Corporate Defendants' motion to dismiss and memorandum of law in support thereof (the "Corporate Defendants' Motion") identifies and explains in detail fundamental pleading failures in the Second Amended Complaint that bar recovery, as a matter of law, on every claim asserted as to each Defendant, including the Driver Defendants.  Specifically, the Corporate Defendants' Motion

---

[4] The term the "Corporate Defendants" used herein refers to Defendants Uber Technologies, Inc. and Rasier LLC.

provides argument and citation to authority regarding the following failures, each of which is applicable to the Driver Defendants as well:

(1) The absence of any plausible factual allegations showing that Defendants "acted purposely and with malice with the intent to injure," which is an essential element of their claim. *Int'l Brominated Solvents Ass'n v. Am. Conference of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1385 (M.D. Ga. 2005). Plaintiffs' allegations only amount to conclusory allegations of conduct, not intent, a fact particularly true with respect to the Driver Defendants. *See, e.g.*, SAC ¶ 50 (alleging that the Driver Defendants provided services that injured Plaintiffs, but lacking any allegations that they had intent to injure). Plaintiffs' allegations, though littered with references to "malice" and "intent," do not demonstrate anything other than that the Driver Defendants allegedly used Uber's software application to receive transportation requests, and certainly do not support an inference that the Driver Defendants acted with the specific intent to harm Plaintiffs. Tortious interference claims are not meant to criminalize garden-variety competition as Plaintiffs seek to do here.

(2) The failure to plead *facts* showing any improper or wrongful conduct, as opposed to legal conclusions masquerading as facts, and not entitled to a presumption of truth.  *Kirkland v. Tamplin*, 285 Ga. App. 241, 244, 645 S.E.2d 653, 656 (2007); *Greater Houston Transp. Co. v. Uber Techs., Inc.,* No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015).

(3) The inability to premise a tortious interference claim on relations with the supposed entire market of Atlanta-area taxicab passengers because of the failure to plead facts showing that those relations were "reasonably likely to develop in fact." *Int'l Brominated*, 393 F. Supp. 2d at 1385 (quoting *Camp v. Eichelkraut*, 246 Ga. App. 275, 539 S.E.2d 588, 595 (2000)

(4) The admission that taxicab owners (one subclass) have no relations with taxicab customers and that taxicab renters (the other subclass) have no relations with the Atlanta Bureau of Taxicabs, which undercuts the existence of any supposed "business relationship" with which to interfere.  See SAC ¶¶ 14, 31, 34, 54.

(5) The inability to premise a tortious interference claim on relations with a regulatory body, not a business.  *Alexandre v. New York City Taxi &*

*Limousine Comm'n*, No. 07 CIV. 8175 (RMB), 2007 WL 2826952, at *8 (S.D.N.Y. Sept. 28, 2007).

(6)   The failure of Plaintiffs' conspiracy claim because it relies on the same insufficient allegations as their tortious interference claim. *Ralls Corp. v. Huerfano River Wind, LLC*, No. 3:13-CV-213-TCB, 2014 WL 2916443, at *24 (N.D. Ga. June 27, 2014).

(7)   The lack of allegations showing that Plaintiffs are protecting rights common to all, including Plaintiffs themselves, and challenging conduct that affects all within a particular area—essential to stating a claim for public nuisance. *City of Coll. Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 209, 666 S.E.2d 607, 609 (2008).

(8)   The requirement—not met here—that a claim for private nuisance concern an interest in real property. *Reidling v. City of Gainesville*, 280 Ga. App. 698, 704, 634 S.E.2d 862, 867 (2006).

(9)   The unavailability of punitive damages because that claim is purely derivative of Plaintiffs' insufficiently-pled tortious interference claim. *Boeing Co. v. Blane Int'l Grp.*, 276 Ga. App. 672, 676, 624 S.E.2d 227, 231 (2005).

(10) The impropriety of seeking to recover under a theory of unjust enrichment, which is a species of contract claim and which is pled on the basis of supposed property rights to which Plaintiffs had no guarantee. *Tidikis v. Network for Med. Commc'ns & Research LLC*, 274 Ga. App. 807, 811, 619 S.E.2d 481, 485 (2005).

(11) The failure of Plaintiffs' bad faith claim because it relies on the same insufficient allegations as the tortious interference claim. *See Tyler v. Lincoln*, 272 Ga. 118, 121, 527 S.E.2d 180, 184 (2000).

The Second Amended Complaint (as did the original complaint and Plaintiffs' first amended complaint) makes no meaningful attempt to delineate between claims of wrongdoing leveled at the Corporate Defendants, as opposed to allegations of wrongdoing by—and causes of action against—the Driver Defendants (or, for that matter, Mr. Radford, who is neither a corporate party nor a Driver). Consequently, each of the arguments asserted in the Corporate Defendants' Motion applies equally to the Driver Defendants, and the Driver Defendants incorporate by reference the Corporate Defendants' Motion as if each argument and citation of authority was stated fully herein. For each of the reasons set forth in detail in the Corporate Defendants' Motion, the Court should dismiss

the Second Amended Complaint as to the Driver Defendants in its entirety with prejudice.

## II. Plaintiffs' Claims Against the Driver Defendants Fail for the Independent Reason that the Amended Complaint is an Impermissible Shotgun Pleading.

The fact that Plaintiffs have lumped together alleged wrongdoing by the Corporate Defendants, the Driver Defendants, and Mr. Radford without recognizing the distinction between those parties and without making realistic allegations with respect to each is an independent ground for dismissal. This is particularly true where, as here, Plaintiffs are trying for yet a third time to sufficiently plead their claims after two prior motions to dismiss, each of which alerted Plaintiffs to the shotgun nature of their pleadings. Throughout the Second Amended Complaint, Plaintiffs remain unable to articulate any meaningful difference between the alleged conduct of the Corporate Defendants and that of the Driver Defendants or Mr. Radford. Even more tellingly, Plaintiffs continue to be unable to put forth any reasonable explanation for why they felt it necessary or appropriate to individually name a handful of Drivers in this lawsuit.[5] The shotgun

---

[5] Plaintiffs' only explanation is that because Drivers are independent contractors then, somehow, it is necessary to name Drivers in this case. SAC ¶ 42. There is no logical connection between the Driver Defendants' independent contractor status and naming them as parties to this lawsuit. Moreover, because Plaintiffs have pled a defendant-class, they could proceed by naming only a *single* Uber

nature of the SAC reveals that Plaintiffs have no plausible allegations of wrongdoing specific to the Driver Defendants.

It is well settled in the Eleventh Circuit that so-called "shotgun pleadings" are impermissible.  *E.g.*, *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008) (holding that "[t]he complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years . . . ." and collecting cases for the proposition that "since 1985 we have explicitly condemned shotgun pleadings upward of fifty times").

A shotgun pleading is one that fails "to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms, Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).  In a shotgun pleading "[i]t is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant." *Id.* at 372; *see also Davis*, 516 F.3d at 980 (noting that a shotgun pleading fails to delineate causes of action advanced *by* any particular party or *against* any particular party).  A shotgun pleading may also be characterized by "an argument about the merits of [a] claim,

---

Driver if that is their aim, rather than attempting to strong-arm as large a group as they can cobble together.

rather than a complaint for relief." *Branham v. Astrue*, No. 7:08-CV-123(HL), 2009 WL 1025393, at *1 (M.D. Ga. Apr. 15, 2009).

A "defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014). Faced with that admonition, courts in this District and Circuit have held that the proper remedy for a shotgun pleading is dismissal with prejudice. *See, e.g.*, *Calhoun v. Nationstar*, No. 1:13-CV-2581-TWT, 2013 WL 5493311, at *2 (N.D. Ga. Sept. 30, 2013) ("Moreover, that plaintiff has filed a shotgun, form complaint counsels dismissal with prejudice rather than a lesser sanction."). In fact, this Court itself has recognized that dismissal is appropriate for a shotgun pleading that fails to allege specific actions to show how a particular defendant violated the law. *See Dynott v. Nationstar Mortg., LLC*, No. 1:13-cv-1474-WSD, 2014 WL 1028886, at *2 (N.D. Ga. Mar. 17, 2014) ("Plaintiff's shotgun pleading in respect to his FDCPA and RESPA claims is required to be dismissed.").

The Second Amended Complaint remains a textbook example of a shotgun pleading, particularly as to the Driver Defendants. The SAC attempts to delineate

between so-called "Uber Defendants," SAC ¶ 2, and an imagined "Defendant Class," which is apparently comprised of the named Driver Defendants *and*, perplexingly, Mr. Radford, Uber's Atlanta manager.[6]  *Id.* ¶¶ 2 & 15.  Despite those definitions, the allegations in the SAC still fail to make any meaningful delineation between the supposed conduct of the Corporate Defendants, the supposed conduct of the Driver Defendants, or the supposed conduct of Mr. Radford—in essence, the defined categories are meaningless because Plaintiffs continue to lump together all of the underlying conduct.

For example, in Paragraph 44 of the SAC, Plaintiffs provide a list of ills that they imagine Uber has visited on the public.  In doing so, they declare that both the "Uber Defendants" and the "Defendant Class" are equally responsible for the listed conduct, when many of the allegations (such as "failing to provide safety training to drivers") logically cannot apply to the Driver Defendants.  *Id.* ¶ 44.  Throughout the SAC, in an attempt to avoid a charge of shotgun pleading, Plaintiffs have simply inserted into every allegation the labels "Uber Defendants" and "Defendant Class" with no regard to whether the allegations following those labels actually do

---

[6] The SAC lumps Mr. Radford into the supposed class in its introductory paragraph, SAC ¶ 1, but then defines the Defendant Class as "all persons . . . which have owned and/or operated any vehicle for the Uber Defendants . . . ." *Id.* ¶ 15. This is a telling example of the incomprehensible nature of the SAC—even the class definition is contradictory.

(or even can) apply to both, functionally erasing any distinction between the groups and actually making the shotgun nature of the SAC *worse*.[7]  *See, e.g.*, *id.* ¶¶ 44, 46, 49, 50, 56 (alleging that both the "Uber Defendants" and "Defendant Class" conspired to hire and use Drivers without CPNCs, despite the fact that the "Defendant Class" is comprised of the actual alleged Drivers *and*, supposedly, Mr. Radford).

To that end, Plaintiffs really treat the disparate groups of Defendants as a unified whole, which is both unsupported by the SAC's allegations and unsupportable as a matter of fact.  *See id.* & ¶¶ 38 (alleging, paradoxically, that both the Uber Defendants and the Defendant Class, including Uber's manager, collect fares while simultaneously alleging that only Uber pays Drivers), 62-64 (simply using the term "Defendants").  At the same time, some paragraphs move freely between an allegation of wrongdoing by all Defendants to one or more delineated groups, when the allegations at issue do not and cannot actually attach to all of the named parties.  *See id.* ¶ 54.

---

[7] Faced with the Driver Defendants' earlier motions to dismiss, Plaintiffs simply modified every paragraph to say "The Uber Defendants and the Defendant Class," when the shotgun pleading problem concerns the fact that the conduct described cannot in many instances attach to both sets of Defendants.

It is difficult, if not impossible, to understand what wrongdoing is alleged against which Defendants.  Not a single cause of action is alleged specifically against any Driver Defendant; instead, each mixes various parties, and allegations, into an unintelligible whole.  Those failures warrant dismissal.  *See Beckwith*, 146 F. App'x at 372 (rejecting, as a shotgun pleading, a complaint that made it "virtually impossible to ascertain . . . which claim is directed at which defendant").

As indicative of a shotgun pleading, the Second Amended Complaint fails to provide sufficient factual allegations regarding the conduct of the Driver Defendants  to allow the Driver Defendants to form a cogent response.  The Drivers who receive transportation requests through Uber's software application are not akin to the Corporate Defendants, nor should Uber's manager be lumped together with independent Drivers, and the SAC's failure to distinguish among the these parties makes it impossible to understand what it is that Plaintiffs allege the *Driver Defendants*—as opposed to Uber or Mr. Radford—did wrong.[8]  Naming individual Drivers is simply a product of Plaintiffs' continued incoherent, shotgun

---

[8] It bears stressing again Plaintiffs' real concern seems to be the mere existence of Uber.  That being the case, Plaintiffs could seek complete relief on their claims by merely suing Uber.  The Driver Defendants are unnecessary and the SAC's lack of allegations specific to them reflects that fact.

approach to pleading. The Court should dismiss the entire Second Amended Complaint as to the Driver Defendants.

## CONCLUSION

For the reasons provided herein, including those provided in the Corporate Defendants' Motion, the Driver Defendants respectfully move the Court to dismiss all claims asserted in Plaintiffs' Second Amended Complaint against the Driver Defendants with prejudice.

Respectfully submitted, this 29th day of June, 2015.

By  /s/ Michael W. Tyler
      Michael W. Tyler

Michael W. Tyler (GA Bar No. 721152)
   mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
   jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
   randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone:  (404) 815-6500
Facsimile:   (404) 815-6555

Counsel for the Driver Defendants

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated:  June 29, 2015.

/s/ Michael W. Tyler
Michael W. Tyler

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2015, I filed a copy of the foregoing document using the Court's ECF/CM system, which will automatically send notice of such filing to counsel for Plaintiffs:

> William A. Pannell
> WILLIAM A. PANNELL, P.C.
> 433 Chateau Drive, NW
> Atlanta, GA 30305

I further certify that on June 29, 2015, I served a copy of the foregoing to counsel for Plaintiffs by depositing a copy in the U.S. Mail, first class postage prepaid, addressed as follows:

> Keith E. Fryer
> FRYER, SHUSTER & LESTER, PC
> 1050 Crown Pointe Parkway, Suite 410
> Atlanta, GA 30338

/s/ Michael W. Tyler
Michael W. Tyler
