# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Scott McCandliss, Dmidriy Abramyan, Abdikadir Ahmed, Ahmed Katun Ahmed, Ahmed Hassan, Ben Stewart Rountree, Faheem Iqbal Qureshi, Anthony D. Logan, Mohammed Abdulle, Hamoud S. Aldahbali, Jamal Abdi, Abdilahi Awale, and Mohamed A. Hussein, | |
| Plaintiffs, | |
| v. | |
| Uber Technologies, Inc., Rasier LLC, Keith Radford, Ahmed Simjee, Joshua Gantt, Leslie Gilmartin, Brian Giquel, Christopher Bosak, Christopher Johnson, Kevin Buttimer, Daniel Anderson, John Stettner, Rachel Pietrocola, Josh Varcoe, Fabian Fernandez, Aminur Choudhury, Seid Shek, Abebe Tesfaye, Samuel Worku, Jean Richard Pierre, Alexander Agbaere, Ayodele Okpodu, and Belay Dagnew, | CIVIL ACTION NO. 1:14-CV-03275-WSD |
| Defendants. | |

# KEITH RADFORD'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Keith Radford[1] moves the Court to dismiss Plaintiffs' Second Amended Complaint with prejudice.  In support of this Motion, Mr. Radford respectfully shows the Court as follows:

## **INTRODUCTION**

With their third bite at the proverbial apple, Plaintiffs remain unable to meet their pleading obligations with respect to Mr. Radford (as well as the other Defendants).  Despite Plaintiffs' protestations to the contrary, and their attempts to pile on pages of conclusory recitations of basic legal elements, the truth remains that the Mr. Radford—the general manager of Uber in Atlanta—is named as a party to this suit simply to exert litigation pressure and to attempt to improperly hold him liable for the alleged wrongdoing of his *employer*.  Plaintiffs' Second Amended Complaint (the "SAC") continues the tradition of the pleadings that came before it:  it trades on bombast and quantity-over-quality in the absence of plausible allegations of wrongdoing.  As explained herein, the Court should dismiss the SAC, as to Mr. Radford, in its entirety and with prejudice.

---

[1]  Although the arguments in this motion are in many places similar to those made by the Driver Defendants in their motion to dismiss, Mr. Radford is not a Driver Defendant and, unlike Plaintiffs did in the Second Amended Complaint, Defendants will not inappropriately lump Mr. Radford together with third-party transportation providers who allegedly use Uber's software application to receive transportation requests ("Drivers")—and by necessity his conduct—is markedly different.

This case remains, at its core, a challenge to the legality of Uber,[2] a technology platform that enables riders to request safe, reliable transportation services through a smartphone application.[3]  Plaintiffs, a group of allegedly aggrieved taxicab operators as well as owners of Certificates of Public Necessity and Convenience ("CPNC") licenses, have brought suit against not just Uber but also, inexplicably, against a group of individuals that Plaintiffs allege are or have been Drivers who use the Uber software application to receive transportation requests (the "Driver Defendants"), and against Mr. Radford, an Uber employee (and the only Uber employee named in the SAC).

The Court should dismiss Mr. Radford.  The Corporate Defendants[4] have filed a separate motion to dismiss that sets forth numerous grounds for dismissal,

---

[2] Plaintiffs repeatedly use the phrase "Uber Defendants" in their Second Amended Complaint to refer to Uber Technologies Inc. ("Uber") and Rasier LLC.  While this phrase is at times referenced in this Motion, it must be noted that these are two separate entities.  Uber is a technology company that has developed the Uber smartphone app that connects users to third party transportation service providers.  Rasier LLC, a subsidiary of Uber, is a transportation network company that licenses Uber's software to Drivers.

[3] As Plaintiffs recognize, the State of Georgia recently passed legislation to clarify the existing and continued legality of Uber and similar services.  *See* H.B. 225 (Ga. 2015).  This case, then, seeks only to address the prior period of time in which Plaintiffs allege—incorrectly—that Uber violated outdated and inapplicable Georgia law.

[4] The term the "Corporate Defendants" used herein refers to Defendants Uber Technologies, Inc. and Rasier LLC.

all of which are applicable to—and adopted by—Mr. Radford.  In addition, the Court should dismiss the SAC because it is an impermissible shotgun pleading and because it seeks to impose reverse vicarious liability on Mr. Radford, an Uber employee, for the supposed wrongdoing of the corporate entities.

## ARGUMENT AND CITATION TO AUTHORITY

**I.    Plaintiffs' Claims Against Mr. Radford Fail as a Matter of Law for the Reasons Outlined in the Corporate Defendants' Motion.**

The Corporate Defendants' motion to dismiss and memorandum of law in support thereof (the "Corporate Defendants' Motion") identifies and explains in detail fundamental pleading failures in the Second Amended Complaint that bar recovery, as a matter of law, on every claim asserted as to each Defendant, including Mr. Radford.  Specifically, the Corporate Defendants' Motion provides argument and citation to authority regarding the following failures, each of which is applicable to Mr. Radford as well:

(1)    The absence of any plausible factual allegations showing that Defendants "acted purposely and with malice with the intent to injure," which is an essential element of their claim.  *Int'l Brominated Solvents Ass'n v. Am. Conference of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1385 (M.D. Ga. 2005).  Plaintiffs' allegations only amount to conclusory allegations of conduct that they

believe was injurious, not intent, a fact particularly true with respect to Mr. Radford.  *See, e.g.*, SAC ¶ 51 (alleging that Mr. Radford continued to manage and operate Uber, but lacking any allegations that he had intent to injure).  Plaintiffs' allegations, though littered with references to "malice" and "intent," do not demonstrate anything other than that Mr. Radford works for Uber, and certainly do not support an inference that Mr. Radford acted with the specific intent to harm Plaintiffs.[5]  Tortious interference claims are not meant to criminalize garden-variety competition as Plaintiffs seek to do here.

(2)   The failure to plead *facts* showing any improper or wrongful conduct, as opposed to legal conclusions masquerading as facts, and not entitled to a presumption of truth.  *Kirkland v. Tamplin*, 285 Ga. App. 241, 244, 645 S.E.2d 653, 656 (2007); *Greater Houston Transp. Co. v. Uber Techs., Inc.,* No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015).

---

[5] It strains credibility to imagine that Plaintiffs would ever be able to adduce evidence that Mr. Radford had specific and malicious intent to injure a class of persons owning or leasing CPNC medallions from the City of Atlanta. Nonetheless, that is the claim that Plaintiffs urge this Court to accept.

(3)     The inability to premise a tortious interference claim on relations with the supposed entire market of Atlanta-area taxicab passengers because of the failure to plead facts showing that those relations were "reasonably likely to develop in fact." *Int'l Brominated*, 393 F. Supp. 2d at 1385 (quoting *Camp v. Eichelkraut*, 246 Ga. App. 275, 539 S.E.2d 588, 595 (2000)

(4)     The admission that taxicab owners (one subclass) have no relations with taxicab customers and that taxicab renters (the other subclass) have no relations with the Atlanta Bureau of Taxicabs, which undercuts the existence of any supposed "business relationship" with which to interfere. *See* SAC ¶¶ 14, 31, 34, 54.

(5)     The inability to premise a tortious interference claim on relations with a regulatory body, not a business. *Alexandre v. New York City Taxi & Limousine Comm'n*, No. 07 CIV. 8175 (RMB), 2007 WL 2826952, at *8 (S.D.N.Y. Sept. 28, 2007).

(6)     The failure of Plaintiffs' conspiracy claim because it relies on the same insufficient allegations as their tortious interference claim. *Ralls Corp. v. Huerfano River Wind, LLC*, No. 3:13-CV-213-TCB, 2014 WL 2916443, at *24 (N.D. Ga. June 27, 2014).

(7)     The lack of allegations showing that Plaintiffs are protecting rights
        common to all, including Plaintiffs themselves, and challenging
        conduct that affects all within a particular area—essential to stating a
        claim for public nuisance.  *City of Coll. Park v. 2600 Camp Creek,
        LLC*, 293 Ga. App. 207, 209, 666 S.E.2d 607, 609 (2008).

(8)     The requirement—not met here—that a claim for private nuisance
        concern an interest in real property.  *Reidling v. City of Gainesville*,
        280 Ga. App. 698, 704, 634 S.E.2d 862, 867 (2006).

(9)     The unavailability of punitive damages because that claim is purely
        derivative of Plaintiffs' insufficiently-pled tortious interference claim.
        *Boeing Co. v. Blane Int'l Grp.*, 276 Ga. App. 672, 676, 624 S.E.2d
        227, 231 (2005).

(10)    The impropriety of seeking to recover under a theory of unjust
        enrichment, which is a species of contract claim and which is pled on
        the basis of supposed property rights to which Plaintiffs had no
        guarantee.  *Tidikis v. Network for Med. Commc'ns & Research LLC*,
        274 Ga. App. 807, 811, 619 S.E.2d 481, 485 (2005).

(11)   The failure of Plaintiffs' bad faith claim because it relies on the same insufficient allegations as the tortious interference claim.  *See Tyler v. Lincoln*, 272 Ga. 118, 121, 527 S.E.2d 180, 184 (2000).

The Second Amended Complaint (as did the original complaint and Plaintiffs' first Amended Complaint) makes no attempt to delineate between claims of wrongdoing leveled against the Corporate Defendants, as opposed to allegations of wrongdoing by—and causes of action against—Mr. Radford (or, for that matter, the individually-named Driver Defendants).  Consequently, each of the arguments asserted in the Corporate Defendants' Motion applies equally to Mr. Radford, and Mr. Radford incorporates by reference the Corporate Defendants' Motion as if each argument and citation of authority was stated fully herein.  For each of the reasons set forth in detail in the Corporate Defendants' Motion, the Court should dismiss the Second Amended Complaint as to Mr. Radford in its entirety with prejudice.

## II.   Plaintiffs' Claims Against Mr. Radford Fail as a Matter of Law for Two Grounds Independent of the Arguments Asserted in the Corporate Defendants' Motion to Dismiss.

In addition to the grounds for dismissal set forth in the Corporate Defendants' Motion, there are two independent reasons to dismiss the SAC as to Mr. Radford.  First, it is an impermissible shotgun pleading.  Second, Plaintiffs

cannot, as a matter of law, seek to impose liability on Mr. Radford through "reverse vicarious liability" for the alleged tortious conduct of the Corporate Defendants.

### A.   Plaintiffs' Claims Against Mr. Radford Fail Because the Second Amended Complaint is an Impermissible Shotgun Pleading

The fact that Plaintiffs have lumped together alleged wrongdoing by the Corporate Defendants, the Driver Defendants, and Mr. Radford without recognizing the distinction between those parties and without making realistic allegations with respect to each is an independent ground for dismissal. This is particularly true where, as here, Plaintiffs are trying for yet a third time to sufficiently plead their claims after two prior motions to dismiss, each of which alerted Plaintiffs to the shotgun nature of their pleadings. Throughout the Second Amended Complaint, Plaintiffs remain unable to articulate any meaningful difference between the alleged conduct of the Corporate Defendants, that of the Driver Defendants, and that of Mr. Radford. Even more tellingly, Plaintiffs continue to be unable to put forth any reasonable explanation for why they felt it necessary or appropriate to individually name a single Uber employee in this lawsuit. The shotgun nature of the SAC reveals that Plaintiffs have no plausible allegations of wrongdoing specific to Mr. Radford.

It is well settled in the Eleventh Circuit that so-called "shotgun pleadings" are impermissible.  *E.g.*, *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008) (holding that "[t]he complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years . . . ." and collecting cases for the proposition that "since 1985 we have explicitly condemned shotgun pleadings upward of fifty times").

A shotgun pleading is one that fails "to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms, Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).  In a shotgun pleading "[i]t is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant." *Id.* at 372; *see also Davis*, 516 F.3d at 980 (noting that a shotgun pleading fails to delineate causes of action advanced *by* any particular party or *against* any particular party).  A shotgun pleading may also be characterized by "an argument about the merits of [a] claim, rather than a complaint for relief." *Branham v. Astrue*, No. 7:08-CV-123(HL), 2009 WL 1025393, at *1 (M.D. Ga. Apr. 15, 2009).

A "defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with

insufficient notice to enable it to file an answer." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014). Faced with that admonition, courts in this District and Circuit have held that the proper remedy for a shotgun pleading is dismissal with prejudice. *See, e.g.*, *Calhoun v. Nationstar*, No. 1:13-CV-2581-TWT, 2013 WL 5493311, at *2 (N.D. Ga. Sept. 30, 2013) ("Moreover, that plaintiff has filed a shotgun, form complaint counsels dismissal with prejudice rather than a lesser sanction."). In fact, this Court itself has recognized that dismissal is appropriate for a shotgun pleading that fails to allege specific actions to show how a particular defendant violated the law. *See Dynott v. Nationstar Mortg., LLC*, No. 1:13-cv-1474-WSD, 2014 WL 1028886, at *2 (N.D. Ga. Mar. 17, 2014) ("Plaintiff's shotgun pleading in respect to his FDCPA and RESPA claims is required to be dismissed.").

The Second Amended Complaint remains a textbook example of a shotgun pleading, particularly as to Mr. Radford. The SAC attempts to delineate between so-called "Uber Defendants," SAC ¶ 2, and an imagined "Defendant Class," which is apparently comprised of the named Driver Defendants *and*, perplexingly, Mr. Radford.[6] *Id.* ¶¶ 2 & 15. Despite those definitions, the allegations in the SAC still

---

[6] The SAC lumps Mr. Radford into the supposed class in its introductory paragraph, SAC ¶ 1, but then defines the Defendant Class as "all persons . . . which have owned and/or operated any vehicle or the Uber Defendants . . . ." *Id.* ¶ 15.

fail to make any meaningful delineation between the supposed conduct of the Corporate Defendants, the supposed conduct of the Driver Defendants, or the supposed conduct of Mr. Radford—in essence, the defined categories are meaningless because Plaintiffs continue to lump together all of the underlying conduct.

For example, in Paragraph 44 of the SAC, Plaintiffs provide a list of ills that they imagine Uber has visited on the public. In doing so, they declare that both the "Uber Defendants" and the "Defendant Class" (which, again, they assert includes Mr. Radford but is not so defined) are equally responsible for the listed conduct, when many of the allegations (such as "drivers taking unnecessary [sic] longer routes to increase fees") logically cannot apply to Mr. Radford, who is not a Driver. *Id.* ¶ 44. Throughout the SAC, in an attempt to avoid a charge of shotgun pleading, Plaintiffs have simply inserted into every allegation the labels "Uber Defendants" and "Defendant Class" with no regard to whether the allegations following those labels actually do (or even can) apply to both, particularly given the distinction between Drivers and Mr. Radford, functionally erasing any difference between the groups and actually making the shotgun nature of the SAC

---

This is a telling example of the incomprehensible nature of the SAC as to Mr. Radford.

*worse*.[7]  *See, e.g.*, *id.* ¶¶ 44, 46, 49, 50, 56 (alleging that both the "Uber

Defendants" and "Defendant Class" conspired to hire and use Drivers without

CPNCs, despite the fact that the "Defendant Class" is comprised of the actual

alleged Drivers *and*, supposedly, Mr. Radford).

     To that end, Plaintiffs really treat the disparate groups of Defendants as a

unified whole, which is both unsupported by the SAC's allegations and

unsupportable as a matter of fact.  *See id.* & ¶¶ 38 (alleging, paradoxically, that

both the Uber Defendants and the Defendant Class, including Uber's manager,

collect fares while simultaneously alleging that only Uber pays Drivers), 62-64

(simply using the term "Defendants").  At the same time, some paragraphs move

freely between an allegation of wrongdoing by all Defendants to one or more

delineated groups, when the allegations at issue do not and cannot actually attach

to all of the named parties, particularly in light of the difference between Mr.

Radford, as an Uber employee, as compared to the Driver Defendants.  *See id.*

¶ 54.

---

[7] Faced with Mr. Radford's earlier motions to dismiss, Plaintiffs simply modified
every paragraph to say "The Uber Defendants and the Defendant Class," when the
shotgun pleading problem concerns the fact that the conduct described cannot in
many instances attach to both sets of Defendants.

It is difficult, if not impossible, to understand what wrongdoing is alleged against which Defendants.  Not a single cause of action is alleged specifically against Mr. Radford; instead, each mixes various parties, and allegations, into an unintelligible whole.  Those failures warrant dismissal.  *See Beckwith*, 146 F. App'x at 372 (rejecting, as a shotgun pleading, a complaint that made it "virtually impossible to ascertain . . . which claim is directed at which defendant").

As indicative of a shotgun pleading, the Second Amended Complaint fails to provide sufficient factual allegations regarding the conduct of Mr. Radford to allow him to form a cogent response.  Mr. Radford, as Uber's manager, is not akin to the Corporate Defendants, nor is he akin to Drivers, and the SAC's failure to distinguish among these various parties makes it impossible to understand what it is that Plaintiffs allege *Mr. Radford*—as opposed to the Corporate Defendants or the Driver Defendants—did wrong.[8]  Naming a single Uber employee is simply a product of Plaintiffs' continued incoherent, shotgun approach to pleading.  The Court should dismiss the entire Complaint as to Mr. Radford.

---

[8] It bears stressing again Plaintiffs' real concern seems to be the mere existence of Uber.  That being the case, Plaintiffs could seek complete relief on their claims by merely suing Uber.  Mr. Radford is an unnecessary party and the SAC's lack of allegations specific to him reflects that fact.

**B.      Plaintiffs' Claims Against Mr. Radford Fail Because Plaintiffs Impermissibly Seek to Impose Reverse Vicarious Liability on Mr. Radford**

The Court should also dismiss the Second Amended Complaint as to Mr. Radford because it still attempts to impermissibly assert liability on Mr. Radford through "reverse vicarious liability" for the alleged tortious conduct of the Corporate Defendants.

Plaintiffs acknowledge that Mr. Radford is an Uber employee—specifically, the general manager of Uber in Atlanta.  *E.g.*, SAC ¶¶ 5, 51.  It is well established in Georgia that when an agent or employee of a corporation acts within the scope of his agency or employment, his acts are considered acts of the corporation.  *See Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1382 (M.D. Ga. 2004) (explaining that because "employees of a corporation are considered part of the corporate entity," acts of employees are acts of the corporation.); *see also* O.C.G.A. § 51–2–2 (stating that principals are liable for torts committed by their agents that fall within the scope of the agency, whether the torts are committed negligently or voluntarily).  Thus, a principal "may be held vicariously liable for the negligent acts of its employees, contractors, or agents."  *Leal v. Hobbs*, 245 Ga. App. 443, 444-45, 538 S.E.2d 89, 91 (2000).  However, "***the doctrine of vicarious liability does not make the agent liable for the acts of the principal***."  *Id.* (emphasis

added); *see also Verddier v. Neal Blun Co.*, 128 Ga. App. 321, 322-23, 196 S.E.2d 469, 470 (1973) ("[I]t is generally recognized that an agent is not liable to third persons for the failure of the principal to discharge affirmative duties which the principal may owe.")  Instead, when employees act at the direction of their employers, "employees are not responsible for the tortious acts of their employers."  *Catlett*, 379 F. Supp. 2d at 1383.

For example, in *Catlett*, the court dismissed claims against individual agents of the defendant corporation where the agents were acting within the scope of their agency and at the direction of the defendant corporation.  *See id.* at 1382-83.  In *Catlett*, the plaintiffs asserted claims of negligence, fraud and conspiracy against Wyeth, Inc. and several of Wyeth, Inc.'s individual sales representatives, based upon the plaintiffs' alleged injuries resulting from a drug manufactured by Wyeth.  *Id.* at 1375-76.  The sales representatives had visited the plaintiffs' doctor's offices to make the doctors aware of the drug and to provide material and information on the drug to the doctors.  *Id.* at 1375-76.  In carrying out these duties, the sales representatives were acting at the direction of Wyeth, following a "script" given to them by Wyeth.  *Id.* at 1382.

The defendants removed the case to federal court arguing that the sales representatives were fraudulently joined and the plaintiffs filed a motion to

remand.  *Id.* at 1376.  The court denied the motion to remand, finding that the sales representatives were fraudulently joined, and dismissed the claims against the sales representatives.  *Id.* at 1383.  The court explained that "Georgia law would not hold the pharmaceutical sales representatives in this case (the 'agents') liable for any duty allegedly breached by Wyeth (the 'principal')."  *Id.* at 1381.

Similarly, in *Leal* the court found that the plaintiff's claim against an individual defendant failed as a matter of law because it sought to hold the individual defendant vicariously liable for the alleged tortious acts of his principal. 245 Ga. App. at  444-45, 538 S.E.2d at  91.  In *Leal*, the plaintiff sued a student intern, along with a hospital and several other defendants, who had rendered treatment to the plaintiff's decedent.  *Id.*  The intern moved for summary judgment arguing that he did not breach any duty to the decedent independent of the hospital's duty because "he was simply following the instructions of [his supervisor] and had no decision-making authority with respect to [the decedent's] care and treatment."  *Id.*, 245 Ga. App. at 445, 538 S.E.2d at 91-92.  The trial court denied summary judgment and the Court of Appeals of Georgia reversed, holding that the plaintiff's claim against the intern failed as a matter of law.  *Id.*  The court explained that "whether [the intern] was an employee, independent contractor, or agent of [the] [h]ospital is irrelevant to [the intern's] liability[,]" because "[u]nder

Georgia law, . . . the doctrine of vicarious liability does not make the agent liable for the acts of the principal." *Id.*, 245 Ga. App. at 444-45, 538 S.E.2d at 91.

Here, like in the cases provided above, Plaintiffs' claims against Mr. Radford—an Uber employee—fail as a matter of law because Plaintiffs cannot hold an employee (or any other agent) liable for the alleged tortious conduct of their employers (according to Plaintiffs' allegations, Uber). *See Catlett*, 379 F. Supp. 2d at 1382-83 ("Georgia courts do not recognize the reverse of th[e] [vicarious liability] principle; that is, ***employees are not responsible for the tortious acts of their employers.***") (emphasis added).  The SAC lacks any factual allegations that at any relevant time Mr. Radford was acting other than within the scope of his employment by Uber, at the direction of Uber, and within policies developed and implemented by Uber.  *See generally* SAC.  Consequently, according to Plaintiffs' allegations, the acts of Mr. Radford are the acts of Uber and there is no tortious conduct alleged against Mr. Radford that is independent of Uber.  *See Catlett*, 379 F. Supp. 2d at 1382.

Like the individual defendants in *Catlett* and *Leal*, according to the allegations in the Second Amended Complaint, Mr. Radford was "simply following the instructions of [Uber] and had no decision-making authority with respect to [the Corporate Defendants' policies and conduct]."  *Leal*, 245 Ga. App.

at 445, 538 S.E.2d at 91-92.  The tortious conduct asserted in the SAC is alleged

tortious conduct of the Corporate Defendants, allegedly accomplished through its

employees or agents, namely, Mr. Radford.  Plaintiffs, therefore, impermissibly

seek to hold Mr. Radford vicariously liable for the conduct of the Corporate

Defendants.  Because Georgia courts do not recognize such a "reverse" vicarious

liability theory, "[Mr. Radford is] not responsible for the [alleged] tortious acts of

[the Corporate Defendants]" and all claims against Mr. Radford must be dismissed.

*See Catlett*, 379 F. Supp. 2d at 1382-83.

## CONCLUSION

For the reasons provided herein, including those provided in the Corporate

Defendants' Motion, Mr. Radford respectfully requests that the Court dismiss all

claims asserted in Plaintiffs' Second Amended Complaint against Mr. Radford

with prejudice.

Respectfully submitted, this 29th day of June, 2015.

By   /s/ Michael W. Tyler
Michael W. Tyler

Michael W. Tyler (GA Bar No. 721152)
    mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
    jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
    randre@kilpatricktownsend.com

**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone:   (404) 815-6500
Facsimile:   (404) 815-6555

Stephen A. Swedlow (*pro hac vice*)
   stephenswedlow@quinnemanuel.com
Amit B. Patel (*pro hac vice*)
   amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone:   (312) 705-7400
Facsimile:   (312) 705-7401

Arthur M. Roberts (*pro hac vice*)
   arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700

Counsel for Keith Radford

<u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated:  June 29, 2015.

<u>/s/ Michael W. Tyler</u>
Michael W. Tyler

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2015, I filed a copy of the foregoing

document using the Court's ECF/CM system, which will automatically send notice

of such filing to counsel for Plaintiffs:

> William A. Pannell
> WILLIAM A. PANNELL, P.C.
> 433 Chateau Drive, NW
> Atlanta, GA 30305

I further certify that on June 29, 2015, I served a copy of the foregoing to

counsel for Plaintiffs by depositing a copy in the U.S. Mail, first class postage

prepaid, addressed as follows:

> Keith E. Fryer
> FRYER, SHUSTER & LESTER, PC
> 1050 Crown Pointe Parkway, Suite 410
> Atlanta, GA 30338

/s/ Michael W. Tyler
Michael W. Tyler
