# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| SCOTT MCCANDLISS, | ) | |
| DMIDRIY ABRAMYAN, ABDIKADIR | ) | |
| AHMED, AHMED KATUN AHMED, | ) | |
| AHMED HASSAN, BEN STEWART | ) | |
| ROUNTREE, FAHEEM IQBAL | ) | |
| QURESHI, ANTHONY D. LOGAN, | ) | Civil Action File No. |
| MOHAMED ABDULLE, HAMOUD S. | ) | 1:14-03275-WSD |
| ALDAHBALI, JAMAL ABDI, ABDILAHI | ) | |
| AWALE, MOHAMED A. HUSSEIN | ) | CLASS ACTION |
| and all others similarly situated, | ) | |
|     Plaintiffs. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UBER TECHNOLOGIES, INC., | ) | |
| RASIER, LLC and | ) | |
| KEITH RADFORD, AHMED SIMJEE, | ) | |
| JOSHUA GANTT, LESLIE GILMARTIN | ) | |
| BRIAN GIQUEL, CHRISTOPHER BOSAK, | ) | |
| CHRISTOPHER JOHNSON, KEVIN | ) | |
| BUTTIMER, DANIEL ANDERSON, JOHN | ) | |
| STETTNER, RACHEL PIETROCOLA, | ) | |
| JOSH VARCOE, FABIAN FERNANDEZ, | ) | |
| AMINUR CHOUDHURY, SEID SHEK, | ) | |
| ABEBE TESFAYE, SAMUEL WORKU, | ) | |
| JEAN RICHARD PIERRE, ALEXANDER | ) | |
| AGBAERE, AYODELE OKPODU, | ) | |
| BELAY DAGNEW, individually and | ) | |
| all others similarly situated, | ) | |
|     Defendants. | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO UBER TECHNOLOGIES, INC., AND RASIER, LLC'S  MOTION TO DISMISS

The Uber Defendants (Uber and Rasier) brazenly ask this Court to let them off 'free of all charges' even asking that it be done 'with prejudice' even though this Court has never expressed an opinion as to the adequacy of Plaintiffs' Complaints. Formal discovery will reveal more than sufficient facts to meet any evidentiary burden. Parties should not be held to the standards Defendants wish to impose at the initial pleading stage. The Motion to Dismiss should be denied in its entirety.[1] Alternatively, Plaintiffs' request leave to amend the Complaint to correct any deficiencies the Court may find.  Leave to amend should be given freely and here the <u>Court</u> should first determine if amendment is needed at all, <u>not the Defendants</u>.

First, it must be understood as alleged that Plaintiffs' ownership and rental of Certificates of Public Necessity and Convenience ( CPNCs) or Medallions gave them <u>exclusive</u> property rights to provide metered transportation originating in the City of Atlanta and at the Atlanta airport. Second Amended Complaint, [Doc. 53, ¶¶ 2,31,41,50]  Defendants' assertions on this issue in Sections I.E. and IV. of their brief offer no facts or references to Atlanta ordinances or Georgia law in

---

[1] Plaintiffs also rely on any materials filed in response to previous motions to dismiss. See, Doc. 41, 42, 43.

support. They only argue out of state opinions based on entirely different facts and laws.  This issue is central to this case as well as a new filing by CPNC owners against the State of Georgia for violations of the Georgia Constitution by enacting and enforcing the new "ride share" laws previously supplied to this court [Doc. 47-1].[2]  It is an issue which will and most certainly should be decided by State Courts of Georgia including the Supreme Court of Georgia which are most qualified to interpret the laws and Constitution of Georgia.  It is further proof that this federal court should abstain from this dispute and decline to impose its opinions over those of Georgia's Supreme Court and State Courts.

Second, Uber's business plan is no secret…..to destroy the taxicab business wherever it goes. Uber is a company that ignores the law and regulations everywhere. It has been challenged by lawsuits from its drivers, local governments, countries, states and even all those 'happy' customers who get overcharged without warning. Uber and Rasier are companies who would rather make lawyers and lobbyists rich than ask permission before conducting business. In fact, they do not even beg forgiveness after they are caught. See, [Docs. 41-2 through 41-10] previously filed.

---

[2] See, *Abramyan, et al. v. State of Georgia*, et al. attached as Exhibit A [Doc. 58-1].

From their Motions, it is apparent that all Defendants understand Plaintiffs' claims completely. Uber anticipated litigation before they started doing business in Georgia.  Uber, Rasier and all of the named Defendants certainly have adequate "notice" as to why they have been sued. These kinds of motions are a standard tactic in class actions to cause as much delay as possible.  The inevitable is clear--- a finding that they have violated literally dozens of ordinances and laws in Atlanta and Georgia. No amount of lobbying, lawyering or delays can hide these facts.

## <u>STANDARD OF REVIEW[3]</u>

"Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (quoting Fed. R. Civ. P. (8)(a)(2)). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. (internal citations omitted). A complaint survives if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

---

[3] Defendants do not identify any standards to be applied to motions to dismiss.

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations" but only "contain enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed 2d 929(2007). The plausibility standard is not a probability standard, and simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*, No. 1:08-CV-2277-RWS, 2010 WL 2245574, at *2 (N.D. Ga. June 2, 2010)(quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

Plaintiffs plainly satisfy this plausibility standard by pleading ample facts in the Second Amended Complaint (as well as the Amended Complaint) which, taken as true, establish Defendants' liability as to each of the claims asserted and provide them fair notice of the grounds of such claims. See *Lee v. Mylan*, 806 F. Supp. 2d 1320, 1323 (M.D. Ga. 2011) (citing *Twombly* and *Iqbal* and denying a Rule 12(b)(6) motion to dismiss where the complaint gave fair notice of the claims and the grounds giving rise to the same).

# <u>ARGUMENT</u>

It has long been held that the act of another that unlawfully interferes with the private property right of another is a tort for which an action will lie. O.C.G.A. § 59-9-1. Georgia law recognizes the tort for malicious injury to the business of another based on the principle that that person's business is property and that they are entitled to protection from tortious interference by a third persons to that property. *Alta Anesthesia Associates of Ga., P.C. v. Gibbens*, 245 Ga.App. 79; 537 S.E.2d 388 (2000).

Tortious interference claims, whether asserting interference with contractual relations, business relations or potential business relations share common essential elements including; (1) improper action or wrongful conduct by the defendant without privilege; (2) purposeful malicious action by the defendant with the intent to injure; (3) inducement by the defendant of a breach of contractual obligations or failure of a party or third parties to enter into or continue an anticipated business relationship with the plaintiff; and (4) proximate causation by the defendant and damage to the plaintiff. *Carey Station Village Homeowner's Association, Inc. v. Carey Station Village, Inc.,* 268 Ga. App. 461; 602 S.E.2d 233 (2004).

In order to establish a cause of action for tortious interference with business relations, the Plaintiff must demonstrate that absent the interference those relations were likely to develop. *Hayes v. Irwin*, 541 F.Supp. 397 (N.D. Ga. 1982), *judgment affirmed* 729 F.2d 1466 (11th Cir.1984).   However, the plaintiff need not show proof of a valid and enforceable contract. *Lake Tightsqueeze, Inc. v. Chrysler First Financial Services Corp.,* 210 Ga. App. 178; 435 S.E.2d  486 (1993).

1.  Plaintiffs have adequately pled wrongful, improper and intentional conduct contrary to the arguments in Sections I A&B of the Defendants' brief [Doc. 54-1].[4]

Uber Technologies, Inc. and Rasier, LLC ( "Uber Defendants") have acted intentionally, wrongfully and improperly without privilege. Central to Plaintiffs' claims is the failure of the Uber Defendants and the Defendant Class to operate within the required ordinances issued by the City of Atlanta.  This background to the claims in the lawsuit is explained in detail in paragraphs 1, 2 and 25-34 of the Second Amended Complaint [Doc. 53]. These facts clearly establish Uber's predatory conduct without privilege. Once again, it appears Defendants have ignored the pleadings in filing their motions. Defendants' tactics may have been spawned by *Twombly* and *Iqbal* but courts have grown tired of this kind of motion

---

[4] Plaintiffs rely on all arguments and cites to factual allegations contained in their Response to Motions to Dismiss of Keith Radford and Uber Drivers [Docs. 55, 56] as well as the entire Second Amended Complaint [Doc. 53].

being filed in every case and rejected these expansive and abusive interpretations. They waste time.

"Improper action or wrongful conduct" "generally involves predatory tactics such as violence, fraud, misrepresentation, defamation, use of confidential information, abusive civil lawsuits, and unwarranted prosecutions." *EarthCam, Inc. v. OxBlue, Corp.,* No. 1:11–cv–02278–WSD, 2014 WL 4702200, at *17(N.D.Ga. Sept. 22, 2014) quoting, *Kirkland v. Tamplin,* 285 Ga.App. 241, 645 S.E.2d 653, 656 (2007). The Uber Defendants must also be strangers, interlopers or intermeddlers to the business relationship. *Disaster Servs., Inc. v. ERC P'ship,* 228 Ga.App. 739, 741, 492 S.E.2d 526 (1993). All Defendants certainly meet this requirement as they do not have any of the registrations required to act as taxicabs or vehicles for hire except for a few limousines (operating as Uber Black) and they charge improperly based on mileage and distance. [Doc. 53, i.e., ¶¶ 3, 4, 5, 20, 29, 37, 39, 41, 44, 46].

After explaining in detail the definition of taximeter, its relation to Uber's smartphone app and the limitations on the number of taxicabs in Atlanta the Second Amended Complaint states, "All 'metered' trips measured by time and distance originating in the City of Atlanta conducted by the Uber Defendants and

the Defendant Class are exclusively the province of licensed taxicabs with a

CPNC, and the Defendants have appropriated this business and concomitant

revenue." [Doc. 53, ¶ 41.] These facts, if true, establish that the Uber Defendants

and the Defendant Class are acting without privilege in a fraudulent, deceptive,

misrepresentative manner which by definition is *predatory* conduct. The above

allegation taken as true clearly establishes the first element of a "tortious

interference with business relations" cause of action. The Defendants are violating

ALL of the city's taxicab ordinances since they ignore all of them. See, Atlanta

Ordinances [Doc. 41-1 A].

Because *intentional* interference is a pre-requisite, it presupposes knowledge

of the Plaintiff's interest or facts that would lead a reasonable person to believe in

their existence. *See, Hayes* at 397; *see also, Perry & Co. v. New South Ins.*

*Brokers of Georgia, Inc.*, 182 Ga. App. 84, 354 S.E.2d 852 (1987). For

purposes of a claim for tortious interference, the term "malicious" means

any "unauthorized interference without justification or excuse." *Camp v.*

*Eichelkraut,* 246 Ga. App. 275, 539 S.E. 2d 588 (2000). The act is deemed to be

malicious under Georgia law when it is done with knowledge of the Plaintiffs

rights and with the intent to interfere with those rights, as here. *Perry* at 84.

Moreover, personal ill will or animosity is not essential to a finding of malice. See, *Hayes* at 1466, 1468.

How is the intent of a corporation proven? Since corporations are not persons, it must be done through their employees and agents.  This is difficult, if not impossible prior to discovery in a civil matter. Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operation of the human mind. Any statement made or act done or omitted by a party whose intent is in issue may be considered, and all other facts and circumstances which indicate state of mind. It is reasonable to draw the inference and find that a party intends the natural and probable consequences of acts knowingly done or knowingly omitted. 3 Devitt, Blackman and Wolf, Federal Jury Practice and Instructions, §81.03.

In the Second Amended Complaint, plaintiffs allege the Uber Defendants had certain knowledge due to experiences in other cities and the violations and harm that would result upon beginning operations in Atlanta. [Doc. 53, ¶ 46]. They specifically targeted taxicabs[5] and Plaintiffs, falsely representing themselves as a legal alternative. [Doc. 53, ¶¶3, 44.d, 44.h, 44.l, 44.p, 48, 53, 55, 57, 58].

---

[5] See various ads attached as Exhibit B [Doc. 58-3].

Defendants' reliance on out of state cases with holdings based on different regulatory frameworks (without the exclusive rights Atlanta's Ordinances provide to CPNC holders), and entirely different, unknown pleadings is misleading and inappropriate.

In a nutshell, Defendants knowingly violated Plaintiffs exclusive rights to provide public transportation originating in the City of Atlanta and charge fares based on time, distance and mileage. This is factually stated over and over in the Second Amended Complaint, *Id*.

2.  Plaintiffs seek to disgorge Defendants of all illegal fares charged on rides originating in the City of Atlanta and its airport as well as damages.[6]

The third prong of a cause of action for intentional interference with business relations requires the plaintiff to prove the defendant used wrongful means to induce a failure to perform a contractual obligation or caused a party or third party to fail to enter into or continue an anticipated or existing business relationship with the plaintiff.  *Dalton Diversified, Inc.  v. Amsouth  Bank,* 270  Ga. App.  203, 605 S.E.2d 892 (2004).

The only fares charged by the Uber Defendants prior to July 1, 2015 on rides which originated within the corporate limits of the City of Atlanta which could

---

[6]This section is in response to sections I. C, D and E of Defendants' brief.

have been legal were those charged by licensed limousines that were not calculated

using the Uber smartphone based on time and distance. In other words, those

charged according to limousine laws as set forth in paragraph 28 of the Second

Amended Complaint, *Id*. All other fares belong to Plaintiffs.  Defendants simply

had no legal right to charge these fares. They are designated as the <u>exclusive</u>

property of the Plaintiffs by City of Atlanta Ordinances [Doc. 41-1A, Div. 2, pg.

23] and authorized by O.C.G.A. § 36-60-25 .

There is no doubt that the Defendants illegally operated 'vehicles for hire' as

defined by the City of Atlanta without any CPNCs.

> *Vehicle for hire*  means any motor vehicle, animal-drawn vehicle or other vehicle or device designed or used for the transportation of passengers (including, but not limited to medical patients) for hire, the charges for the use of which are determined by agreement, mileage or by the length of time for which the vehicle is engaged. Excluded from this definition are intraurban buses and vehicles exclusively regulated by the state public service commission.

**Atlanta Taxi Ordinances** [Doc. 41-1A, Section 162-26, Definitions. Pgs 4-5].

Defendants' arguments in sections I D & E of its brief are much like a

conversation with the Mad Hatter. A 'vehicle for hire' (and thus all Uber vehicles)

must have a CPNC to operate legally in Atlanta. To operate a metered vehicle for

hire without one is forbidden. The limitation of CPNCs to 1600 is rationally related

to a legitimate municipal objective. *Delta Cab Association, et al. v. City of Atlanta, Georgia,* 2014 WL 4185776, No. 1:13-CV-2218-TWT (N.D. Ga. Aug. 21,2014). Obviously, CPNC ownership is dependent on business relations with taxicab passengers.  Why else have one? It is this business which creates value in the CPNC.  The more taxicab drivers and taxicab companies earn the more valuable a CPNC becomes.

Unlike the foreign cases cited by Defendants, the Atlanta Bureau establishes market prices for CPNCs and must approve any transfer to a new owner who can comply with the directives. [Doc. 41-1A, Sections  162-61 & 62]. This is not a secondary market value claim as in *Dennis Melancon, Inc. v. City of New Orleans* 703 F.3d 262 (5th Cir. 2012) cited by the Defendants. And contrary to the regulatory framework in the City of Minneapolis stated in *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d. 502 (8th Cir. 2009) also cited, the City of Atlanta Ordinances created an "unalterable monopoly" for the CPNC holders. Here, the facts, the law, the ordinances and the mutual promises and expectations are all different. In fact, the City of Atlanta even tried (unsuccessfully) to auction its remaining 45 CPNCs before new the laws were passed which substantially preempted substantially all of its powers. See, Exhibit C [Doc. 58-3].  Plaintiffs here have an exclusive monopoly in the City of Atlanta as

the CPNCs were limited to 1600 with no authority to expand that number. Compare, *Dennis Melancon, Inc*., supra.[7]

Likewise, Defendants' reliance on the case of *Manzo v. Uber Technologies, Inc.,* No.13 C 2407, 2014 WL 3495401, at *4(N.D. Ill. Jul.14, 2014) is misleading. That case involved a licensed taxicab owner's claims regarding rates and tips against Uber's use of licensed taxicabs and limousines under Illinois laws for deceptive trade and business practices acts.  Unlicensed private vehicles used as vehicles for hire by Uber were not even at issue in that case.

As alleged, some taxicab owners and drivers also own CPNCs contrary to the Defendants' claims. Clearly, CPNC owners have claims against the Defendants for interfering with these business relations and since the Bureau issues CPNCs and is primarily charged with regulating them, the CPNC owners and thus the drivers (who must have a CPNC) also have a cause of action for interference with those relations as well.

Plaintiffs allege the Defendants flooded the market with hundreds or possibly thousands of unmarked vehicles making it impossible for law enforcement to fully monitor compliance with the City of Atlanta ordinances.

---

[7] These are issues the regulatory bodies of the City of Atlanta and the State Georgia and the state courts including the Georgia Supreme Court will and should address.

[Doc.53, ¶¶4,48]   Contrary to the Defendants' assertions, Plaintiffs' claims for interference with relationships with the Bureau of Taxicabs and Vehicles for Hire is supported by federal law. See, 42 U.S.C.A. § 1985(1) and 42 U.S.C.A. § 1985(3), (Conspiracy to deprive equal protection of the law, including preventing or hindering state officials from securing equal protection.) Certainly violation of this statute as factually alleged will support Plaintiffs' cause of action.

A cursory examination of the Second Amended Complaint demonstrates that sufficient facts have been stated which if true establish that the Uber Defendants and, in fact, ALL defendants are liable to Plaintiffs under a cause of action for intentional interference with business relations. The Second Amended Complaint clearly gives Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). It certainly "contain[s] sufficient factual matter, which accepted as true, states a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3. Unjust enrichment is a valid, well-reasoned remedy to Plaintiffs' claims.

Unjust enrichment is a claim in quasi contract. Although it is often used as an alternative to a contract claim should it fail, there is absolutely no requirement

under Georgia law that there must be a "failed contract". The language cited by

Defendants is simply *dicta* from a Court of Appeals decision that is applicable to

the facts of that case only. Defendants do not support their argument with any valid

legal decision.

> The theory of unjust enrichment applies when as a matter of fact there is no legal contract (such as we concluded in Division 1), but where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for. See *Matarese v. Moore-McCormack Lines,* 158 F.2d 631, 634 and cases cited therein. See also *Woodard v. First National Bank of Atlanta,* 159 Ga.App. 769, 771–772, 285 S.E.2d 229; *Trust Company of Georgia v. S & W Cafeteria,* 97 Ga.App. 268, 283–284, 103 S.E.2d 63. See generally 66 Am.Jur.2d, Restitution and Implied Contracts, § 3, 945–946.

*Regional Pacesetters v. Halpern Enterprises,* 165 Ga.App. 777, 782(2), 300 S.E.2d 180, 185 (1983).

In *Regional Pacesetters,* the benefitted party was not a party to the contract.

*Id.* at 781, 184.  Plaintiffs have properly pled a claim for unjust enrichment

resulting from Defendants' interference with business relationships with all those

persons paying the fares to Defendants for rides originateing in corporate limits of

the City of Atlanta. Those fares are the exclusive property of Plaintiffs

4.  Defendants' arguments regarding Conspiracy, Bad Faith and Punitive Damages are Moot.

Defendants' Motion as to Plaintiff's claims for Conspiracy, Bad Faith and

Punitive Damages are totally dependent on dismissal of the underlying causes of

action. As demonstrated, the underlying claims of the Plaintiffs survive, thus

Defendants' Motion regarding conspiracy, bad faith and punitive damages is moot.

It is noted that Defendants do not challenge the validity of any of these claims

against the Uber Defendants. A valid conspiracy claim will which hold all

Defendants jointly and severally liable.

As explained in Plaintiffs' response to the Motions to Dismiss of Keith

Radford and the Drivers [Doc. 59], conspiracy is where two or more combine to

commit a tort. The tort of interference with business relations in this case is

completed by the actions of all defendants.  Each element is satisfied by one or

several of the defendants but they are all liable since it is this combination of

conduct which harmed the Plaintiff Class.

4.  Plaintiffs have properly pled a cause of action for Nuisance.

A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.

O.C.G.A. § 41-1-1.

A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals.

O.C.G.A. § 41-1-2.

> A public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action.

O.C.G.A. § 41-1-3.

In Paragraph 44 of the Second Amended Complaint, Plaintiffs list at least 17 different examples of conduct by the Defendants which along with the other allegations of conduct certainly amount to the statutory definition of public nuisance. Some of the acts are criminal. Uber certainly put all at risk or damaged them by charging for illegal, unsafe rides.

In a proper case equity will enjoin an existing nuisance although the **acts** to be enjoined constitute crimes. _Edison v. Ramsey, 146 Ga. 767, 92 S.E. 513 (1917); Rose Theatre, Inc., v. Lilly_, 185 Ga. 53, 193 S.E. 866 (1937). The fact that in the commission of the illegal acts no disorderly conduct is indulged does not prevent such acts from constituting a public nuisance. _Gullatt v. State ex rel. Collins_, 169 Ga. 538, 541, 150 S.E. 825 (1929). Plaintiffs were certainly specially damaged (unlike thousands and thousands of customers and Atlanta citizens) as alleged throughout the Second Amended Complaint by the Defendants' unlawful, deceptive, predatory acts.

Defendants cite a case, *Dunaway v. City of Marietta*, 251 Ga, 727, 308 S.E. 2d 823 (1983), and make the statement, "And if all 'similarly situated' suffer the same injury, the injury is not special"  Defendants then state that the injury Plaintiffs complain of is not "special" and Plaintiffs cannot bring a public nuisance claim. [Doc. 54-1, pgs. 26-7 of 34]. First, *Dunaway* was a zoning case and had nothing to do with a class action. The plaintiff complained of increased traffic congestion and the court found this was insufficient to support a status of "substantial interest-aggrieved citizen" for standing to appeal decisions of boards of adjustment. *Id.* at 728. This obvious attempt to mislead should be completely ignored.

A plaintiff does not lose his right to bring an action for public nuisance because others have similar causes of action. To hold otherwise would make the defendant liable for only one injury and hold him harmless if many were damaged. *Savannah, F.&W.Ry.Co. v. Parish,* 117 Ga. 893, 45 S.E. 280 (1903). A public nuisance gives any member of the public who has sustained special damages a right of action. *Childers, et al. v. Monson*, 241 Ga. App. 70, 524 S.E.2d 326 (1999) *cert denied.*  There is no legal basis that prevents a class action on behalf of those "specially damaged" as Defendants would have one to believe.

Defendants do not understand that under the Georgia Constitution, the definition of property includes personal property and extends to the owners right to enjoy, use and dispose of it. *Bowers v. Fulton County*, 221 Ga. 731, 146 S.E. 2d 884 (1966). No physical invasion to land need be shown to support a cause of action for nuisance, public or private. *Duffield v. DeKalb County*, 242 Ga. 432, 434, 249 S.E. 2d 235 (1978). 'Property' comprehends not only the thing possessed but also includes the rights of the owner in land or *a thing*. *Woodside v. City of Atlanta,* 214 Ga. 75, 85, 103 S.E.2d 108 (1958). The rights to enjoy, use and dispose of personal property are all elements of damages in a nuisance claim. Discomfort, loss of peace of mind, unhappiness and annoyance are also damages which a jury may award. *City of Columbus v. Myska,* 246 Ga. 571, 272 S.E. 2d 302 (1980), Roddenberry Farms, Inc. v Leverich, et al. 192 Ga. 153, 384S.E.2d 243 (1989).

5.  Leave to Amend should be granted if the court decides to dismiss any of Plaintiffs' claims.

Plaintiffs have more than adequately stated their claims under Rule 12(b)(6), but should this Court find they have failed in any way, the Plaintiffs request leave to amend in order to correct any deficiencies as determined by the Court. "A district court's discretion to dismiss a complaint without leave to amend is severely

restricted by Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (reversing district court dismissal of complaint without leave to amend). Defendants' statement that Plaintiffs should be denied this opportunity since an Amended Complaint was filed before any ruling by the Court seeks to implant Uber as judge rather than this Court. That should not be tolerated.

## CONCLUSION

The  Second Amended Complaint clearly states "a claim upon which relief can be granted" and provides all Defendants with fair notice of the grounds of such claims as required by *Twombly* and *Iqbal.* Plaintiffs respectfully submit that all three Motions should be denied.

Respectfully submitted this 8th day of July, 2015.

/s/ *William A. Pannell*
William A. Pannell
Georgia Bar No. 561025
WILLIAM A. PANNELL, P.C.
433 Chateau Drive, NW
Atlanta, Georgia 30305
TEL (404) 353-2283
FAX (404)237-2384

Keith E. Fryer
Georgia Bar No. 279037
FRYER, SHUSTER & LESTER, PC
1050 Crown Pointe Parkway, Suite 410
Atlanta, GA 30338-7701
TEL (770) 668-9300
FAX (770) 668-9465
Of Counsel

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been

prepared in 14 point Times New Roman font in accordance with Local Rule

5.1(C).

Dated:  July 8, 2015.

/s/  William A. Pannell
William A. Pannell

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2015, I filed a copy of the foregoing

document using the Court's ECF/CM system, which will automatically send notice

of such filing to counsel for Defendants:

Michael W. Tyler (GA Bar No. 721152)
mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
Amit B. Patel
amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Arthur M. Roberts
arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

23

Dated:  July 8, 2015.

                                        _/s/  William A. Pannell_
                                        William A. Pannell