## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SCOTT MCCANDLISS, | ) | |
| DMIDRIY ABRAMYAN, ABDIKADIR | ) | |
| AHMED, AHMED KATUN AHMED, | ) | |
| AHMED HASSAN, BEN STEWART | ) | |
| ROUNTREE, FAHEEM IQBAL | ) | |
| QURESHI, ANTHONY D. LOGAN, | ) | Civil Action File No. |
| MOHAMED ABDULLE, HAMOUD S. | ) | 1:14-03275-WSD |
| ALDAHBALI, JAMAL ABDI, ABDILAHI | ) | |
| AWALE, MOHAMED A. HUSSEIN | ) | CLASS ACTION |
| and all others similarly situated, | ) | |
| Plaintiffs. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UBER TECHNOLOGIES, INC., | ) | |
| RASIER, LLC and | ) | |
| KEITH RADFORD, AHMED SIMJEE, | ) | |
| JOSHUA GANTT, LESLIE GILMARTIN | ) | |
| BRIAN GIQUEL, CHRISTOPHER BOSAK,| ) | |
| CHRISTOPHER JOHNSON, KEVIN | ) | |
| BUTTIMER, DANIEL ANDERSON, JOHN | ) | |
| STETTNER, RACHEL PIETROCOLA, | ) | |
| JOSH VARCOE, FABIAN FERNANDEZ, | ) | |
| AMINUR CHOUDHURY, SEID SHEK, | ) | |
| ABEBE TESFAYE, SAMUEL WORKU, | ) | |
| JEAN RICHARD PIERRE, ALEXANDER | ) | |
| AGBAERE, AYODELE OKPODU, | ) | |
| BELAY DAGNEW, individually and | ) | |
| all others similarly situated, | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO KEITH RADFORD'S
## AND THE DRIVER DEFENDANTS' MOTIONS TO DISMISS

1

The Mr. Radford and the Driver Defendants brazenly ask this Court to let them off 'free of all charges' even asking that it be done 'with prejudice' even though this Court has never expressed an opinion as to the adequacy of Plaintiffs' Complaints. Formal discovery will reveal more than sufficient facts to meet any evidentiary burden. Parties should not be held to the standards these Defendants wish to impose at the initial pleading stage. The Motions to Dismiss should be denied in their entirety.[1] Alternatively, Plaintiffs' request leave to amend the Complaint to correct any deficiencies the Court may find.  Leave to amend should be given freely and here the Court should first determine if amendment is needed at all, not these Defendants and their counsel.

The claims asserted in this class action against Mr. Radford and the Drivers are quite simple factually. Except for a few limousines which charged improperly, the Drivers provided the cars to Uber and Rasier and drove them without any permits, licenses or approvals from any state or city regulatory authority. They charged fares to customers and retained approximately 75% of these monies.  Mr. Radford managed the Drivers and Uber operations in Atlanta.  It is mystifying how their counsel can claim that they cannot discern what claims are asserted against

---

[1] Plaintiffs also rely on any materials filed in response to previous motions to dismiss and their response to Uber and Rasier's current motion. See, Doc. 41, 42, 43 and 58.

them so as to answer the Second Amended Complaint. The continued assertions regarding "shotgun" pleadings are utter nonsense, unprofessional and disingenuous. The Second Amended Complaint makes clear that the claims for interference with business relations are against all Defendants including the Defendant Class. It took all of them working together in a conspiracy to cause the damages as alleged. They know this and the lawyers working with them knew this.

All of the Defendants want this court to ignore the conspiracy claims under Georgia law. They have good reason for this. If the claims against the Drivers or Mr. Radford and the unnamed managers are dismissed, then the Uber Defendants will point to them as the ones who actually violated the laws by driving the Uber vehicles as independent contractors, picking up passengers within the corporate limits of the city of Atlanta and charging them fares rightfully belonging to the Plaintiff Classes.  It is a strategy designed to deceive.

## STANDARD OF REVIEW

"Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (quoting Fed. R. Civ. P. (8)(a)(2)). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. (internal citations omitted). A complaint survives if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

To survive a motion to dismiss, a complaint need only "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not a probability standard, and simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *United States ex rel. Powell v. Am. Intercontinental Univ., Inc*., No. 1:08-CV-2277-RWS, 2010 WL 2245574, at *2 (N.D. Ga. June 2, 2010)(quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted). As the U.S. Supreme Court clarified, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable" and

recovery unlikely. *Iqbal*, 129 S. Ct. at 1959 (citations omitted); see also *Twombly*, 550 U.S. at 556.

Plaintiffs plainly satisfy this plausibility standard by pleading ample facts in the Second Amended Complaint (as well as the Amended Complaint) which, taken as true, establish Defendant Drivers' and Mr. Radford's liability as to each of the claims asserted and provide them fair notice of the grounds of such claims. See, *Lee v. Mylan*, 806 F. Supp. 2d 1320, 1323 (M.D. Ga. 2011) (citing *Twombly* and *Iqbal* and denying a Rule 12(b)(6) motion to dismiss where the complaint gave fair notice of the claims and the grounds giving rise to the same).

## ARGUMENT

First, Plaintiffs adopt and incorporate all arguments set forth in their Response to the Uber Defendants' Motion to Dismiss [Doc. 58] as if fully set forth herein and below.

A "conspiracy" upon which a civil action for damages may be found is a combination between two or more persons either to do some act which is a tort or else do some lawful act by methods which constitute a tort. See, *Strange v. Housing Authority of City of Summerville*, 602 S.E.2d 185 (Ga.App. 2004); see also, *J. Kinson Cook of Georgia, Inc . v. Heery/Mitchell*, 644 S.E.2d 440 (Ga. App. 2007). There is no requirement that each participant in committing the

tort also individually satisfy each element of the tort otherwise there would be no need for a claim of conspiracy. After a conspiracy is formed, as here, if a party joins therein (like a driver or manager), knowing of its existence and purpose, he becomes as much of a party thereto as if he had been an original member. *Parrish v. Jackson W. Jones, P.C.* 629  S.E.2d  468  (Ga.App. 2006). Conspiracy is usually a jury question. Because civil conspiracy is by its very nature a secret endeavor, the concert of action amounting to a conspiracy is best suited for jury resolution. *Miller v. Lomax*, 266 Ga. App. 93, 596 S.E.2d 232 (2004); *Traub v. Washington,* 264 Ga. App. 541, 591 S.E.2d 392 (2003). Although Defendants argue there is a requirement of *specific intent,* they offer no legal support.  Of course, conspiracy is not a cause of action on its own but when defendants act in concert with one another to commit a tort their combined acts form the basis for the cause of action.

The Driver Defendants and Radford completely ignore the law regarding conspiracy, for good reason, and do not attack the sufficiency of any pleadings regarding their conspiracy with the Uber Defendants. As Uber likes to say, "The drivers are the engine that drives Uber". The drivers are the ones who actually interfered with the rights of the Plaintiff Class and violated Atlanta Taxi Ordinances and Georgia laws each time they picked up a passenger and charged them. There is no doubt they intentionally drove and managed the "for

hire vehicles" while knowing it would harm legitimate competitors. They operated with no permits or licenses and took business to which CPNC owners and legitimate Atlanta taxi drivers were entitled. From inception as the Uber Defendants' manager Keith Radford acted with full knowledge of its disregard for Atlanta Taxi Ordinances. He was instrumental in assisting Uber lobby against existing laws. See, <u>Atlanta Journal Constitution</u> article written by Mr. Radford attached as Exhibit A [Doc. 59-1]. Common sense dictates that it requires *intent* to drive or to manage.

The issue in this class action is the origination of rides within the corporate limits of the city of Atlanta only. Uber operates, in addition, outside that area and Plaintiffs do not  seek to limit fares ending in Atlanta but originating elsewhere. This is the same attempt to mislead used in response to the Motion to Remand [Doc. 20]. Apparently, the Defendants believe if they tell enough lies and scream loud insults about Plaintiffs and their counsel, the Court will dismiss this narrowly targeted case.  Inventing "straw man" arguments to defeat and acting in such a manner should not carry the day in this forum.

A sample of the allegations Defendants claim they do not understand is below. After explaining the background of taxis, CPNCs and limousines in paragraphs 1 and 2 of the Second Amended Complaint, Plaintiffs make the

following allegations specifically regarding the Drivers, <u>Mr. Radford</u> and

Defendant Class:

> Uber and the Defendant Class began operating a fleet of "vehicles for hire" in the City of Atlanta in the summer of 2012.  These vehicles operated unlicensed in the City of Atlanta until July 1, 2015……

> Its "Uber Black" vehicles attempt to operate as limousines but do not charge fares at prearranged amounts or maintain required trip reports. Uber vehicles registered as limousines violate the laws of the State of Georgia and the City of Atlanta by charging fares at the end of the trip based on mileage and distance using the "smartphones" rather than prearranged amounts as required by law thus acting as taxicabs.  Uber also furnishes other regular smaller vehicles through UberX that are privately owned vehicles that are not registered as vehicles for hire with any agency and have not attempted to comply with any registration. The Defendants have ignored and violated the rules and ordinances of the City of Atlanta including Atlanta Taxi Ordinances and operate without any CPNCs.

> The Uber Defendants and the Defendant Class have interfered with the Atlanta Bureau of Taxicabs' (the "Bureau") and the State of Georgia's business relationship with the entire Plaintiff Class by flooding the market with unlicensed, unauthorized vehicles for hire and making it impossible for the Bureau or the State of Georgia to protect their property rights and licensing rights.

> <u>Defendant Keith Radford managed this network of unlicensed vehicles in Atlanta on a daily basis on behalf of the Uber Defendants.  Mr. Radford knowingly interfered with Plaintiffs' exclusive rights to operate taxicabs in the City of Atlanta by placing hundreds of unlicensed drivers on the streets of Atlanta to accept fares without a CPNC or other authorization and failed to pay sales taxes.</u>

> As a result, the Uber Defendants and the Defendant Class have damaged the property values of the CPNCs. Their combined interference with Plaintiffs' contractual and property rights which provide for a finite number of taxicabs and vehicles for hire in the City of Atlanta lessened the value of CPNCs to their owners and/or the taxi drivers who pay weekly and/or monthly rents for

their use. Additionally, the Uber Defendants and the Defendant Class interfered with the Plaintiff Subclass of Taxi Drivers' businesses in the City of Atlanta by accepting fares and providing transportation beginning or originating in the city limits of Atlanta resulting in lost fares and revenues to the Plaintiff Subclass.

The Defendant Class is defined as all persons, firms, partnerships, corporations or other entities which have owned and/or operated any vehicle for the Uber Defendants which charged passenger(s) and received payment(s) for any rides based on measured time, distance and mileage originating/beginning in the City of Atlanta from August 24, 2012 until July 1, 2015. Each member of the Defendant class has acted intentionally in operating unlicensed vehicles for the Uber Defendants and acted in concert and conspired with the Uber Defendants to damage Plaintiffs, the Plaintiff Class and Plaintiff Subclasses as set forth herein and below.

The smartphone apps work as a meter, measuring time and distance, and charging accordingly.  The Uber smartphone app simply functions as a technologically advanced version of the taximeter. Neither the Uber Defendants' UberX nor Uber Black vehicles operated as limousines and were subject to Atlanta Taxi Ordinances Sec. 162-26 et seq. as vehicles for hire when using the smartphone app to calculate fares.

O.C.G.A § 40-1-151(4) requires that no vehicle for hire may be operated as both a taxicab and a limousine. The same statute also provides that a limousine is unmetered. The Uber Black vehicles and SUVs operate as both.

The Uber Defendants  "hire" drivers allegedly as independent contractors to provide the advertised service, where the driver provides his or her own vehicle. Uber outfits these drivers with a cell phone preprogrammed turnkey system that allows the drivers to provide metered service virtually identical to a taxicab. The primary distinction is that taxicab meters are physically connected to the vehicle's speedometer, are certified and sealed by the appropriate regulatory body, and are routinely inspected by same. Uber's "meter" app is not approved by any regulatory agency, and runs entirely from Global Positioning Satellite (GPS) signals built into the Uber driver's smart phone. Both methods measure time and distance for the for-hire transportation.

At the conclusion of the trip, Uber Defendants and the Defendant Class collect the tariff (fare) by billing the passenger's credit card based on data collected by the meter app. Uber pays the drivers their portion of earnings at routine intervals (upon information and belief drivers are paid weekly). Many of the Uber drivers (i.e. UberX drivers and members of the Defendant Class) do not pose as limousine carriers and do not provide commercial insurance covering passengers for bodily injuries, thus avoiding expenses of a licensed, legal taxicab or limousine.

All licensed taxicab drivers in the metropolitan area of Atlanta, Georgia are harmed by the Defendants' methods in the form of lost revenue. All "metered" trips measured by time and distance originating in the City of Atlanta conducted by the Uber Defendants and the Defendant Class are exclusively the province of licensed taxicabs with a CPNC, and  the Defendants have appropriated this business and concomitant revenue.

The Uber Defendants maintain that its drivers including all members of the Defendant Class are independent contractors making it necessary to individually name the manager/driver defendants and the Defendant Class. The driver members of the Defendant Class are aware of the Uber Defendants' position that they are independent contractors and have challenged Uber legally and by protest to include them as employees of Uber.

Members of the Defendant Class including Keith Radford were also aware of these requirements including that Uber should register as a taxicab or limousine company, pay taxes, obtain proper insurance and comply with all safety standards and inspections. Some members of the Defendant Class were licensed limousine drivers or taxicab drivers before working for the Uber Defendants. The Uber Defendants and the Defendant Class knew that operating a metered limousine or a vehicle for hire not regulated by the state in the City of Atlanta without a license or CPNC is/was illegal but chose to knowingly violate these legal requirements.  All Defendants and the Defendant Class had knowledge that their conduct would do harm to the Plaintiff Class and Subclasses in that they would purposefully take business away from Plaintiffs and the Plaintiff Class reducing revenues and resulting in damages to rental and property values of CPNCs. This is Uber's business plan – to virtually eliminate the taxi business in Atlanta. Each member of the Defendant Class intentionally managed and/or intentionally drove their

<u>unlicensed vehicles in the city of Atlanta and accepted fares from customers they knew would use a taxicab or limousine if not for their service.</u>

In the Spring and Summer of 2013, over 25 Uber Drivers who are members and/or representatives of the Defendant Class were charged with violations of Atlanta taxicab laws and were defended in Municipal Court by lawyers furnished by Uber.

The policing of Uber's activities have been made even more impossible in that they purposely  use a variety of private unmarked motor vehicles which cannot be identified as Uber vehicles without first stopping them. The members of the Defendant Class have flooded the market with hundreds if not thousands of illegal vehicles for hire which cannot be policed properly and thereby intentionally taking business that would otherwise go to the Plaintiffs and Plaintiff Class.

The Uber Defendants and the Defendant Class have caused third parties who use the services legally provided by the Plaintiff Class and Subclasses for transportation to use Defendants' rogue services resulting in lost business relationships with these customers and contracts for hire to use Plaintiffs' services which have proximately caused damage to the Plaintiff Class by decreased revenues, rents, rental values of CPNCs and loss in value of CPNCs. The CPNC owners have lost available taxicab drivers as the result of Uber. The CPNCs provide the exclusive right to charge customers for rides originating in the City of Atlanta for trips measured by time and distance and charged at the end of the trip. The Defendants have ignored these rights proximately causing damages as described in this Second Amended Complaint.

<u>The Defendant Keith Radford has continued to manage and operate Uber and the Defendant Class despite knowledge of all of the facts and allegations set forth above. He has actively conspired with the named representatives and members of the Defendant Class to break the laws of the State of Georgia and the City of Atlanta all the while knowing that Plaintiffs would be damaged as described herein as a result of his conduct and intentionally proximately causing such damages.</u>

By operating a *de facto* taxicab business in the Atlanta area in violation of state and municipal regulations, Defendants have purposefully, improperly, and without privilege, induced third parties mentioned above not to enter into or continue business relationships with Plaintiffs. By avoiding the costs associated with legitimate licensed taxicabs including but not limited to owning and/or renting a CPNC issued and sold by the City of Atlanta, proper insurance, safety regulations, sales taxes and regulated fares, Defendants offer and collect lower fares. Defendants conspired with one another and acted in concert to proximately cause harm to Plaintiffs, the Plaintiff Class and Subclasses as described in detail throughout this Second Amended Complaint. <u>The Uber Defendants and Keith Radford and other local managers intentionally</u> operated outside of the law and the driver members of the Defendant Class all intentionally drove their vehicles and collected fares which proximately caused the damages alleged in this Second Amended Complaint. Their activities combined to cause harm creating a conspiracy and making them joint and severally liable for all damages described herein. These tortious activities continued unlicensed and unabated until July 1, 2015.

All members of the Plaintiff Class have suffered lost revenues, business income and damages due to the wrongful conduct of the Uber Defendants and Defendant Class to prevent potential taxicab passengers and customers from using their services.

Some members of Plaintiff Subclass 2 do not own a CPNC. Instead, they pay weekly or monthly rent pursuant to agreements with members of Plaintiff Subclass 1 or Taxicab companies. The Uber Defendants and the Defendant Class of alleged independent contractor drivers and managers including Mr. Radford have wrongfully interfered with these business relationships as described above for the use of CPNCs and conspired with one another to implement the schemes to destroy the taxicab business in the city of Atlanta and take fares from Plaintiffs proximately causing Plaintiffs damages.

Each of the drivers and Mr. Radford should be able to admit or deny these allegations. They certainly should be able to understand them with the help of their team of highly paid and well educated lawyers.

Tortious interference with business relations is a distinct and separate tort from tortious interference with contractual relations. *Tom's Amusement Co., Inc. v. Total Vending Services*, 243 Ga. App. 294, 533 S.E.2d 413 (2000).  In order to establish a cause of action for tortious interference with business relations, the Plaintiff must demonstrate that, absent the interference, those relations were reasonably likely to develop . *Hayes v. Irwin*, 541 F.Supp. 397 (N.D. Ga. 1982)(judgment affirmed) 729 F.2d 1466 (11th Cir. 1984); *see also, Wilson v. City of Sardis*, 264 Ga. App. 178, 590 S.E.2d 383 (2003). However, the Plaintiff need not show proof of a valid and enforceable contract. *Lake Tightsgueeze, Inc . v. Chrysler First Financial Services Corp.,* 210 Ga. App. 178, 435 S.E. 2d 486 (1993). Here, the CPNC owners certainly have a business relationship and potential relationship with the passengers.

Under Georgia law, the improper action or wrongful conduct in the first prong of a tortious interference claim is whether the action was an improper action or wrongful conduct. Generally, those types of claims involve physical violence, fraud or misrepresentation (as here),  defamation, use of confidential

information, and abuse of civil suits and/or unwarranted criminal prosecutions. *Sumter Regional Hospital Inc. v. Healthworks, Inc.*, 264 Ga. App. 78, 589 S.E.2d 666 (2003). In determining whether a person's conduct is intentionally interfering with a business relation or a contract or a prospective contractual relation is improper, the Restatement of Torts approach which has been adopted by Georgia courts, provides that consideration should be given to: (1) the nature of the person's conduct; (2) the person's motive; (3) the relations between the parties; (4) the interest sought to be advanced by the person; as well as, (5) the proximity or remoteness of the person 's conduct to the interference. *Orkin Exterminating Co., Inc. v. Martin,* 240 Ga. 662, 242 S.E.2d 135 (1978). Moreover, to be liable for the interference with contractual or business relations, one must be a stranger to both the contract and the business or contractual relationship giving rise to and underpinning the contract. *Pruitt Corp. v. Strahley*, 270 Ga. 430; 510 S.E. 2d 821 (1999). Because intentional interference is a pre-requisite, it presupposes knowledge of the Plaintiff's interest or facts that would lead a reasonable person to believe in their existence. *See, Hayes* at 397; *see also, Perry & Co. v. New South Ins. Brokers of Georgia, Inc.*, 182 Ga. App. 84, 354 S.E.2d 852 (1987). For purposes of a claim for tortious interference, the term "malicious" means "any unauthorized interference without justification or excuse." *Camp v.*

*Eichelkraut,* 246 Ga. App. 275, 539 S.E. 2d  588 (2000).  The act is deemed to be  malicious under Georgia law when it is done with knowledge of the Plaintiffs rights and with the intent to interfere with those rights, as here. *Perry* at 84. The excerpts above from the Second Amended Complaint more than establish the Uber Drivers' and Mr. Radford's knowledge that they were taking business from taxicabs inside Atlanta's city limits. Plain common sense dictates this truth. That is the whole point of undercutting pricing and the predatory tactics used. Moreover, personal ill will or animosity is not essential to a finding of malice. See*, Hayes* at 1466, 1468.

It is difficult to prove *intent* prior to or even after discovery in a civil matter. Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operation of the human mind. Any statement made or act done or omitted by a party whose intent is in issue may be considered, and all other facts and circumstances which indicate state of mind. It is reasonable to draw the inference and find that a party intends the natural and probable consequences of acts knowingly done or knowingly omitted. 3 Devitt, Blackman and Wolf, Federal Jury Practice and Instructions, §81.03.

With respect to the third prong of tortious interference referenced above, in order to prove a tortious interference with business or contractual relations, the plaintiff must prove that the defendant used wrongful means to induce a

failure to perform a contractual obligation or caused a party or third party to fail to enter into or continue an anticipated or exisitng business relationship with the plaintiff. *Dalton Diversified, Inc.  v. Amsouth Bank,* 270 Ga. App. 203, 605 S.E.2d 892 (2004).   There is no doubt that the Second Amended Complaint has stated facts which establish this prong.

Even if the Second Amended Complaint may sometimes refer to all Defendants as "Defendants", this is certainly consistent with a conspiracy claim or a class action. Driver Defendants and Mr. Radford should understand from reading the Second Amended Complaint that all participants in a conspiracy are liable for the acts of everyone including acts of which they may have no knowledge or acts which may have happened before coming to work with Uber. A conspiracy makes the act of any one conspirator chargeable to all and allows for the imposition of joint and several liability. *Summit Auto Grp. V. Clark,* 298 Ga. App. 875,879,681 S.E.2d 681, 685 (2009) See also, *Cook v. Robinson*, 216 Ga. 328, 329(2), (4), 116 S.E. 2d 742 (1960).

Simply put, the tort of "intentional interference with business relations" in this case involves the driving of vehicles and picking up passengers for hire. The Uber Defendants certainly can't drive the cars. Mr. Radford and the Driver Defendants are part of a "conspiracy" upon which a civil action for damages may be found since their intentional actions are part of a combination between

16

two or more persons to do an act which is a tort. It takes the actions of all of the Defendants to damage Plaintiffs. They all play a necessary part. When there is a conspiracy, there is no legal requirement for each individual Defendant to commit each element of the tort of intentional interference with business relations as Defendants contend. The Defendants have combined and acted in concert to commit the tort to cause Plaintiffs' damages. This is well described in the Second Amended Complaint (and Amended Complaint).

Mr. Radford's argument regarding "reverse" vicarious liability is another straw man created by imaginative minds.  Plaintiffs wish to hold Mr. Radford responsible for his own wrongful conduct as part of the conspiracy. The Amended Complaint adequately describes his conduct of managing the operations and drivers and his knowledge of the need for CPNCs and other requirements. A director, officer or agent is not liable for torts of the corporation or of other officers or agents merely because of his office. He is only liable for torts in which he has participated or which he has authorized or directed. *Coke v. City of Atlanta*, 184 F. Supp. 579 (N.D.Ga.1960). This is true for officers as well. *Jennings v. Smith*, 226 Ga. App. 765, 487 S.E.2d 362 (1997). Mr. Radford is alleged to have participated in tortuously interfering with Plaintiffs' exclusive property rights to fares originated in the corporate limits of the city of Atlanta. This is an integral part of the conspiracy. These

FACTS  are unlike the facts in the case that Defendant cites, *Catlett v. Wyeth, Inc*. 379 F.Supp2d 1374 (M.D.Ga. 2004) where the defendant  was a salesman that followed a given script. Here, Radford is fully aware that Uber violates established ordinances and aided Uber and all defendants in ignoring these laws. Of course, under a conspiracy theory, he is held jointly and severally liable with his employer.

The Defendants' assertions regarding "shotgun" pleadings, legal conclusions or the failure to "delineate between claims of wrongdoing" are vacuous as demonstrated above. The cases cited and Defendants' arguments ignore that this is a class action and seeks to certify a Defendant Class. One has to wonder whether the Second Amended Complaint was actually read before drafting the motions. In drafting the Second Amended Complaint ( and previous versions), Plaintiffs use the terms "Defendants", "Defendant Class", or "Uber Defendants" when referring to misconduct committed collectively by each of the defendants. Otherwise, the Complaint would have been unreadable. The use of the word *illegal* in describing the conduct of Uber, Rasier, Mr. Radford and the Defendant Drivers references their violation of well-established ordinances and statutes. These Defendants are presumed to know the law applicable to their operations. Each time it is used, the statements stand on their own factually even if the words *illegal* or *illegally* are deleted.

If each one of the Defendants was specifically identified each time they are referred to collectively as Defendants demand, it would have been a nonsensical mess consisting of hundreds of pages. Defendant Class is used collectively because they each committed the same misconduct by either driving, managing drivers or both. Discovery is necessary to identify members of the Defendant Class. Should the complaints just repeat over and over again the names of each defendant with a recitation of the same conduct? The complaints would need to be thousands of pages. No Defendant could be under any misapprehension about what misconduct is attributed to each of them.  The Second Amended Complaint clearly gives Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v.  Scott*, 610 F.3d 701, 705 (11th Cir.  2010). It certainly "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).


<u>Plaintiffs should be given the opportunity to Amend if needed.</u>

Plaintiffs have more than adequately stated their claims under Rule 12(b)(6), but should this Court find they have failed, the Plaintiffs request leave to amend in order to correct any deficiencies as determined by the Court.  "A district court's discretion to dismiss a complaint without leave to amend is severely restricted by

Fed. R. Civ. P. 15(a), which directs that leave to amend shall be freely given when justice so requires." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (reversing district court dismissal of complaint without leave to amend). Defendants' statement that Plaintiffs should be denied this opportunity seeks to implant Defendants as judge rather than this Court. That should not be tolerated. Plaintiffs should be given the opportunity to correct any defects this Court may find.

## CONCLUSION

The Second Amended Complaint--as it is actually written as opposed to its mischaracterization by the Uber Drivers and Mr. Radford--clearly states "a claim upon which relief can be granted" (Rule 12(b)(6)) and provides all Defendants with fair notice of the grounds of such claims as required by *Twombly* and *Iqbal.* Plaintiffs respectfully submit that all three Motions of the Defendants should be denied in their entirety.

Respectfully submitted this 8th day of July, 2015.

/s/ William A. Pannell
William A. Pannell
Georgia Bar No. 561025
WILLIAM A. PANNELL, P.C.
433 Chateau Drive, NW
Atlanta, Georgia 30305

TEL (404) 353-2283
FAX (404)237-2384


Keith E. Fryer
Georgia Bar No. 279037
FRYER, SHUSTER & LESTER, PC
1050 Crown Pointe Parkway, Suite 410
Atlanta, GA 30338-7701
TEL (770) 668-9300
FAX (770) 668-9465
Of Counsel




LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been

prepared in 14 point Times New Roman font in accordance with Local Rule

5.1(C).

Dated:  July 8, 2015.

/s/  William A. Pannell
William A. Pannell

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2015, I filed a copy of the foregoing

document using the Court's ECF/CM system, which will automatically send notice

of such filing to counsel for Defendants:

Michael W. Tyler (GA Bar No. 721152)
mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
Amit B. Patel
amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Arthur M. Roberts
arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Dated:  July 8, 2015.

_/s/  William A. Pannell_
William A. Pannell