# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Scott McCandliss, Dmidriy Abramyan, Abdikadir Ahmed, Ahmed Katun Ahmed, Ahmed Hassan, Ben Stewart Rountree, Faheem Iqbal Qureshi, Anthony D. Logan, Mohammed Abdulle, Hamoud S. Aldahbali, Jamal Abdi, Abdilahi Awale, and Mohamed A. Hussein,<br><br>Plaintiffs,<br><br>v.<br><br>Uber Technologies, Inc., Rasier LLC, Keith Radford, Ahmed Simjee, Joshua Gantt, Leslie Gilmartin, Brian Giquel, Christopher Bosak, Christopher Johnson, Kevin Buttimer, Daniel Anderson, John Stettner, Rachel Pietrocola, Josh Varcoe, Fabian Fernandez, Aminur Choudhury, Seid Shek, Abebe Tesfaye, Samuel Worku, Jean Richard Pierre, Alexander Agbaere, Ayodele Okpodu, and Belay Dagnew,<br><br>Defendants. | CIVIL ACTION NO. 1:14-CV-03275-WSD |

# UBER TECHNOLOGIES, INC. AND RASIER LLC'S REPLY
# IN SUPPORT OF THEIR MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.   Plaintiffs Fail to State a Claim for Tortious Interference With
     Business Relations. ........................................................................2

     A.   Plaintiffs Fail to Plead Facts Establishing an Intent to Injure. ..............2

     B.   Plaintiffs Fail to Allege Wrongful or Improper Conduct.....................4

     C.   Plaintiffs' Tortious Interference Claim Cannot Be Based on
          Relations With Unspecified Potential Taxicab Customers. .................7

     D.   Plaintiffs' Tortious Interference Claim Fails in Part Because
          Plaintiffs Fail to Allege Any Business Relations. .................................8

II.  Plaintiffs Improperly Invoke the Theory of Unjust Enrichment. .................11

III. Plaintiffs Fail to State a Claim for Public Nuisance.....................................12

IV.  Plaintiffs Fail to State a Claim for Private Nuisance....................................14

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Alexandre v. New York City Taxi & Limousine Comm'n*,
No. 07 CIV. 8175 (RMB), 2007 WL 2826952, at *8 (S.D.N.Y. Sept.
28, 2007) ................................................................................................................10

*Briggs & Stratton Corp. v. Concrete Sales & Servs.*,
29 F. Supp. 2d 1372 (M.D. Ga. 1998) ................................................... 12, 14

*Brooks v. Branch Banking & Trust Co.*,
No. 1:15-CV-00186-SCJ, 2015 WL 3478169, at *8 (N.D. Ga. May
28, 2015) ..................................................................................................................3

*Byung Ho Cheoun v. Infinite Energy, Inc.*,
363 F. App'x 691 (11th Cir. 2010) .................................................................11

*City of Douglasville v. Queen*,
270 Ga. 770, 514 S.E.2d 195 (1999) .............................................................12

*Debs v. Meliopoulos*,
No. CIV. 1:90-CV-939-WCO, 1993 WL 566011, at *17 (N.D. Ga.
Dec. 18, 1991) ........................................................................................................4

*Dennis Melancon, Inc. v. City of New Orleans*,
703 F.3d 262 (5th Cir. 2012) ...........................................................................10

*Dial HD, Inc. v. Clearone Commc'ns, Inc.*,
No. CV 109-100, 2010 WL 3732115, at *14 n.20 (S.D. Ga. Sept. 7,
2010) ....................................................................................................................4, 6

*EarthCam, Inc. v. OxBlue Corp.*,
49 F. Supp. 3d 1210 (N.D. Ga. 2014) ..............................................................6

*G&G TIC, LLC v. Alabama Controls, Inc.*,
324 F. App'x 795 (11th Cir. 2009) .................................................................15

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10,
2015) ........................................................................................................................6

*Hammond v. City of Warner Robins*,
224 Ga. App. 684, 482 S.E.2d 422 (1997) ...................................................13

*In re Flyboy Aviation Properties, LLC*,
525 B.R. 510 (Bankr. N.D. Ga. 2015) .............................................................9

*Int'l Brominated Solvents Ass'n v. Am. Conference of Gov. Indus.*
    *Hygienists, Inc.*,
    393 F. Supp. 2d 1362 (M.D. Ga. 2005) ................................................. 3, 7, 8

*Kirkland v. Tamplin*,
    285 Ga. App. 241, 645 S.E.2d 653 (2007) ...................................................5, 6

*Landings Ass'n, Inc. v. Williams*,
    309 Ga. App. 321, 711 S.E.2d 294 (2011) *reversed on other grounds*,
    291 Ga. 397, 728 S.E.2d 577 (2012) ...........................................................15

*Lindsey Creek Area Civic Ass'n v. Consol. Gov't of Columbus*,
    249 Ga. 488, 292 S.E.2d 61 (1982) .............................................................14

*Meadow Springs, LLC v. IH Riverdale, LLC*,
    323 Ga. App. 478, 747 S.E.2d 47 (2013) ......................................... 2, 4, 8, 9

*Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*,
    572 F.3d 502 (8th Cir. 2009) .......................................................................10

*Moon v. Clark*,
    192 Ga. 47, 14 S.E.2d 481 (1941) ...............................................................13

*Reg'l Pacesetters, Inc. v. Halpern Enterprises, Inc.*,
    165 Ga. App. 777, 300 S.E.2d 180 (1983) ...................................................11

*Reidling v. City of Gainesville*,
    280 Ga. App. 698, 634 S.E.2d 862 (2006) ...................................................14

*Sanders v. Henry Cnty., Ga.*,
    484 F. App'x 395 (11th Cir. 2012)...............................................................15

*Trilink Saw Chain, LLC v. Blount, Inc.*,
    583 F. Supp. 2d 1293 (N.D. Ga. 2008).........................................................8

*Valencia v. Universal City Studios LLC*,
    No. 1:14-CV-00528-RWS, 2014 WL 7240526, at *5 (N.D. Ga. Dec.
    18, 2014) .....................................................................................................11

*Voice-Tel Enterprises, Inc. v. JOBA, Inc.*,
    258 F. Supp. 2d 1353 (N.D. Ga. 2003).........................................................5

*Wachovia Ins. Servs., Inc. v. Fallon*,
    299 Ga. App. 440, 682 S.E.2d 657 (2009) ...................................................11

*Zellers v. Theater of the Stars, Inc.*,
    171 Ga. App. 406, 319 S.E.2d 553 (1984) ...................................................12

## <u>STATUTES</u>

O.C.G.A. § 41–2–2 .................................................................................................13

# INTRODUCTION

Plaintiffs have failed to plead any of their claims, and their Second Amended Complaint ("SAC") should be dismissed with prejudice.  Instead of seriously addressing the deficiencies of their complaint identified in Defendants' motions to dismiss, Plaintiffs in their Opposition resort to reiterating the allegations in their complaint, raising numerous irrelevant issues, and attacking Uber.[1]  But Plaintiffs' claims cannot survive past the pleading stage based on bluster and rhetoric.

As Uber explained in its Motion to Dismiss, Plaintiffs cannot allege the basic elements of their intentional interference claim, including an intent to injure, wrongful conduct, or any concrete business relationships with which to interfere. Moreover, Plaintiffs' attempt to craft "nuisance" claims out of a private business dispute regarding alleged violation of taxicab ordinances that involves no real property is meritless.  Not only do Plaintiffs fail to plead any interest in real property, but they also fail to plead a right common to all as well as any special damages, both required elements of a public nuisance claim.

---

[1]   As used in this brief, "Uber" refers to the Corporate Defendants in this case— Uber Technologies, Inc. and Rasier LLC.

The SAC should be dismissed with prejudice.  Plaintiffs have gone back to the well twice now (resulting in three total complaints), in a case pending nearly a year, and remain unable to meet their federal court pleading obligations.  Plaintiffs have demonstrated that there are no legitimate answers to the many inherent flaws in their complaint, and thus the Court should dismiss their SAC with prejudice.[2]

## ARGUMENT

### I.   Plaintiffs Fail to State a Claim for Tortious Interference With Business Relations.

Plaintiffs' Opposition only highlights that their claim for tortious interference with business relations is inherently flawed.  Plaintiffs cannot allege that Uber had the requisite "intent to injure," "acted improperly," or interfered with any "business relationship."  *Meadow Springs, LLC v. IH Riverdale, LLC*, 323 Ga. App. 478, 480, 747 S.E.2d 47, 50 (2013).

### A.   Plaintiffs Fail to Plead Facts Establishing an Intent to Injure.

As Uber explained in its Motion, Plaintiffs' tortious interference claim fails because they have not alleged that Uber offered the Uber application ("App") with

---

[2]   Plaintiffs attempt to distract this Court with volumes of factual assertions not found anywhere in the SAC and not related to Uber's operations in Atlanta.  It is improper to introduce factual matter in opposition to a motion to dismiss and this Court should not consider any of the "exhibits" attached to (or any of the new factual allegations found in) Plaintiffs' opposition.

the "intent to injure" Plaintiffs, as opposed to merely the intent to further Uber's own financial interests. *Int'l Brominated Solvents Ass'n v. Am. Conference of Gov. Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1385 (M.D. Ga. 2005).

In their Opposition, Plaintiffs all but concede that they have not alleged this intent. Opp. at 10. Instead of pointing to *any* allegations in the SAC regarding Uber's intent to injure, Plaintiffs rhetorically ask "[h]ow is the intent of a corporation proven?" *Id*. In answer to their own question, Plaintiffs assure themselves that it "is difficult, if not impossible prior to discovery in a civil matter." *Id*. But this is completely irrelevant—Plaintiffs do not have to "prove" Uber's intent at this stage. *Id*. Plaintiffs merely have to *plead* plausible facts showing intent.

They have not. Plaintiffs point only to allegations that Uber competed with taxicabs for business with knowledge that such competition would reduce Plaintiffs' revenues. *Id*. But the same could be said of *any* competitive business action. Because Plaintiffs cannot plausibly plead the counterintuitive—and false— notion that Uber's intent in making its App available was to injure Plaintiffs, as opposed to simply pursuing Uber's own business interests, Plaintiffs' claim fails. *See Brooks v. Branch Banking & Trust Co.*, No. 1:15-CV-00186-SCJ, 2015 WL 3478169, at *8 (N.D. Ga. May 28, 2015) (dismissing tortious interference claim

where "[c]onsistent with Plaintiff's other allegations, it is plausible that Defendant sought only to protect its business interest"); *Debs v. Meliopoulos*, No. CIV. 1:90-CV-939-WCO, 1993 WL 566011, at *17 (N.D. Ga. Dec. 18, 1991) (tortious interference claim failed where plaintiff failed to show defendant's acts "were for the purpose of interfering with plaintiff's rights," and not simply competitive acts done "at least in part to advance [defendant's] interests").

### B.    Plaintiffs Fail to Allege Wrongful or Improper Conduct.

Plaintiffs' intentional interference claim must be dismissed for the additional reason that they fail to allege any "improper" or "wrongful" conduct.  *Meadow Springs*, 323 Ga. App. at 480.  As Uber explained in its Motion, the "wrongful" conduct necessary to support a tortious interference claim cannot be a defendant's alleged lack of general regulatory compliance—it must be the *actual act of interference*.  *See Dial HD, Inc. v. Clearone Commc'ns, Inc.*, No. CV 109-100, 2010 WL 3732115, at *14 n.20 (S.D. Ga. Sept. 7, 2010) (dismissing tortious interference claim because the allegedly "improper" actions were "substantially removed from the actual acts that allegedly affected Plaintiffs' business relations," noting that "to permit such an action" would unduly expand the scope of the tort).

Plaintiffs do not allege that any discrete act Uber took to "interfere" with their relationships was "wrongful."  For example, Plaintiffs do not allege that Uber

used "physical violence, fraud or misrepresentation" to convince consumers to use the Uber App, that Uber "defame[ed]" Plaintiffs to their consumers, or that Uber "use[d] [Plaintiffs'] confidential information" to interfere with their relations. *Kirkland v. Tamplin*, 285 Ga. App. 241, 244, 645 S.E.2d 653, 656 (2007).

Instead, the only actual "act" Uber allegedly took to interfere with Plaintiffs' business was competing in the marketplace. There is nothing improper about such conduct. *See Voice-Tel Enterprises, Inc. v. JOBA, Inc.*, 258 F. Supp. 2d 1353, 1369 (N.D. Ga. 2003) (holding that making "available new [] technologies and [] competing against the Defendants in their franchise territory" is "insufficient to constitute tortious interference with business relationships" because it is merely "competition in the market place").

In their Opposition, Plaintiffs fail to address this point, arguing that they "clearly establishe[d]" this element of their claim by alleging that Uber failed to comply with transportation regulations. Opp. at 7-9. Tellingly, however, Plaintiffs fail to cite *a single* case that holds that alleged lack of general regulatory compliance can satisfy the wrongful conduct element,[3] *see* Opp. at 7-11, and courts

---

[3]   In all of the cases Plaintiffs cite, the "wrongful conduct" at issue was a discrete, allegedly actionable act taken by defendant to interfere with a specific business (footnote continued)

have rejected similarly novel, expansive interpretations of this tort.  *See Dial HD*,

2010 WL 3732115, at \*14 (dismissing tortious interference claim because

"Plaintiffs do not allege that Defendant's [alleged act of interference], in and of

itself, was 'improper' but rather allege in their complaint that Defendant engaged

in 'improper' acts while in pursuit" of being able to take such acts).

   Plaintiffs also do not even attempt to distinguish the holding of *Greater*

*Houston Transp. Co. v. Uber Techs., Inc.,* No. CIV.A. 4:14-0941, 2015 WL

1034254, at \*19 (S.D. Tex. Mar. 10, 2015), in which the court dismissed a similar

tortious interference claim, holding that Uber's "alleged violations of [city]

ordinances" were not sufficient to support a tortious interference claim.  Plaintiffs

have no explanation for why this Court should not do the same.

---

relationship between plaintiff and some identifiable third party.  *See, e.g.*,
*EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1234 (N.D. Ga. 2014)
(dismissing tortious interference claim because plaintiff "failed to present any
evidence that the [ ] Defendants misappropriated [plaintiff's] trade secrets or
acquired [plaintiff's] claimed confidential information"); *Kirkland v. Tamplin*, 285
Ga. App. 241, 244, 645 S.E.2d 653, 656 (2007) (dismissing tortious interference
claim because "[a]bsent evidence of fraud" in statements to third party about
plaintiff, "[plaintiff] could not show that [defendant's] actions were improper").

### C. Plaintiffs' Tortious Interference Claim Cannot Be Based on Relations With Unspecified Potential Taxicab Customers.

Plaintiffs fail to state a claim for tortious interference for the additional reason that their claim is based on speculative relationships with unspecified potential customers.  As Uber explained in its Motion, "[i]n order to establish a cause of action for interference with prospective business relations, the plaintiff must establish that absent the interference, *those relations were reasonably likely to develop in fact.*"  *Int'l Brominated*, 393 F. Supp. 2d at 1384-85 (holding that allegation that "those who otherwise might have conducted business with Plaintiffs in the future will never form such relationships" is insufficient to state a claim).

Plaintiffs fail to identify any relationship that was "reasonably likely to develop."  *Id.*  Instead, in what appears to be their only response to this argument, Plaintiffs argue that they have alleged business relationships with speculative future customers simply because they are properly licensed to provide taxicab service and Uber is not.  Plaintiffs claim that the "fares [at issue] belong to Plaintiffs," "Defendants simply had no legal right to charge these fares" and "[t]hey are designated the as the exclusive property of the Plaintiffs."  Opp. at 12.

This argument is irrelevant.  Plaintiffs cannot satisfy their burden simply by rehashing their argument that Uber wrongfully took business that otherwise "exclusively" would have gone to them—Georgia courts require plaintiffs actually

plead reasons why a particular prospective business relationship was in fact "likely to develop." *See Int'l Brominated*, 393 F. Supp. 2d at 1385 (rejecting plaintiff's argument that it had pled interference with a business relationship that was "reasonably likely to develop in fact" because the "laws of economics" made lost sales a "certainty"); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1325 (N.D. Ga. 2008) (holding that "circumstantial evidence," including argument that "but for the [defendant's conduct] it's likely that [plaintiff] would have gotten some of" the business from these companies" was insufficient "to demonstrate that business relationships were reasonably likely to develop"). For this additional reason, Plaintiffs' intentional interference claim must be dismissed.

### D. Plaintiffs' Tortious Interference Claim Fails in Part Because Plaintiffs Fail to Allege Any Business Relations.

Finally, Plaintiffs' claim must be dismissed because the majority of the alleged "relationships" at issue are not, in reality, "business relationships." *Meadow Springs*, 323 Ga. App. at 480. First, there is no "business relationship" between taxicab passengers and CPNC owners who do not drive taxicabs. Non-driver CPNC owners do not have any contractual or business relationship with passengers. They do not do business with passengers; they do not know who the passengers are; and there are no contracts formed between them.

In their Opposition, Plaintiffs' appear to argue that there is some *indirect* relationship between a CPNC owner's income and the taxi fares that a renter of that owner's CPNC collects.  Opp. at 12-13.  But Plaintiffs cite no authority for the proposition that such an indirect relationship is sufficient to state a tortious interference claim, and Georgia courts have held that it is not.  *See In re Flyboy Aviation Properties, LLC*, 525 B.R. 510, 529 (Bankr. N.D. Ga. 2015) (tortious interference claim failed because Plaintiff, who owned an airport's property and its hangars, did not have "business relationships" with his airport's "members" who stored their planes in his hangars because members paid fees to a separate entity).[4]

Additionally, Plaintiffs do not have a "business" relationship with Bureau of Taxicabs & Vehicles—a public agency that regulates them.  As Uber explained in its Motion, Plaintiffs must plead that Uber "induced a third party not to . . . continue a *business* relationship with the plaintiff."  *Meadow Springs*, 323 Ga. App. at 480 (emphasis added).  The argument that the relationship between taxicab permit owners and the public entity that grants taxicab permits is a "business" relationship is nonsensical.  Certainly this relationship *relates* to Plaintiffs'

---

[4]   The same argument applies to the alleged "business relationship" between taxi drivers and the Bureau.  Taxi drivers who are not CPNC owners do not enter into any agreements, or have any other business interactions, with the Bureau.

"business," but it is a *regulatory* relationship.  SAC ¶ 49 (acknowledging that the

"Atlanta Taxicab Bureau" is simply the "regulatory bod[y]" at issue in this case).

In their opposition, Plaintiffs attack Uber's case law as "foreign" and

somehow "misleading."  But the cases cited by Uber are provided to support—and

do support—the single proposition that the relationship between a governmental

body that grants permission to operate taxicabs and the owners of taxicab permits

is a regulatory one.  *See, Alexandre v. New York City Taxi & Limousine Comm'n*,

No. 07 CIV. 8175 (RMB), 2007 WL 2826952, at *8 (S.D.N.Y. Sept. 28, 2007)

(relationship between the New York City Taxi and Limousine Commission and

private taxicab companies is one between the "government" and a "publicly

regulated business"); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262,

274 (5th Cir. 2012) ("whatever interest Plaintiffs hold in their CPNCs is the

product of a *regulatory* scheme") (emphasis added); *Minneapolis Taxi Owners

Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 509-09 (8th Cir. 2009) ("the

license to participate in the highly regulated taxicab market is subject to regulatory

change" and is not a promise by the city to confer "economic benefits").  Given the

opportunity, Plaintiffs were unable to cite *a single case* supporting the plainly

incorrect argument that this is, to the contrary, a "business" relationship.

## II.     Plaintiffs Improperly Invoke the Theory of Unjust Enrichment.

Plaintiffs' "unjust enrichment claim" must also be dismissed because no such claim exists under Georgia law.  Claiming that the authority Uber cited in support of its Motion is not a "valid legal decision," Plaintiffs suggest to the Court that they can invoke the theory of unjust enrichment as an independent tort.  Opp. at 16.  This argument is simply wrong.  The legal principle that unjust enrichment cannot be asserted as an independent tort is widely accepted and by no means "applicable to the facts of [*Tidikis*] only" (Opp. at 16.)  *See Wachovia Ins. Servs., Inc. v. Fallon,* 299 Ga. App. 440, 449, 682 S.E.2d 657, 665 (2009) ("[b]ecause [plaintiff] asserts unjust enrichment as a separate tort . . . this claim fails as a matter of law"); *Byung Ho Cheoun v. Infinite Energy, Inc.*, 363 F. App'x 691, 696 (11th Cir. 2010) (same); *Valencia v. Universal City Studios LLC*, No. 1:14-CV-00528-RWS, 2014 WL 7240526, at *5 (N.D. Ga. Dec. 18, 2014) (same).[5]

---

[5]   *Pacesetters*, cited by Plaintiffs (Opp. at 16), is not to the contrary.  In that case, plaintiff sublessee of the defendant's property improved defendant's property, allegedly because defendant's conduct caused plaintiff to believe it had exercised an option to renew its lease.  *Reg'l Pacesetters, Inc. v. Halpern Enterprises, Inc.*, 165 Ga. App. 777, 782, 300 S.E.2d 180, 184 (1983).  Here, unlike in *Pacesetters*, there is no failed contract that would have otherwise governed the parties' relationship.

### III.   Plaintiffs Fail to State a Claim for Public Nuisance.

Plaintiffs' claim for public nuisance has absolutely no basis in law and must be dismissed.  To state a claim for a public nuisance, Plaintiffs must allege that Uber's conduct "affected a common right of all members of the public."  *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 29 F. Supp. 2d 1372, 1376 (M.D. Ga. 1998).  Plaintiffs fail to do so because their claim is about a right specific to Plaintiffs—their allegedly exclusive right to provide taxicab services.  SAC ¶ 50.

To avoid this result, Plaintiffs attempt to argue that the Uber App is somehow a "public nuisance" to the broader public.  Opp. at 18 (arguing Plaintiffs' nuisance claim is supported by "at least 17" accusations about various aspects of the Uber App Plaintiffs take issue with).  But this theory is meritless because "a public nuisance must injure all members of the public who come into contact with it."  *City of Douglasville v. Queen*, 270 Ga. 770, 774, 514 S.E.2d 195, 199 (1999).  Plaintiffs cannot make out a "public nuisance" claim based on allegedly injurious aspects of Uber's App because, far from "injur[ing] all members of the public" who use it, the Uber App has been hugely successful with the public.  SAC ¶ 48 (noting that drivers using the Uber App have "flooded the market" and that Atlanta and Georgia have not sought to prevent it); *Zellers v. Theater of the Stars, Inc.*, 171 Ga. App. 406, 409, 319 S.E.2d 553, 555 (1984) (holding public nuisance claims

failed because the large majority of consumers of defendant's business were not injured by the allegedly dangerous condition).[6]

Moreover, Plaintiffs' claim fails for the additional reason that they fail to allege "special damages." O.C.G.A. § 41–2–2.[7] Plaintiffs appear to suggest that they have suffered "special damages" in that they have lost fares to Uber. Opp. at 16.[8] But the required "special damages" must "proximately flow[ ] from [the alleged] nuisance." *Hammond v. City of Warner Robins*, 224 Ga. App. 684, 690, 482 S.E.2d 422, 428 (1997). Plaintiffs cannot plausibly plead the backward notion that the "at least 17" reasons why rides requested through the Uber App are

---

[6] To the extent Plaintiffs claim that the conduct constituting the alleged "public nuisance" is "criminal," their claim fails as a matter of law. It is well settled that a public nuisance claim cannot be based on "the mere violation of a criminal law." *Moon v. Clark*, 192 Ga. 47, 50, 14 S.E.2d 481, 483 (1941). Nothing in the cases cited by Plaintiffs rebuts this rule of law. Opp. at 18.

[7] In their Opposition, Plaintiffs argue that this requirement does not apply to them because they have brought a class action on behalf of all of those who share their allegedly "special damages." Opp. at 19. Plaintiffs fail to cite any law supporting this argument. The procedural mechanism through which Plaintiffs bring their suit has no effect on the substantive requirements of their underlying claims. If the law were otherwise, the availability of class actions would invalidate the statutory requirement that Plaintiffs show "special damages." O.C.G.A. § 41–2–2.

[8] As an initial matter, this theory fails as a matter of law because the public "participate[d]" in choosing to use the Uber App over Plaintiffs' taxicabs. O.C.G.A. § 41–2–2 (stating public nuisance claim may only be brought if "the public does not participate" in causing the condition complained of).

allegedly "unsafe" and "damage[]" users are also somehow the proximate cause of Plaintiffs' alleged damages.  In other words, it is implausible that the allegedly "unsafe" rides are what cause users to use the Uber App.  Moreover, Plaintiffs allege that *everyone* in the class of taxicab drivers and CPNC owners—*thousands* of people—suffered the same damages as named Plaintiffs.  SAC ¶ 18.  As a matter of law, this invalidates their claim because Plaintiffs cannot show any individual Plaintiff suffered "special damages."  *Briggs & Stratton*, 29 F. Supp. 2d at 1376 (requiring plaintiff show special damages incurred only by plaintiff).[9]

## IV.   Plaintiffs Fail to State a Claim for Private Nuisance.

Plaintiffs' claim for private nuisance also fails as a matter of law.  As Uber explained in its Motion, to state a claim for private nuisance, Plaintiffs must allege an invasion of an interest in *real* property.  *See Reidling v. City of Gainesville*, 280 Ga. App. 698, 704, 634 S.E.2d 862, 867 (2006); *see also Landings Ass'n, Inc. v.*

---

[9]   Plaintiffs attempt to distinguish the case *Dunaway v. City of Marietta* by arguing that it "was a zoning case" that "had nothing to do with" Plaintiffs' suit.  Opp. at 19.  Plaintiffs' sole point of distinction is that *Dunaway* dealt with the issue of whether an individual had the "status of substantial interest-aggrieved citizens for standing to appeal decisions of boards of adjustments."  *Id*.  But this isn't a distinction at all.  The Georgia Supreme Court—in *Dunaway* and elsewhere—has expressly held that this "aggrieved status" analysis and the public nuisance standing analysis are interchangeable.  *See Lindsey Creek Area Civic Ass'n v. Consol. Gov't of Columbus*, 249 Ga. 488, 491, 292 S.E.2d 61, 64 (1982).

*Williams*, 309 Ga. App. 321, 329-30, 711 S.E.2d 294, 301 (2011) *reversed on other grounds*, 291 Ga. 397, 728 S.E.2d 577 (2012) ("a private nuisance may exist" where defendant "invades the real property of another").  Plaintiffs fail to do so.

Plaintiffs' argument that "no physical invasion to land need be shown to support a cause of action for nuisance," Opp. at 20, is simply wrong.[10]  The Eleventh Circuit recently held that, under Georgia law, "[w]here the alleged nuisance does not affect plaintiff's use and enjoyment of her land, no nuisance has occurred."  *Sanders v. Henry Cnty., Ga.*, 484 F. App'x 395, 399 (11th Cir. 2012).  Plaintiffs' private nuisance claim is thus fundamentally flawed.[11]

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Amended Complaint in its entirety, without leave to amend.[12]

---

[10]   Tellingly, Plaintiffs fail to cite to a single case where a court upheld a private nuisance claim without an invasion of real property.  Opp. at 20.

[11]   Plaintiffs concede that this Court must dismiss their claims for conspiracy, bad faith and punitive damages if Plaintiffs' substantive claims are dismissed.  Opp. at 16-17.  Because the substantive claims fail, these other counts must be dismissed.

[12]   Contrary to Plaintiffs' argument, *see* Opp. at 2 (arguing Plaintiffs must be given leave to amend because "the Court should first determine if amendment is needed at all, not the Defendants"), it is perfectly appropriate to dismiss with prejudice where a claim is inherently flawed and thus amendment would be futile.  *See G&G TIC, LLC v. Alabama Controls, Inc.*, 324 F. App'x 795, 799 (11th Cir. 2009).

Respectfully submitted, this 27th day of July, 2015

UBER TECHNOLOGIES, INC., AND RASIER LLC

By   /s/ Stephen A. Swedlow
         Stephen A. Swedlow

Stephen A. Swedlow (*pro hac vice*)
   stephenswedlow@quinnemanuel.com
Amit B. Patel (*pro hac vice*)
   amitbpatel@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone:   (312) 705-7400
Facsimile:    (312) 705-7401

Arthur M. Roberts (*pro hac vice*)
   arthurroberts@quinnemanuel.com
**Quinn Emanuel Urquhart & Sullivan, LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

Michael W. Tyler (GA Bar No. 721152)
   mtyler@kilpatricktownsend.com
John P. Jett (GA Bar No. 827033)
   jjett@kilpatricktownsend.com
Ross D. Andre (GA Bar No. 280210)
   randre@kilpatricktownsend.com
**Kilpatrick Townsend & Stockton LLP**
1100 Peachtree St. NE, Suite 2800
Atlanta, GA 30309
Telephone:   (404) 815-6500
Facsimile:    (404) 815-6555

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated:  July 27, 2015.

/s/ Stephen A. Swedlow
Stephen A. Swedlow

### CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2015, I filed a copy of the foregoing

document using the Court's CM/ECF system, which will automatically send notice

of such filing to counsel for Plaintiffs:

    William A. Pannell
    WILLIAM A. PANNELL, P.C.
    433 Chateau Drive, NW
    Atlanta, GA 30305

I further certify that on July 27, 2015, I served a copy of the foregoing to

counsel for Plaintiffs by depositing a copy in the U.S. Mail, first class postage

prepaid, addressed as follows:

    Keith E. Fryer
    FRYER, SHUSTER & LESTER, PC
    1050 Crown Pointe Parkway, Suite 410
    Atlanta, GA 30338

                /s/ Amit B. Patel
                Amit B. Patel